**KING & SPALDING LLP**
Dale J. Giali (SBN 150382)
dgiali@kslaw.com
633 West Fifth Street, Suite 1600
Los Angeles, CA 90071
Telephone: (213) 443-4355
Facsimile: (213) 443-4310

**KING & SPALDING LLP**
Michael L. Resch (SBN 202909)
mresch@kslaw.com
Anne M. Voigts (SBN 220783)
mvoigts@kslaw.com
50 California Street, Suite 3300
San Francisco, CA 94111
Telephone: (415) 318-1200
Facsimile: (415) 318-1300

Attorneys for Defendants
BELLRING BRANDS, INC. and
PREMIER NUTRITION COMPANY, LLC

# UNITED STATES DISTRICT COURT FOR THE

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PATRICIA KRYSTOFIAK, et al., | Case No.: 3:23-cv-2819-AGT |
| Plaintiffs, | Hon. Alex G. Tse, presiding |
| v. | **NOTICE OF MOTION TO DISMISS COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT** |
| BELLRING BRANDS, INC., et al., | |
| Defendants. | Date:       October 20, 2023 |
| | Time:       10:00 a.m. |
| | Dept.:      By videoconference absent Court order otherwise [Ctrm A, 15th Floor] |

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on October 20, 2023, at 10:00 a.m., or as soon thereafter as the matter may be heard, in Courtroom A, 15th Floor, of this Court, located at 450 Golden Gate Avenue, San Francisco, CA 94102, before the Honorable Alex G. Tse, defendants BellRing Brands, Inc. and Premier Nutrition Company, LLC ("defendants") will and hereby do move the Court for an order dismissing the class action complaint, and each claim contained therein, with prejudice, or in the alternative, staying this action. Absent a Court order otherwise, a hearing on this motion will be held by videoconference.

This motion is made pursuant to Fed. R. Civ. P. 8, 9(b), 12(b)(1), and 12(b)(6), and is based on the following grounds:

1.     Plaintiffs lack Article III standing to pursue their claims and to seek injunctive relief;

2.     Plaintiffs do not plausibly allege that they were, or that reasonable consumers would be, materially deceived by defendants' statements and omissions;

3.     A Proposition 65 consent judgment is *res judicata* and bars plaintiffs' claims;

4.     Plaintiffs' failure to comply with Proposition 65's prerequisites bars their claims;

5.     The Court should dismiss or stay this case in deference to FDA's primary jurisdiction;

6.     The Court should dismiss the case under the doctrine of implied and express preemption;

7.     Plaintiffs' claims for breach of implied and express warranty fail for the additional reason that plaintiffs cannot allege that the challenged products were not fit for their ordinary purpose, defendants did not make warranties as alleged and, in any event, plaintiffs do not allege reliance on the alleged warranties;

8.     Plaintiffs' Unfair Competition Law fraudulent prong claim and their claim for intentional misrepresentation fail for the additional reason that plaintiffs fail to allege those claims with particularity;

9.     Plaintiff Zimmerman's claim for negligent misrepresentation fails for the additional reason that that there is no privity between the parties; and

1    10.    Plaintiffs' claim for unjust enrichment fails for the additional reason that its entirely

2    duplicative and derivative of the other causes of action.

3    The motion is supported by this notice, the attached memorandum of points and authorities,

4    pleadings and documents on file in this case, and on such other written and oral argument as may be

5    presented to the Court on this matter motion.

6    Dated: August 15, 2023                              **KING & SPALDING LLP**
                                                          Dale J. Giali
7                                                         Michael L. Resch
                                                          Anne M. Voigts
8
                                                          By: */s/  Dale J. Giali*
9                                                               Dale J. Giali
                                                          Attorneys for Defendants
10                                                        BELLRING BRANDS, INC. and
                                                          PREMIER NUTRITION COMPANY, LLC
11

## <u>STATEMENT OF ISSUES TO BE DECIDED</u>

1.  Do plaintiffs have Article III standing to pursue their claims?

2.  Have plaintiffs plausibly alleged that defendants' representations and omissions were material to plaintiffs and the reasonable consumer and were false or deceptive?

3.  Is a Proposition 65 consent judgment covering the products *res judicata*?

4.  Did plaintiffs impermissibly bypass Proposition 65?

5.  Should plaintiffs' claims be dismissed (or stayed) under the primary jurisdiction doctrine?

6.  Should plaintiffs' claims be dismissed under the doctrines of implied and express preemption?

7.  Have plaintiffs otherwise adequately alleged claims for breach of warranty, fraud, negligent misrepresentation and unjust enrichment?

MOTION TO DISMISS                                                      Case No. 3:23-cv-2819-AGT

# **TABLE OF CONTENTS**

STATEMENT OF ISSUES TO BE DECIDED ............................................................... iii

I     INTRODUCTION .............................................................................................. 1

II.    FACTUAL BACKGROUND ............................................................................ 2

    A.   Defendants and Their Products.. ............................................................... 2

    B.   Lead in the Food Supply. ......................................................................... 2

    C.   FDA's Regulation of Lead In The U.S. Food Supply and Bottled Water.... 3

        1.  FDA's "Closer To Zero" Action Plan. ........................................... 4

        2.  FDA's Regulation of Bottled Water. ............................................. 5

        3.  FDA's 2006 Guidance Concerning Candy for Children. .................. 5

    D.   Proposition 65 and the Consent Judgment Governing This Action. ........... 5

    E.   Plaintiffs' Claims in the Complaint ........................................................... 7

III.    ARGUMENT ................................................................................................... 10

    A.   Plaintiffs Lack Standing To Pursue Their Claims ...................................... 10

        1.  Plaintiffs Have Not Plausibly Alleged An Injury In Fact ................ 10

        2.  Plaintiffs Lack Standing As To Products Not Purchased ................. 13

        3.  Plaintiffs Lack Standing To Seek Injunctive Relief ........................ 13

    B.   Plaintiffs Also Fail To Plausibly Allege Deception or Materiality ............. 14

    C.   Plaintiffs' Claims Are Barred By The Consent Judgment ......................... 18

    D.   Plaintiffs Failed To Comply With Proposition 65's Prerequisites .............. 19

    E.   Plaintiffs' Claims Fall Under FDA's Primary Jurisdiction And Should Be Dismissed Under Implied and Express Preemption ........................................................ 20

    F.   Plaintiffs' Claims Fail For Additional Reasons ........................................ 23

    G.   Request for Judicial Notice ....................................................................... 24

IV.    CONCLUSION .............................................................................................. 25

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Aellis O. v. Connor*,
   2022 WL 2229421 (S.D. Cal. June 21, 2022)..........................................................................24

*In re Apple Processor Litig.*,
   2019 WL 3533876 (N.D. Cal. Aug. 2, 2019) ..........................................................................13

*Arent v. Shalala*,
   70 F.3d 610 (D.C. Cir. 1995)....................................................................................................4

*Armstead v. City of Los Angeles*,
   66 F. Supp. 2d 1254 (C.D. Cal. 2014) ....................................................................................25

*Asghari v. Volkswagon Group of Amer., Inc.*,
   42 F. Supp. 3d 1306 (C.D. Cal. 2013) ....................................................................................23

*Astiana v. Hain Celestial Grp., Inc.*,
   783 F.3d 753 (9th Cir. 2015) ...........................................................................................20, 21

*Axon v. Citrus World, Inc.*,
   354 F. Supp. 3d 170 (E.D.N.Y. 2018) ....................................................................................16

*Backus v. Gen. Mills, Inc.*,
   122 F. Supp. 3d 909 (N.D. Cal. 2015) ....................................................................................20

*Bao Yi Yang v. Shanghai Gourmet, LLC*,
   471 F. App'x 784 (9th Cir. 2012) ...........................................................................................19

*Barnes v. Natural Organics, Inc.*,
   2022 WL 4283779 (C.D. Cal. Sept. 13, 2022) .......................................................................18

*Barreto v. Westbrae Nat.*,
   2021 WL 76331 (S.D.N.Y. Jan. 7, 2021) ...............................................................................23

*Baum v. J-B Weld Co., LLC*,
   2020 WL 4923624 (N.D. Cal. Aug. 21, 2020) .......................................................................18

*Becerra v. Dr Pepper/Seven Up, Inc.*,
   945 F.3d 1225 (9th Cir. 2019) ..........................................................................................14, 16

*In re Beech-Nut Baby Food Litig.*,
   --- F. Supp. 3d ----, 2023 WL 350818 (N.D.N.Y. Jan. 19, 2023)...........................................21

*Berni v. Barilla S.p.A.*,
   964 F.3d 141 (2d Cir. 2020).....................................................................................................14

*Boysen v. Walgreen Co.*,
    2012 WL 2953069 (N.D. Cal. July 19, 2012) ........................................................12

*Brazil v. Dole Packaged Foods LLC*,
    660 F. App'x 531 (9th Cir. 2016) ........................................................................12

*Campienello Imps. Ltd. v. Saporiti Italia S.p.A.*,
    117 F.3d 655 (2d Cir. 1994) ................................................................................23

*Caudel v. Amazon.com, Inc.*,
    2021 WL 4819602 (E.D. Cal. Oct. 15, 2021) ........................................................11

*Cel-Tech Communications, Inc. v. L.A. Cellular Tel. Co.*,
    20 Cal. 4th 163 (1999) ........................................................................................18

*Charles v. Sutter Home Winery, Inc.*,
    232 Cal. Rptr. 3d 513 (Cal. Ct. App. 2018) ..........................................................19

*Citizens for Open Access v. Seadrift Ass'n*,
    50 Cal. App. 4th 1053 (1998) ..............................................................................18

*City of L.A. v. Lyons*,
    461 U.S. 95 (1983) ..............................................................................................13

*Clark v. Time Warner Cable*,
    523 F.3d 1110 (9th Cir. 2008) ........................................................................20, 21

*Clemens v. DaimlerChrysler Corp.*,
    534 F.3d 1017 (9th Cir. 2008) ..............................................................................23

*Cohen v. Apple Inc.*,
    46 F.4th 1012 (9th Cir. 2022) ..............................................................................21

*Consumer Advocacy Grp. v. ExxonMobil Corp.*,
    168 Cal. App. 4th 675 (2008) ..............................................................................17

*Consumer Cause, Inc. v. SmileCare*,
    2001 WL 34157470 (Cal. App. 2 Dist. April 17, 2001) ..........................................6

*Consumer Def. Grp. v. Rental Hous. Indus. Members*,
    137 Cal. App. 4th 1185 (2006) ............................................................................18

*Corbett v. PharmaCare U.S., Inc.*,
    567 F. Supp. 3d 1172 (S.D. Cal. 2021) ................................................................23

*Davidson v. Kimberly-Clark Corp.*,
    889 F.3d 956 (9th Cir. 2018) ................................................................................13

*Dei Ross v. Whirlpool Corp.*,
    2015 WL 1932484 (E.D. Cal. Apr. 28, 2015) ........................................................23

*Dist. of Columbia v. Beech-Nut Nutrition Co.*,
  No. 2021 CA 001292B (Sup. Ct. of Dist of Columbia)..........................21

*Doss v. Gen. Mills, Inc.*,
  816 F. App'x 312 (11th Cir. 2020) .......................................................12

*Eidson v. Medtronic, Inc.*,
  981 F. Supp. 2d 868 (N.D. Cal. 2013) .................................................24

*Environmental Law Foundation v. Abbott Labs, et al.*,
  No. CGC-10-503002 (San Francisco Superior Court).......................6, 18

*Environmental Law Foundation v. Protein Supplements, LLC*,
  No. RG19031319 (Alameda Sup. Ct.) ...................................................7

*Endsley v. Luna*,
  750 F. Supp. 2d 1074 (C.D. Cal. 2010) ...............................................25

*Envtl. Law Found. v. Beech-Nut Nutrition Corp.*,
  235 Cal. App. 4th 307 (2015) ...............................................................6

*Farina v. Nokia*,
  625 F.3d 97 (3d Cir. 2010)..................................................................21

*Gaminde v. Lang Pharma Nutrition, Inc.*,
  2019 WL 1338724 (N.D.N.Y. Mar. 25, 2019) ....................................13

*Gates v. Superior Court*,
  178 Cal. App. 3d 301 (1986) ..............................................................18

*Geier v. Am. Honda Motor Co.*,
  529 U.S. 861 (2000)............................................................................21

*In re Gen. Mills Glyphosate Litig.*,
  2017 WL 2983877 (D. Minn. July 12, 2017) ......................................16

*In re Gerber Prods. Co. Heavy Metals Baby Food Litig.*,
  2022 WL 10197651 (E.D. Va. Oct. 17, 2022)........................11, 12, 21

*Gibson v. Quaker Oats Co.*,
  2017 WL 3508724 (N.D. Ill. Aug. 14, 2017) ......................................16

*Girard v. Toyota Motor Sales, U.S.A., Inc.*,
  316 F. App'x 561 (9th Cir. 2008) .......................................................23

*Green v. PepsiCo, Inc.*,
  2019 WL 8810364 (S.D. Fla. Apr. 12, 2019) ......................................12

*Gutierrez v. Johnson & Johnson Consumer, Inc.*,
  2020 WL 6106813 (S.D. Cal. Apr. 27, 2020)................................15, 19

*Gutierrez v. Johnson & Johnson Consumer, Inc.*,
  2021 WL 822721 (S.D. Cal. Jan. 22, 2021)..............................................................23

*Hadley v. Kellogg Sales Co.*,
  273 F. Supp. 3d 1052 (N.D. Cal. 2017) ...................................................................22

*Hanna v. Walmart Inc.*,
  2020 WL 7345680 (C.D. Cal. Nov. 4, 2020)............................................................20

*Hansen Beverage Co. v. Innovations Ventures LLC*,
  2009 WL 6597891 (S.D. Cal. Dec. 23, 2009)...........................................................24

*Harris v. R.J. Reynolds Vapor Co.*,
  2016 WL 6246415 (N.D. Cal. Sept. 30, 2016) .........................................................20

*Hauter v. Zogarts*,
  14 Cal. 3d 104 (1975) ...............................................................................................23

*Hawyuan Yu v. Dr Pepper Snapple Grp., Inc.*,
  2020 WL 5910071 (N.D. Cal. Oct. 6, 2020).............................................................15

*Herrington v. Johnson & Johnson Consumer Companies*,
  2010 WL 3448531 (N.D. Cal. Sept. 1, 2010) ...................................................11, 16

*Hesse v. Godiva Chocolatier, Inc.*,
  463 F. Supp. 3d 453 (S.D.N.Y. 2020).......................................................................14

*Hill v. Roll Int'l Corp.*,
  195 Cal. App. 4th 1295 (2011) .................................................................................14

*In re Johnson & Johnson Talcum Powder Prods.*
  *Mktg., Sales Practices & Liab. Litig.*,
  903 F.3d 278 (3d Cir. 2018).......................................................................................11

*Kater v. Churchill Downs, Inc.*,
  886 F.3d 784 (9th Cir. 2018) .....................................................................................24

*Kearns v. Ford Motor Co.*,
  567 F.3d 1120 (9th Cir. 2009) ...................................................................................23

*Kimca v. Sprout Foods, Inc.*,
  2022 WL 1213488 (D.N.J. Apr. 25, 2022) ...............................................11, 12, 21

*Kimmel v. Schaefer*,
  89 N.Y.2d 257 (1996)................................................................................................24

*King v. County of Los Angeles*,
  885 F.3d 548 (9th Cir. 2018) .....................................................................................24

*Klaehn v. Cali Bamboo LLC*,
  2022 WL 1830685 (9th Cir. June 3, 2022) ................................................................16

*Koenig v. Boulder Brands, Inc.*,
  995 F. Supp. 2d 274 (S.D.N.Y. 2014) ......................................................................23

*Koronthaly v. L'Oreal USA, Inc.*,
  2008 WL 2938045 (D.N.J. July 29, 2008) ................................................................12

*Koronthaly v. L'Oreal USA, Inc.*,
  374 F. App'x 257 (3d Cir. 2010) ..............................................................................11

*Krause-Pettai v. Unilever United States, Inc.*,
  2021 WL 1597931 (S.D. Cal. Apr. 23, 2021) ............................................................13

*Lanovaz v. Twinings N. Am., Inc.*,
  726 F. App'x 590 (9th Cir. 2018) ..............................................................................14

*Leonard v. Abbott Labs., Inc.*,
  2012 WL 764199 (E.D.N.Y. Mar. 5, 2012) ...............................................................16

*Loomis v. Slendertone Distribution, Inc.*,
  420 F. Supp. 3d 1046 (S.D. Cal. 2019) ....................................................................24

*Mandarin Trading Ltd. V. Wildenstein*,
  16 N.Y.3d 173 (2011) ...............................................................................................24

*McGee v. S-L Snacks Nat'l*,
  982 F.3d 700 (9th Cir. 2020) .............................................................10, 11, 13, 17

*Moore v. Trader Joe's*,
  4 F.4th 874 (9th Cir. 2021) .............................................................................14, 17

*Moreno v. Vi-Jon, Inc.*,
  2021 WL 807683 (S.D. Cal. March 3, 2021) ............................................................12

*Mulford v. Altria Grp., Inc.*,
  506 F. Supp. 2d 733 (D.N.M. 2007) ........................................................................19

*Nacarino v. Kashi Company*,
  --- F.4th ----, 2023 WL 5192559 (9th Cir. Aug. 14, 2023) ......................................22

*Paradowski v. Champion Petfoods USA, Inc.*,
  2023 WL 3829559 (2d Cir. June 6, 2023) ................................................................17

*Parks v. Ainsworth Pet Nutrition*, LLC,
  2020 WL 832863 (S.D.N.Y. Feb. 20, 2020) ..............................................................15

*Parks v. Ainsworth Pet Nutrition*, LLC,
  377 F. Supp. 3d 241 (S.D.N.Y. 2020) ................................................................15, 16

ix

*Physicians Comm. for Responsible Medicine v. KFC Corp.*,
   224 Cal. App. 4th 166 (2014) ..................................................................................19

*In re Plum Baby Food Litig*,
   --- F. Supp. 3d ----, 2022 WL 16552786 (D.N.J. Oct. 31, 2022)..................................11, 12, 13

*Price v. Philip Morris, Inc.*,
   848 N.E. 2d 1 (Ill. 2005) .......................................................................................19

*Red v. Kraft Foods Inc.*,
   2012 WL 5504011 (C.D. Cal. Oct. 25, 2012)..........................................................15

*Reese v. Odwalla, Inc.*,
   30 F. Supp. 3d 935 (N.D. Cal. 2014) .......................................................................21

*Renfro v. Champion Petfoods USA, Inc.*,
   25 F.4th 1293 (10th Cir. 2022) .............................................................................15

*U.S. ex. Rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*,
   917 F.2d 244 (9th Cir. 1992) ................................................................................24

*Salmon Spawning & Recovery All. v. Gutierrez*,
   545 F.3d 1220 (9th Cir. 2008) ...............................................................................10

*Shapiro v. Berkshire Life Ins.*,
   212 F.3d 121 (2d Cir. 2000)..................................................................................15

*Simpson v. Champion Petfoods USA, Inc.*,
   397 F. Supp. 3d 952 (E.D. Ky. 2019) ...............................................................16, 17

*Sonner v. Premier Nutrition Corp.*,
   971 F.3d 834 (9th Cir. 2020) ................................................................................24

*Sportmart, Inc. v. Spirit Mfg.*,
   1999 WL 350662 (N.D. Ill. May 17, 1999).............................................................23

*State Farm Mut. Auto Ins. Co. v. Davis*,
   937 F.2d 1415 (9th Cir. 1991) ..............................................................................19

*Stearns v. Select Comfort Retail Corp.*,
   2009 WL 1635931 (N.D. Cal. June 5, 2009) ..........................................................23

*Stover v. Experian Holdings, Inc.*,
   978 F.3d 1082 (9th Cir. 2020) ...............................................................................13

*Syntek Semiconductor Co. v. Microchip Tech.*,
   307 F.3d 775 (9th Cir. 2002) ................................................................................21

*Thomas v. Costco Wholesale Corp.*,
   2022 WL 636637 (9th Cir. Mar. 4, 2022) ..............................................................15

x

*In re Tobacco Cases II*,
   240 Cal. App. 4th 779 (2015) ..........................................................................12

*Tran v. Sioux Honey Ass'n*,
   2020 WL 3989444 (C.D. Cal. July 13, 2020) ..................................................16

*In re Vaccine Cases*,
   134 Cal. App. 4th 438 (2005) ..........................................................................19

*Villacres v. ABM Indus. Inc.*,
   189 Cal. App. 4th 562 (2010) ..........................................................................18

*Wallace v. ConAgra Foods, Inc.*,
   747 F.3d 1025 (8th Cir. 2014) ..........................................................................13

*Weaver v. Champion Petfoods USA Inc.*,
   2019 WL 2774139 (E.D. Wis. July 1, 2019) ....................................................15

*Weiner v. Snapple Beverages Corp.*,
   2010 WL 3119452 (S.D.N.Y. Aug. 5, 2010) ....................................................23

*Wilson v. Frito-Lay N. Am., Inc.*,
   961 F. Supp. 2d 1134 (N.D. Cal. 2013) ............................................................13

*Wilson v. Walmart Inc.*,
   No. 3:21-cv-00082 (E.D. Ark.) ........................................................................21

*Yu v. Dr Pepper Snapple Grp.*,
   2019 WL 2515919 (N.D. Cal. June 18, 2019) ..................................................16

**Statutes**

21 U.S.C. §§ 331 ................................................................................................3

21 U.S.C. § 342 ..................................................................................................3

21 U.S.C. § 343-1 ........................................................................................22, 23

21 U.S.C. § 343 ..........................................................................................22, 23

21 U.S.C. § 346 ..................................................................................................3

21 U.S.C. § 371 ..................................................................................................3

21 U.S.C. § 393 ..................................................................................................3

Cal. Health & Saf. Code § 25249.7 ............................................................6, 18, 19

**Other Authorities**

Cal. Code Regs. § 25501 ....................................................................................6

xi

1

Cal. Code Regs. § 25600..................................................................................17

Cal. Rule of Court 8.1125(d) ...........................................................................19

21 C.F.R. § 7.1, et seq......................................................................................3

21 C.F.R. § 10.30.............................................................................................4

21 C.F.R § 101.54...........................................................................................22

21 CFR 101.65.................................................................................................23

21 CFR § 165.110.............................................................................................5

Fed. R. Civ. P. 8 ..............................................................................................i

Fed. R. Civ. P. 9(b) ....................................................................................i, 23

Fed. R. Civ. P. 12 ............................................................................................i

Fed. R. Evid. 201 ...........................................................................................24

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1
## I.    INTRODUCTION

2      Plaintiffs allege that defendants advertise their ready-to-drink protein shakes and ready-to-

3  mix protein powders as healthy but fail to disclose the presence, or the *risk* of the presence, of unsafe

4  levels of lead. That failure to disclose, plaintiffs say, is false and deceptive, and allegedly caused

5  plaintiffs an economic injury, *i.e.*, they bought products they otherwise wouldn't have or paid more

6  than they were worth.

7      But plaintiffs do not plausibly allege that the challenged products contain *unsafe* levels of

8  lead, a dispositive defect. Plaintiffs' own testing demonstrates that the amount of lead in the products

9  is well below the *applicable* Proposition 65 thresholds, thresholds that are, in turn, well below the

10  level that could be unsafe. Plaintiffs' test results also reflect that defendants' products contain lower

11  amounts of lead than FDA allows in baby food, bottled water, and children's candy. FDA and courts

12  have confirmed that the mere "presence" of naturally occurring heavy metals in food "does *not* mean

13  the food is unsafe to eat" and does not support a consumer deception claim.

14      On this record, the complaint fails on many grounds. ***First***, plaintiffs fail to allege an injury

15  sufficient to confer Article III standing. Finding Article III standing here – where there are no

16  plausible allegations that lead is present in the products at unsafe levels – would be tantamount to

17  ruling that consumers suffer a redressable injury-in-fact almost every time they purchase food. As

18  courts have correctly recognized, that result is "preposterous."

19      ***Second***, plaintiffs do not plausibly allege materiality or deception. Consumers are not

20  deceived by the presence of safe levels of lead in food, and defendants have no duty to disclose the

21  presence of safe levels of lead in their products. Pivoting, plaintiffs turn to manufacturing *affirmative*

22  misleading representations about lead levels. But not one of the statements exhaustively itemized in

23  16 pages of the complaint says anything about lead, let alone would or could cause plaintiffs or the

24  reasonable consumer to believe that the products are free of naturally occurring elements like lead.

25  And what defendants' objective statements *do* specifically say about their products (*e.g.*, "high

26  protein," provides "immune health support," "plant based") is true, and plaintiffs don't try to allege

27  otherwise.

28

1

**Third**, plaintiffs have ignored the dispositive impact of a 2014 Proposition 65 consent judgment covering these products. That judgment – on behalf of the public – conclusively declares that the levels of lead alleged by plaintiffs are *lawful* and do not require disclosure.

**Fourth**, by filing this lawsuit as a class action under state consumer protection laws, plaintiffs have impermissibly bypassed Proposition 65 and its mandatory pre-lawsuit notice and certification procedures. This non-curable defect requires dismissal.

**Fifth**, FDA has determined that the level of lead in defendants' products is safe with no need for a disclosure or warning (indeed, FDA has determined this type of disclosure to be detrimental). As such, plaintiffs' claims are impliedly preempted as in conflict with FDA's carefully calibrated judgment. More generally, plaintiffs' suit attempts to appropriate FDA's mandate to develop and implement national food safety and labeling policy, but Congress entrusted that role to FDA. Given FDA's role, and especially in light of its on-going activity regarding heavy metals in the U.S. food supply, the complaint should be dismissed (or, at a minimum, stayed) in deference to FDA's primary jurisdiction.

For these reasons, as well as others detailed below, this motion should be granted with prejudice. A contrary result would mean that the sale of virtually every food could support a class action lawsuit, elide Proposition 65's pre-suit prerequisites, and allow plaintiffs' counsel to substitute their judgment for FDA's.

## II.    FACTUAL BACKGROUND

**A. Defendants and Their Products.** Defendant Premier Nutrition Company, LLC ("PNC") markets and sells multiple varieties of ready-to drink protein shakes (Compl. ¶¶ 33, 39) and ready-to-mix plant protein powders (*id*. ¶¶ 34, 42) under the brand name Premier Protein. *Id*. ¶ 1. Defendant BellRing Brands, Inc. is the parent corporation of PNC. *Id*. ¶¶ 23, 24.

**B. Lead in the Food Supply.** Lead, sometimes referred to as a heavy metal, is a naturally occurring element. As FDA recognizes, lead is "present in the environment, including in our air, water and soil, and therefore [is] unavoidable in the general food

1  supply."[1] Indeed, "it is not possible to prevent or remove lead entirely from foods,"[2] and

2  there are "limits to how low [heavy metals] levels [in food] can be."[3] Significantly, FDA has

3  emphasized that the mere "presence" of lead "does *not* mean the food is unsafe to eat"[4] and

4  "foods may contain unavoidable but small amounts of lead that do *not* pose a significant risk

5  to human health."[5]

6      **C. FDA's Regulation of Lead In The U.S. Food Supply.** The Food Drug & Cosmetic Act

7  ("FDCA") requires FDA to (i) ensure that foods are safe, wholesome, sanitary, and properly labeled,

8  (ii) promulgate regulations to enforce the FDCA, and (iii) enforce those regulations through

9  administrative proceedings. 21 U.S.C. §§ 371, 393(b)(2)(A), 21 C.F.R. §§ 7.1, et seq.

10      The FDCA prohibits "[t]he introduction or delivery for introduction into interstate commerce

11  of any food . . . that is adulterated[.]" 21 U.S.C. §§ 331(a). Food is deemed to be adulterated when it

12  fails to meet certain standards, including when it is harmful to human health. *See* 21 U.S.C. § 342.

13  Relevant here, a food is not deemed to be adulterated because of the presence of lead or any other

14  substance "if the quantity of such substance in such food does not ordinarily render it injurious to

15  health." 21 U.S.C. § 342. But if such a substance cannot be avoided in food and may be present at

16  levels that could be harmful, federal law requires FDA to set action levels that may not be exceeded.

17  21 U.S.C. § 346.[6] Those action levels reflect considered scientific judgment and decision-making

18  about when food may be rendered unsafe by the presence of poisonous or deleterious substances.

19

20  [1] FDA, *FDA Announces New Actions Aimed at Further Reducing Toxic Elements in Food for Babies, Young Children* (Mar. 5, 2021) https://www.fda.gov/news-events/press-announcements/fda-announces-new-actions-aimed-further-reducing-toxic-elements-food-babies-young-children

21
22  [2] FDA, *FDA Announces Action Levels for Lead in Categories of Processed Baby Foods* (Jan. 24, 2023) https://www.fda.gov/news-events/press-announcements/fda-announces-action-levels-lead-categories-processed-baby-foods

23  [3] FDA, *FDA Releases Action Plan for Reducing Exposure to Toxic Elements from Foods for Babies, Young Children* (Apr. 8, 2021) https://www.fda.gov/news-events/press-announcements/fda-releases-action-plan-reducing-exposure-toxic-elements-foods-babies-young-children

24  [4] FDA *FDA Announces Action Levels for Lead in Categories of Processed Baby Foods*, n.2 *supra* (Emphasis added).

25  [5] FDA, *Supporting Document for Recommended Maximum Level for Lead in Candy Likely To Be Consumed Frequently by Small Children* (Nov. 2006) https://www.fda.gov/food/environmental-contaminants-food/supporting-document-recommended-maximum-level-lead-candy-likely-be-consumed-frequently-small

26

27  [6] FDA defines "[a]ction levels a[s] a level of contamination at which a food may be regarded as adulterated within the meaning of section 402(a)(1) of the" FDCA. FDA, *FDA Shares Action Plan*

28  *for Reducing Exposure to Toxic Elements from Foods for Babies and Young Children* (Apr. 8, 2021) https://www.fda.gov/food/cfsan-constituent-updates/fda-shares-action-plan-reducing-exposure-toxic-elements-foods-babies-and-young-children

1    For decades, FDA has been well aware of heavy metals in the food supply. With this

2    knowledge, the agency has taken action when necessary, but not where it is unnecessary or

3    unwarranted under the law.[7] FDA's actions have "resulted in significant progress in reducing" heavy

4    metal exposure from foods, including a 97% "decline in lead exposure from foods since 1980."[8]

5    **1. FDA's "Closer To Zero" Action Plan.** On April 8, 2021, FDA announced its

6    "Closer to Zero: Action Plan," a comprehensive multi-year plan identifying actions FDA "will take

7    to reduce exposure to toxic elements from foods eaten by babies and young children – to as low as

8    possible." Significantly, the Action Plan recognizes that "[r]educing levels of toxic elements in foods

9    is complicated and multifaceted," and that FDA is committing itself to a "science driven,

10   transparent, and inclusive process that will include active stakeholder engagement and public sharing

11   of data and information."[9] FDA emphasized that its own "testing has shown there's no immediate

12   health risk to children from exposure to [lead] at the levels currently found in food."[10] FDA stressed

13   that eliminating heavy metals from food is impossible, that there are "limits to how low these levels

14   can be"[11] and that taking hurried measures could have "unintended consequences – like eliminating

15   [foods] from the marketplace . . . or reducing the presence of one element while increasing

16   another."[12]

17   FDA is well under way in its work. For example, in 2022, it updated its Interim Reference

18   Level for lead (*i.e.*, the daily consumption limit) for children and women of childbearing age, and,

19

20

21   [7] Notably, plaintiffs may raise their concerns directly with FDA via a citizen's petition or a lawsuit

22   directed at the agency itself. *See* 21 C.F.R. § 10.30; *Arent v. Shalala*, 70 F.3d 610, 612 (D.C. Cir. 1995). But permitting plaintiffs to use class actions against food manufacturers to raise grievances

23   that, at best for plaintiffs, should be directed to FDA threatens to upend the uniform national standard for food regulation. It would also lead to the untenable scenario of companies being held

24   liable for following FDA regulations.

25   [8] FDA, *Closer to Zero: Trends in Exposure to Toxic Elements* https://www.fda.gov/media/147324/download

26   [9] FDA, *Closer to Zero: Reducing Childhood Exposure to Contaminants from Foods* (Apr. 8, 2021) https://www.fda.gov/food/environmental-contaminants-food/closer-zero-reducing-childhood-exposure-contaminants-foods

27   [10] FDA, *Transcript of Public Meeting Docket No. FDA-2021-N-0966* at 14 (Nov. 18, 2021) https://www.fda.gov/media/155396/download

28   [11] FDA, *FDA Releases Action Plan*, n.3, *supra*.

     [12] FDA *Closer to Zero*, n.9, *supra*.

1  separately, issued guidance concerning lead levels in children's juices (10 parts per billion (ppb)[13]

2  for apple juice; 20 ppb for other juices).[14] Significantly, in January 2023, FDA issued guidance

3  proposing maximum lead levels of 10 ppb and 20 ppb in several categories of baby food.[15]

4      FDA has recently indicated that it intends to expand upon "its maternal and infant health and

5  nutrition focus [from] 2022," giving attention to "reducing exposure to harmful chemicals and toxins

6  in food" consumed by "Americans of all ages and backgrounds."[16]

7      **2. FDA's Regulation of Bottled Water.** FDA has also analyzed lead in bottled water,

8  issuing a regulation setting "the lead limit" for bottled water "at 5 ppb."[17] *See* 21 CFR

9  § 165.110(b)(4)(iii)(A). EPA "has set its limit for lead in public drinking water at 15 . . . ppb."[18]

10      **3. FDA's 2006 Guidance Concerning Candy for Children.** FDA also issued guidance

11  setting maximum lead levels for "candy likely to be consumed frequently by small children"

12  determining that a maximum lead level of 100 ppb would be sufficiently "protective of public

13  health" and would not pose a significant risk to small children for adverse health effects." FDA

14  underscored that a 100 ppb limit for children's candy was "consistent with" FDA's longstanding

15  goal of "reduc[ing] consumers' lead exposure to the lowest level that can practicably be obtained."[19]

16      As graphically illustrated at p. 9, , the level of lead in defendant's products, as alleged by

17  plaintiffs, is *less than* the level that FDA considers safe for baby food, bottled water, and candy.

18      **D. Proposition 65 and the Consent Judgment Governing This Action.** Proposition 65

19  requires warnings on products that contain listed substances at levels in excess of specified

20

21  [13] A part-per-billion measurement provides the number of micrograms of something (*e.g.*, lead) in a kilogram (mass). One ppb would be equal to one drop in a 10,000-gallon swimming pool.

22  https://dnr.mo.gov/monitoring/understanding-data#:~:text=To%20visualize%20what%20these%20expressions,20%20Olympic%2Dsized%20swimming%20pools

23  [14] FDA, *Action Levels for Lead in Juice: Guidance for Industry* (Apr. 2022) https://www.fda.gov/media/157949/download; Science Board to the Food and Drug Admin. via Videoconference (Dec. 8, 2022) https://www.fda.gov/media/163718/download

24  [15] FDA *FDA Announces Action Levels for Lead*, n.2 *supra*.

25  [16] FDA, *Justification of Estimates for Appropriations Committees* (Apr. 2022) https://www.fda.gov/media/157192/download

26  [17] FDA, *Bottled Water Everywhere: Keeping it Safe* https://www.fda.gov/consumers/consumer-updates/bottled-water-everywhere-keeping-it-safe

27  [18] EPA, *Understanding the Lead and Copper Rule* (Sept. 2020) https://www.epa.gov/sites/default/files/2019-10/documents/lcr101_factsheet_10.9.19.final_.2.pdf

28  [19] FDA, *Supporting Document for Recommended Maximum Level for Lead in Candy*, n.5 *supra*.

Maximum Allowable Dose Levels ("MADLs"). *See generally* Cal. Health & Safe. Code § 25249.10, *et seq.* A MADL is *not* the threshold at which a particular substance poses a danger to human health. Rather, a MADL is triggered at a level 1,000 times *greater* than the "No Observable Effect Level," the highest level at which no observable health effect is expected. More specifically, under Proposition 65, the No Observable Effect Level is *divided by 1,000* to determine the MADL.[20] As a result, both California courts and its Attorney General have recognized that exposure to a substance even at a level 1,000 times greater than the MADL is expected to "have no observable effect."[21] *Envtl. Law Found. v. Beech-Nut Nutrition Corp.*, 235 Cal. App. 4th 307, 313 (2015). Even then, no Proposition 65 warning may be required, depending on whether the substance is naturally occurring (Cal. Code Regs. § 25501) and the anticipated rate of intake or exposure under specified uses.

On August 26, 2010, the Environmental Law Foundation ("ELF") filed a lawsuit against numerous protein products companies, alleging that their products contained lead exceeding California's MADLs without providing a warning, in violation of Proposition 65.[22] On February 18, 2014, the San Francisco Superior Court entered a consent judgment among ELF and 14 companies (the "Consent Judgment"),[23] after the parties' settlement terms were reviewed by the "Attorney General's representatives" and the court found "that the exposures to lead contemplated by the consent judgment comply with law."[24]

One of the defendants sued by ELF in the lawsuit was Dymatize Enterprises, Inc. ("Dymatize"), and the Consent Judgment by its terms covered both Dymatize and its affiliates.

---

[20] OEHHA, Proposition 65 Safe Use Determination (SUD) Process https://oehha.ca.gov/proposition-65/proposition-65-safe-use-determination-sud-process#:~:text=For%20a%20chemical%20that%20causes%20birth%20defects%20or%20reproductive%20harm,to%20be%20divided%20by%201%2C000

[21] *See* California Office of Environmental Health Hazard Assessment, *Proposition 65 Maximum Allowable Daily Level (MADL) for Reproductive Toxicity for Cadmium* (May 2001), https://oehha.ca.gov/sites/default/files/media/downloads/crnr/cadmium20madlfinal.pdf; *accord* Cal. Health & Saf. Code §25249.10(c); Brief of Amicus Curiae Attorney General, *Consumer Cause, Inc. v. SmileCare*, 2001 WL 34157470, at *4 (Cal. App. 2 Dist. April 17, 2001).

[22] *See ELF v. Abbott Labs, et al.*, No. CGC-10-503002 (San Francisco Superior Court) at https://webapps.sftc.org/ci/CaseInfo.dll?CaseNum=CGC10503002&SessionID=0003D3206A71F37CCA79EF2E704403F43CAF723C

[23] View Feb. 18, 2014 Consent Judgment at Register of Actions, n.22, *supra*, and attached hereto at Appendix B.

[24] View Feb. 14, 2014 Memorandum Order Granting Motion to Approve Settlements at Register of Actions, n.22, *supra*, and attached hereto at Appendix C.

Dymatize owns PNC and, as plaintiffs readily acknowledge here (*e.g.*, Compl. ¶¶ 1, 24, 27, 29 &

n.12), both are owned by defendant BellRing. Accordingly, PNC and Dymatize are affiliates and the

PNC protein products that are challenged in the complaint in this lawsuit are "covered by th[e]

Consent Judgment":

> The "Protein Supplement Products" covered by this Consent Judgment . . . are: all sizes, flavors, packaging, forms and potencies of "ready-to-drink" liquids, semi-solids and/or "ready to mix" powders and/or pills and/or packets of dietary supplement products and/or foods supplying at least 5 grams of protein in a Daily Serving as defined in this Consent Judgment, previously, currently, or in the future manufactured by, sold by, or distributed directly or indirectly in or into California by, or on behalf of, the Settling Defendant listed above, or its corporate subsidiaries and affiliates, under the trade names and trademarks owned by Settling Defendant or its corporate subsidiaries and affiliates. This definition includes those dietary supplement products and foods otherwise meeting this definition which are first introduced into California subsequent to the Effective Date of this Consent Judgment.[25]

The Consent Judgment legally displaced the default MADLs for lead and substituted new

limits specifically applicable to PNC's protein products.[26] For non-chocolate protein products, the

maximum permissible lead level is now 3 micrograms in a daily serving, and for chocolate protein

products, 4 micrograms.[27] The Consent Judgment specifies that protein supplement products that

comply with these limits "shall be deemed to comply with Proposition 65 with respect to lead . . . ,

and that compliance with this Consent Judgment shall fully and completely satisfy such Settling

Defendant's obligations under Proposition 65 . . . ."[28] The Consent Judgment operates as a "full,

final, and binding resolution of" ELF's claims, "on its behalf and in the public interest."[29]

**E.  Plaintiffs' Claims in the Complaint.**  As an initial matter, plaintiffs do not sue for

personal injuries. Indeed, there is no allegation in this case – or any case – that anyone has been

---

[25] *See* Consent Judgment, n.23, *supra* (attached as Appendix B hereto) at sixth Attachment A (for Dymatize Enterprises, LLC).

[26] ELF (and other public interest plaintiffs) have, without objection from the California Attorney General, subsequently entered into other consent judgments with other protein products companies setting the *same* lead limits. *See, e.g.*, *ELF v. Protein Supplements, LLC*, No. RG19031319 (Alameda Sup. Ct.) at Jan. 28, 2020 consent judgment § 1.5 (citing to *ELF v. Abbott Labs* and other consent judgments), found at https://oag.ca.gov/system/files/prop65/judgments/2019-01074J4368.pdf

[27] *See* Consent Judgment, n.23, *supra* (and Appendix B hereto) at §§ 3.1, 3.2.

[28] *See* Consent Judgment, n.23, *supra* (and Appendix B hereto) at § 3.7.

[29] *See* Consent Judgment, n.23, *supra* (and Appendix B hereto) at §§ 8.1, 8.2. Notably, plaintiffs here also purport to bring their claims "on behalf of . . . the general public." Compl. ¶ 6.

harmed by the levels of lead that plaintiffs allege are in the products. Nevertheless, plaintiffs allege

that defendants' ready-to-drink protein shakes and ready-to-mix protein powders contain

"dangerous," "unsafe" levels of "toxic lead." *See, e.g.*, Compl. p. 5:2 (heading II) & ¶¶ 100, 101,

110, 111, 114, 117, 170, 171, 192.[30] To demonstrate the danger and safety concerns associated with

this level of lead, plaintiffs rely exclusively on their own testing and "the legal limit under

California's Proposition 65." Compl. ¶ 1; *see also id*. ¶ 22 (through "Proposition 65 . . . California

has promulgated a maximum allowable dose level (MADL) for lead . . ."). Plaintiffs specifically

allege that the Proposition 65 limits "help demonstrate the high amount of lead in the Premier

Protein Products." *Id*. n.7; *see also id*. ¶ 73 ("[H]igh levels of lead – with each serving of . . . product

well in excess of the 0.5 µg MADL . . . under . . . Proposition 65").[31]

Just prior to filing their complaint, plaintiffs had "[i]ndependent laboratory" testing done on

defendants' products to identify the levels of lead. *Id*. ¶ 73. That "testing [was] completed in April,

May, and June 2023 by two separate, ISO-accredited laboratories." *Id*. Plaintiffs compare those test

results to what they believe is the Proposition 65 daily limit for lead. *Id*. ¶ 22 & Chart at p. 24.

But plaintiffs use the *wrong* values for the Proposition 65 limits – *i.e.*, they don't use the

levels in the Consent Judgment. When plaintiffs' test results are compared against the *correct*

Proposition 65 limits from the Consent Judgment – and against FDA's lead level guidance regarding

other food and beverages – none of the lead levels in defendants' protein shakes and protein powders

comes close to a level that could possibly (or plausibly) be described as unsafe as demonstrated in

---

[30] Plaintiffs allege that consumers may consume more than one serving per day (Compl. ¶¶ 92-99), but those allegations are not relevant to their complaint given that plaintiffs sue – and seek to certify classes of consumers – for purchase of a *single* serving. *See, e.g.*, Compl. ¶ 120. Regardless, and on a more fundamental basis, the lead levels are still safe, as they are less than FDA's lead levels for baby food and bottled water – both of which are consumed more frequently than once per day and more frequently than protein shakes.

[31] In attempting to develop a record of the dangers of lead, plaintiffs readily acknowledge that the presence of lead and other heavy metals in food is widely written about and generally known. *See, e.g.*, Compl. nn.1-6. And that public knowledge specifically includes the products challenged here. Compl. ¶¶ 85, 90 (history of publicly disclosed issues with defendants and their protein products, "including specially," and "particularly" with "their lead levels" and "as to lead contamination"); *see also id*. ¶ 86 & n.26 ("In 2013 Premier was sent a 60-day Proposition 65 notice by the Environmental Research Center for excessive lead . . . ," and that matter was brought to vindicate the rights of California citizens and was settled on a public basis, with settlement documents available on the California government website).

this chart:

| Product | Lead Level Alleged by Pltfs per Pltfs Tests in *microgram per serving* [Compl. ¶ 73, p. 24] | Lead Level Detected by Pltfs Tests in *parts per billion* | Lead Level *Permitted* by Consent Judgment [p. 7, *supra*] | Lead Level *Permitted* by FDA Candy Guidance [p. 5, *supra*] | Lead Level *Permitted* by FDA Baby Food and Juice Guidance [p. 5, *supra*] | Lead Level *Permitted* by FDA Bottle Water Reg [p. 5, *supra*] |
|---|---|---|---|---|---|---|
| Chocolate Shake | 1.39µg/srv 1.346µg/srv | **4.27 ppb** **4.14 ppb** | 4 µg/srv, or **12.30 ppb** | **100 ppb** | **10** or **20 ppb** | **5 ppb** |
| Vanilla Shake | .498µg/srv .833µg/srv | **1.53 ppb** **2.56 ppb** | 3 µg/srv, or **9.22 ppb** | **100 ppb** | **10** or **20 ppb** | **5 ppb** |
| Caramel Shake | 1.08µg/srv .717µg/srv | **3.32 ppb** **2.20 ppb** | 3 µg/srv, or **9.22 ppb** | **100 ppb** | **10** or **20 ppb** | **5 ppb** |
| Café Latte Shake | 1.33µg/srv .969µg/srv | **4.09 ppb** **2.98 ppb** | 3 µg/srv, or **9.22 ppb** | **100 ppb** | **10** or **20 ppb** | **5 ppb** |
| Vanilla Powder | .529µg/srv | **2.44 ppb** | 3 µg/srv, or **13.86 ppb** | **100 ppb** | **10** or **20 ppb** | **5 ppb** |
| Chocolate Powder | .667µg/srv | **3.05 ppb** | 4 µg/srv, or **18.31 ppb** | **100 ppb** | **10** or **20 ppb** | **5 ppb** |

*See* Appendix A.[32]

Setting aside for the moment plaintiffs' dispositive safe lead level errors, plaintiffs are suing for false advertising and breaches of warranty. Each of those claims are predicated on plaintiffs' allegations that defendants represent the products – through various media (Compl. ¶¶ 32-72) – as *healthy* (*see, e.g.*, *id*. ¶¶ 107, 108, 109, 111, 122(a), 122(b), 144, 145, 168, 189, 192), which plaintiffs allege is not true due to purportedly unsafe levels of toxic lead (*id.* ¶¶ 100, 101, 110, 111, 114, 117, 170, 171, 192).

But in their 16 pages of alleged representations, plaintiffs do not identify a *single* statement about lead. And what defendants specifically *do* say about their products is indisputably true and plaintiffs do not allege otherwise (*e.g.*, "NO ARTIFICIAL GROWTH HORMONES," *id*. ¶ 38; "plant protein," "plant based," and "NO DAIRY OR SOY INGREDIENTS, GLUTEN FREE, LACTOSE FREE," *id*. ¶ 41). Moreover, many of these true statements are permitted and regulated by FDA (*e.g.*, "HIGH PROTEIN SHAKE," *id*. ¶ 38; "healthy snack," *id*.; "ENERGY & IMMUNE health support," *id*.). Other challenged statements are subjective and non-verifiable and simply

---

[32] Defendants converted plaintiffs' microgram-per-serving measurement to ppb. To do so, defendants had to use certain assumptions, but all favored plaintiffs, *i.e.*, all would result in a *higher* ppb lead. For example, an 11 oz serving was used instead of 11.5 oz for shakes, and 6 oz of water instead of 8 oz of milk to prepare a serving of the powder product. *See* Appendix A for the calculation.

1  cannot support false advertising or warranty claims (*e.g.*, "A company built on a simple idea: deliver

2  nutrition that people can't wait to have," *id*. ¶ 44; "modern nutrition you need to feel like the bee's

3  knees," *id*. 52; *see also* summaries of commercials at *id*. ¶¶ 53-63).[33]

4      Plaintiffs further allege that from the healthy product positioning, and independently from the

5  detrimental health effects of lead, defendants have a *duty to disclose* the presence, or the risk of the

6  presence, of unsafe lead levels. *Id*. ¶¶ 74-84. But there are no plausible allegations that the products

7  contain dangerous levels of lead – indeed, as detailed above, plaintiffs' own test results when

8  compared against relevant standards establish exactly the opposite. So there is nothing to disclose

9  and certainly no legal duty to make a disclosure. What's more, as detailed in note 31, *supra*,

10  plaintiffs allege that the public is *already* generally aware of lead in food and is specifically aware of

11  lead in defendants' products.

12      To be sure, and as a fallback, plaintiffs allege that lead is "unsafe in any amount." Compl.

13  ¶ 105. But that throw-away allegation is contrary to FDA's regulations and guidance, and, in any

14  event, does not (and cannot) set a legal standard. If it did, virtually every food purchase could result

15  in a lawsuit.[34]

16  **III.    ARGUMENT**

17      **A.    Plaintiffs Lack Standing To Pursue Their Claims**

18          **1.    Plaintiffs Have Not Plausibly Alleged An Injury In Fact**

19      As a threshold dispositive matter, plaintiffs fail to allege an injury in fact and, thus, lack

20  Article III standing. To establish such standing, a plaintiff must show, at a minimum, that "he or she

21  has suffered an injury in fact that is concrete and particularized, and actual or imminent." *Salmon*

22  *Spawning & Recovery All. v. Gutierrez,* 545 F.3d 1220, 1225 (9th Cir. 2008); *McGee v. S-L Snacks*

23  *Nat'l,* 982 F.3d 700, 706 (9th Cir. 2020).

---

[33] After 16 pages of defendants' alleged representations allegedly relevant to plaintiffs' claims, plaintiffs Krystofiak and Carreno combined specifically allege they saw and relied on *only three*: "High Protein," "Immune Health Support" and "Plant Protein." Compl. ¶¶ 107, 108. Plaintiff Zimmerman does not allege relying on *anything* in particular. *Id*. ¶ 109.

[34] FDA's point about safe levels of lead is only that no safe level has *yet been identified*, **not** that any level above 0 is harmful. Plaintiffs provide no legal authority (there is none) supporting a no-lead standard for defendants' products (or any products). Otherwise, countless fruits and vegetables (*e.g.*, carrots) – and the products containing them – would have to be withdrawn from the market.

1    Plaintiffs do not allege *physical* injury to themselves (or anyone). What the complaint alleges

2    instead is an *economic* injury, *i.e.*, that plaintiffs paid money they otherwise wouldn't have. They

3    would not have purchased the lawful products if they had been aware of the presence, or risk of the

4    presence, of dangerous levels of toxic heavy metals. Compl. ¶¶ 107-109, 114. According to

5    plaintiffs, without a disclosure about lead, defendants' products are "worthless." *Id.* ¶ 171.

6    An unambiguous line of court decisions holds that plaintiffs' hypothetical economic injury

7    under the allegations here cannot confer standing. For example, in *Herrington v. Johnson & Johnson*

8    *Consumer Companies,* 2010 WL 3448531 (N.D. Cal. Sept. 1, 2010), plaintiffs alleged injury from

9    "unknowingly purchas[ing] products containing potential carcinogens . . . that 'they would have

10   never purchased . . . had they known of the presence of these contaminants.'" *Id.* at *4. The court

11   rejected the theory under Article III, reasoning that the plaintiffs failed to plead "a distinct risk of

12   harm from a defect in Defendants' products that would make such an economic injury cognizable."

13   *Id.*; *see also Koronthaly v. L'Oreal USA, Inc.*, 374 F. App'x 257, 259 (3d Cir. 2010) (no standing

14   based on alleged "[b]enefit of bargain" injury premised only on the "subjective allegation that the

15   trace amounts" of lead and cadmium at issue "are unacceptable to her"); *Kimca v. Sprout Foods,*

16   *Inc.*, 2022 WL 1213488, at *6 (D.N.J. Apr. 25, 2022) (where product containing trace heavy metals

17   nonetheless "perform[s] [its] intended purpose" without creating a plausible "risk of [physical]

18   harm," there is no "benefit of the bargain" injury); *In re Gerber Prods. Co. Heavy Metals Baby Food*

19   *Litig.*, 2022 WL 10197651, at *6-7 (E.D. Va. Oct. 17, 2022) (conclusory allegations that the trace

20   heavy metals were "unsafe" insufficient to confer standing); *In re Plum Baby Food Litig*, --- F.

21   Supp. 3d ----, 2022 WL 16552786 (D.N.J. Oct. 31, 2022) (consumers failed to allege injury-in-fact

22   under either benefit of the bargain or premium price theories based on the presence of trace heavy

23   metals).[35]

24

25   [35] It's not sufficient for plaintiffs to "simply characterize [their] purchasing decision[s] as an
     economic injury." *In re Johnson & Johnson Talcum Powder Prods. Mktg., Sales Practices & Liab.*

26   *Litig.*, 903 F.3d 278, 281 (3d Cir. 2018), cited with approval by *McGee*, 982 F.3d at 706. Rather,
     plaintiffs must "allege facts that would permit a factfinder to determine, without relying on mere

27   conjecture, that [plaintiffs] failed to receive the economic benefit of [their] bargain." *Id.* 281, 285;
     *see also Caudel v. Amazon.com, Inc.*, 2021 WL 4819602, at *3 (E.D. Cal. Oct. 15, 2021) (finding
     lack of injury-in-fact, despite complaint's allegation that plaintiff "receive[d] a product worth less

28   than" the purchase price, where the alleged diminution in value was insufficiently "distinct and
     palpable" to satisfy plausibility test).

Plaintiffs' allegations are no better than those *Herrington*, *Koronthaly, Kimca*, *Gerber* and *Plum* rejected. Plaintiffs do not allege (because they can't) that *any* of the protein products they purchased contained levels of heavy metals that rendered them unsafe to consume or devoid of nutrition and were, therefore, worthless. That tracks with California's and FDA's clear pronouncements that food with lead levels well above defendants' products are not harmful and are safe to consume. *See Brazil v. Dole Packaged Foods LLC*, 660 F. App'x 531, 534 (9th Cir. 2016) (full refund model inappropriate because some benefits were conferred); *In re Tobacco Cases II,* 240 Cal. App. 4th 779, 802 (2015) (full refund damages only proper where product confers no benefit).

Whether phrased as paying money they otherwise wouldn't or a benefit-of-the-bargain theory of injury, neither works. As an initial matter, defendants never made any representations about lead levels in the products. Moreover, trace amounts of substances (including heavy metals) in consumer products do not negate the value of the consumer's purchase.

*Boysen v. Walgreen Co*., 2012 WL 2953069, at *4 (N.D. Cal. July 19, 2012), is instructive. There, the court found that plaintiffs lacked standing to bring a claim against a company for failure to disclose that its juice product contained lead. *Id*. at *1, 7. The plaintiffs admitted (as plaintiffs have effectively done here, p. 9, *supra*) that the levels of lead in the juice were below FDA limits and that no plaintiff alleged physical harm. *Id*. at *1-2. Instead, plaintiffs argued that they had been injured because they would not have bought the juice if they had known it contained any amount of lead. *Id*. The court rejected this theory of injury because, without any allegation that the juice tended to cause actual physical harm, plaintiffs had received the benefit of the bargain and thus had not alleged how purchasing the juice had injured them. *Id*. at *7; *see also Koronthaly v. L'Oreal USA, Inc.,* 2008 WL 2938045, at *4-5 (D.N.J. July 29, 2008), *aff'd*, 374 F. App'x 257 (3d Cir. 2010) (plaintiff lacked standing where trace amounts of lead in lipstick did not exceed FDA standards); *Moreno v. Vi-Jon, Inc.,* 2021 WL 807683 (S.D. Cal. March 3, 2021) (no injury where plaintiff failed to allege that the hand sanitizer he purchased did not perform as advertised); *Doss v. Gen. Mills, Inc.,* 816 F. App'x 312, 314 (11th Cir. 2020) (no economic injury where plaintiffs alleged "ultra-low levels of glyphosate . . . may be harmful to human health"); *Green v. PepsiCo, Inc.,* 2019 WL 8810364, at *1, 3 (S.D. Fla. Apr. 12, 2019) (plaintiff failed to allege an injury in fact based on

12

alleged trace amounts of residual glyphosate); *Kimca v*, 2022 WL 1213488; *In re Gerber*, 2022 WL 10197651; *In re Plum*, 2022 WL 16552786; *see also McGee,* 982 F.3d at 706 (plaintiff's assumption that food product contained only safe and healthy ingredients was not part of the bargain).

*As a stand-alone, significant argument*, plaintiffs fail to allege that *the specific protein products they purchased* contained any lead, at a dangerous level or otherwise. That provides another, independent basis to dismiss the complaint on standing grounds. *See, e.g., Wallace v. ConAgra Foods, Inc.*, 747 F.3d 1025, 1030-31 (8th Cir. 2014) ("plaintiffs must allege that their product actually exhibited the alleged defect"); *Gaminde v. Lang Pharma Nutrition, Inc*., 2019 WL 1338724 (N.D.N.Y. Mar. 25, 2019) (lack of standing where plaintiff had not tested the particular product he purchased); *In re Apple Processor Litig*., 2019 WL 3533876, at *8 (N.D. Cal. Aug. 2, 2019). This argument is particularly applicable here where plaintiffs *did* have testing conducted – though not of their *own* products – and those test results demonstrated entirely lawful levels of lead and variations of lead levels in the discrete products tested. *Supra*, p. 9. Indeed, at least one product plaintiffs tested came in *under* the (incorrectly high) MADL plaintiffs used. Compl. p. 24 (1st listed test result for vanilla shake).

### 2. Plaintiffs Lack Standing As To Products Not Purchased

Plaintiffs bring claims regarding numerous of defendants' ready-to-drink protein shakes and ready-to-mix protein powders (Compl. ¶¶ 32-34, 73), but they do not allege the specific products they purchased (*id*. ¶¶ 107-09). Indeed, the only product specifically identified as purchased by one of the plaintiffs is the chocolate powder product. *Id*. ¶ 108. Because plaintiffs have failed to allege that they purchased all of the products or that all are substantially similar as to the alleged false advertising, plaintiffs have failed to allege standing to sue over products that they di not specifically purchase. *Wilson v. Frito-Lay N. Am., Inc*., 961 F. Supp. 2d 1134, 1140 (N.D. Cal. 2013); *Krause-Pettai v. Unilever United States, Inc*., 2021 WL 1597931 at *7 (S.D. Cal. Apr. 23, 2021).

### 3. Plaintiffs Lack Standing To Seek Injunctive Relief

Plaintiffs also lack Article III standing to pursue injunctive relief because they do not allege – as they must – a likelihood of suffering imminent and irreparable injury in the future without an injunction. *Davidson v. Kimberly-Clark Corp.,* 889 F.3d 956, 966-72 (9th Cir. 2018); *see*

*also Stover v. Experian Holdings, Inc.,* 978 F.3d 1082, 1087 (9th Cir. 2020). Plaintiffs must demonstrate "a sufficient likelihood that [they] will again be wronged in a similar way," but cannot do so. *City of L.A. v. Lyons*, 461 U.S. 95, 111 (1983). As the complaint readily and repeatedly acknowledges, plaintiffs are now fully aware that heavy metals are ubiquitous in the environment and that it is not possible to eliminate heavy metals in the food supply. That is true specifically (allegedly) of defendants' protein products as the avalanche of allegations in the complaint make crystal clear. Moreover, plaintiffs' assertion they "would" purchase the products again in the future "if" they could be certain that they do not contain unsafe lead (Compl. ¶ 117) is too vague and uncertain to establish a likelihood of imminent harm. *See Lanovaz v. Twinings N. Am., Inc.,* 726 F. App'x 590, 591 (9th Cir. 2018) (plaintiffs "would 'consider buying'" allegations are insufficient because a "some day" intention does not support a finding of actual or imminent injury (quotation marks and citation omitted)); *see also Hesse v. Godiva Chocolatier, Inc.*, 463 F. Supp. 3d 453, 465 (S.D.N.Y. 2020); *Berni v. Barilla S.p.A.*, 964 F.3d 141, 148-49 (2d Cir. 2020). All of this is particularly applicable here, where plaintiffs allege they would not have purchased the products at all had they known the product "contained, or even potentially contained lead." Compl. ¶¶ 107-109, 114.

### B.  Plaintiffs Also Fail To Plausibly Allege Deception or Materiality

Plaintiffs' deception claims (UCL, FAL, CLRA, GBL 349, GBL 350, negligent and intentional misrepresentation) are implausible for two independent reasons. *First*, consumers are not deceived into purchasing products that contain benign amounts of naturally occurring elements, like lead. This is true whether based on what a reasonable consumer would believe, or the alleged affirmative misstatements – none of which actually mention lead, let alone make any misrepresentations about it.

The reasonable consumer standard that applies to plaintiffs' claims "requires more than a mere possibility that [the product's] label might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner." *Becerra v. Dr Pepper/Seven Up, Inc.,* 945 F.3d 1225, 1228 (9th Cir. 2019); *see also Moore v. Trader Joe's*, 4 F.4th 874, 882 (9th Cir. 2021). "[T]he standard is not a least sophisticated consumer" or an "unwary consumer." *Hill v. Roll Int'l Corp.*,

195 Cal. App. 4th 1295, 1304 (2011). "Rather, the reasonable consumer standard requires a probability that a significant portion of the general consuming public or of targeted consumers, acting reasonably under the circumstances, could be misled." *Becerra*, 945 F.3d at 1228-29. Relying, as they do on a grab-bag of advertisements – none of which expressly or impliedly references lead – plaintiffs fail to plausibly allege that consumers are deceived into thinking the protein products are free of lead. Put simply, reasonable consumers do not read a statement and then "assume things about the product other than what the statement actually says." *Red v. Kraft Foods Inc*., 2012 WL 5504011, at *3 (C.D. Cal. Oct. 25, 2012). And as the Ninth Circuit, and other courts have made clear, manufacturers like defendants have no duty to "anticipate and affirmatively dispel . . . shoppers' idiosyncratic assumptions or wholly incorrect interpretations of [their] labeling." *Thomas v. Costco Wholesale Corp*., 2022 WL 636637, at *2 (9th Cir. Mar. 4, 2022); *see also Renfro v. Champion Petfoods USA, Inc*., 25 F.4th 1293, 1304 (10th Cir. 2022) (affirming dismissal of heavy metals lawsuit and rejecting plaintiffs' attempt to "implausibly allege [that] vague packaging statements . . . mean something they do not say").[36]

As an initial matter, consumers are not deceived by – and defendants have no duty to disclose – safe levels of lead in their products. Otherwise, the periodic table would need to be included on virtually all of the food labels in the grocery store given the numerous elements that naturally exist in our food that FDA has decided should not be declared on the label (*e.g*., zinc). Not surprisingly, courts routinely find that the presence of naturally occurring contaminants in food at safe levels does not state a claim because it is "not likely to affect consumers' decisions in purchasing the product and is thus not material." *Parks v. Ainsworth Pet Nutrition,* LLC, 377 F. Supp. 3d 241, 248 (S.D.N.Y. 2020); *see also Parks v. Ainsworth Pet Nutrition,* LLC, 2020 WL 832863, at *1 (S.D.N.Y. Feb. 20, 2020) (negligible level "lower than the FDA's limit, . . . supports a finding that the Products' glyphosate residue is not likely to affect consumer choice"). A chemical exposure at a level that does not require a warning under Proposition 65 cannot be a "'material' fact subject to disclosure." *Gutierrez v. Johnson & Johnson Consumer, Inc*., 2020 WL 6106813, at *5-6 (S.D. Cal. Apr. 27, 2020). Indeed, if *any* level of undisclosed lead in a food product were deemed misleading

---

[36] New York law is the same. *Shapiro v. Berkshire Life Ins*., 212 F.3d 121, 126 (2d Cir. 2000).

under the "reasonable consumer" standard, "consumers would have grounds to sue the manufacturer of nearly every product in a typical grocery store" – a "preposterous" result. *Weaver v. Champion Petfoods USA Inc.,* 2019 WL 2774139, at *2-3 (E.D. Wis. July 1, 2019).

Given that same ubiquity of lead in the environment – reasonable consumers don't assume that products are free of naturally occurring lead or that they do not contain trace levels that FDA and California's Attorney General have recognized as safe. *See Hawyuan Yu v. Dr Pepper Snapple Grp., Inc.*, 2020 WL 5910071, at *5 (N.D. Cal. Oct. 6, 2020) ("[I]t [is] implausible that a reasonable consumer would believe that a product . . . could not contain  a trace amount of [a contaminant] that is far below the amount deemed tolerable by the FDA."); *Parks,* 377 F. Supp. 3d at 247-48 ("a reasonable consumer would not be so absolutist as to require that 'natural' means there is not glyphosate, even an accidental and innocuous amount"). Thus, as a matter of law, reasonable consumers would not be deceived by the facts alleged here.[37]

Nor, as previously detailed, have plaintiffs plausibly alleged reliance on alleged affirmative misrepresentations. *See,* pp. 9-10 & n.33, *supra*. None of the statements addresses lead and each is factually accurate – and plaintiffs don't allege otherwise. Some of them are subjective puffery. None helps plaintiffs because plaintiffs must "show that members of the public are likely to be deceived" by these statements in the manner alleged. *Becerra*, 945 F.3d at 1228. These statements "either have nothing to do with the safety of [the products], or are too vague to mislead a reasonable consumer and therefore are immaterial." *Leonard v. Abbott Labs., Inc*. 2012 WL 764199, at * 21-22 (E.D.N.Y. Mar. 5, 2012) (statements that product "provid[es] babies with excellent nutrition for growth and

---

[37] *See also Herrington*, 2010 WL 3448531, at *8 (dismissing omission claims regarding trace amounts of formaldehyde and dioxane for failure to allege facts showing that omissions were material to reasonable consumers); *In re Gen. Mills Glyphosate Litig*., 2017 WL 2983877, at *5 (D. Minn. July 12, 2017) (not plausible that a reasonable consumer would be deceived by trace glyphosate in food product); *Axon v. Citrus World, Inc*., 354 F. Supp. 3d 170, 183 (E.D.N.Y. 2018), *aff'd sub nom. Axon v. Florida's Nat. Growers, Inc*., 813 F. App'x 701 (2d Cir. 2020) ("it [is] 'implausible that a reasonable consumer would believe that a product labeled ['Florida's Natural'] could not contain a trace amount of glyphosate that is far below the amount' deemed tolerable by the FDA.") (alteration in original) (citation omitted) (affirming district court's grant of a motion to dismiss); *Tran v. Sioux Honey Ass'n*, 2020 WL 3989444, at *4-5 (C.D. Cal. July 13, 2020) (no evidence reasonable consumers are deceived by the presence of trace amounts of glyphosate); *Gibson v. Quaker Oats Co*., 2017 WL 3508724, at *4 (N.D. Ill. Aug. 14, 2017) (dismissing claims based on the alleged presence of glyphosate as preempted); *Yu v. Dr Pepper Snapple Grp*., 2019 WL 2515919, at *3 (N.D. Cal. June 18, 2019) (reasonable consumer would not understand "Natural" to mean the absence of residual pesticides, which are below allowable tolerances).

development" and "aid[s] brain, bone and immune system development" are immaterial and not actionable). "Generalized, vague and unspecified assertions are mere 'puffery' upon which a reasonable consumer may not rely." *Klaehn v. Cali Bamboo LLC*, 2022 WL 1830685, at *1 (9th Cir. June 3, 2022).

These statements are not somehow partial disclosures or representations that give rise to a duty to provide further information. Defendants made *no* representations about the presence of lead in the products. *Simpson v. Champion Petfoods USA, Inc.*, 397 F. Supp. 3d 952, 972 (E.D. Ky. 2019) ("[T]he representations on Champion's packaging are not the type of 'partial disclosure' that gives rise to a duty to disclose every facet of the product's makeup. The fact that heavy metals naturally exist in organic proteins . . . belies Plaintiffs' logic that Champion had a duty to disclose this information. Champion did not claim that its products were free from any heavy metals and any inference to the contrary reads too much in Champion's representations."). "[A] 'company is not required to volunteer [information] simply because it makes statements about the high quality of its products and terms of its warranties." *Id.* 972. Otherwise, "virtually any information not included on a package's label would amount to a failure to disclose." *Id.*

**Second**, plaintiffs' alleged ignorance of the ubiquitous nature of lead is implausible as a matter of law, since it's directly contradicted by the allegations in the complaint. *See* n.31, *supra*. The complaint repeatedly and readily acknowledges the existence of widespread, general public knowledge, information, and research regarding lead in food, as well as specific disclosures regarding lead in defendants' protein products. *Id.* These allegations are dispositive because plaintiffs are held to the common knowledge, experience, and sense that the reasonable consumer brings to the shopping process – and that specifically includes the knowledge that heavy metals are present in food. *Paradowski v. Champion Petfoods USA, Inc.*, 2023 WL 3829559 (2d Cir. June 6, 2023) ("The fact that Champion's pet foods contained heavy metals was information reasonably obtainable to the Plaintiff"); *see also, e.g., Moore,* 4 F.4th at 882 ("court [should] consider[] other [non-product-label] information readily available to the consumer that could easily resolve the alleged ambiguity"); *McGee*, 982 F.3d at 707-708 (consumers know that trans fat comes from partially hydrogenated oil and that trans fat is not healthy).

### C.  Plaintiffs' Claims Are Barred By The Consent Judgment

*Res Judicata.* The Consent Judgment was a full, final, and binding resolution of any alleged violations of Proposition 65 for failure to provide warnings regarding lead exposure on defendants' protein products, on behalf of both ELF *and for the general public*. Cal. Code Regs. Tit. 27, § 25600(e). Entities, like defendants, "who enter into a comprehensive settlement for the benefit of the public have an interest in finality and in being free from a series of additional suits from members of the public, the same class that was represented in the first suit." *Consumer Advocacy Grp. v. ExxonMobil Corp.*, 168 Cal. App. 4th 675, 690 (2008).

"Under the doctrine of res judicata, a valid, final judgment on the merits is a bar to a subsequent action by the parties or their privies on the same cause of action." *Villacres v. ABM Indus. Inc*., 189 Cal. App. 4th 562, 575-77 (2010). The definition of "cause of action" is broad, encompassing any claim "related to the subject matter and relevant to the issues" in the prior action. *Id*. It doesn't matter if the second suit seeks "different forms of relief" or raises different "legal theor[ies]." *Id*.; *see also Barnes v. Natural Organics, Inc*., 2022 WL 4283779, at n.2 (C.D. Cal. Sept. 13, 2022) (dismissal appropriate per consent judgment as to claims specific to lead).

Plaintiffs here were members of the general public whose legal interests were represented by ELF and the Attorney General, and whose claims were released in the *ELF* litigation. *See Citizens for Open Access v. Seadrift Ass'n*, 50 Cal. App. 4th 1053, 1070-74 (1998); *Gates v. Superior Court*, 178 Cal. App. 3d 301, 305-08 (1986). The *ELF* lawsuit relates to the subject matter of this case. *Villacres*, 189 Cal. App. 4th at 575-77. Simply put, *res judicata* applies and plaintiffs are not entitled at a second bite at the proverbial apple. *See supra*, pp. 5-7.

*Safe Harbor*. Plaintiffs' claims are separately barred by the safe harbor doctrine because the California Legislature has "considered [the] situation and concluded no action should lie" and "courts may not override that determination" via California's open-ended consumer protection statutes. *Cel-Tech Communications, Inc. v. L.A. Cellular Tel. Co*., 20 Cal. 4th 163, 182 (1999); *see also Baum v. J-B Weld Co., LLC*, 2020 WL 4923624, at *2-3 (N.D. Cal. Aug. 21, 2020) ("[T]he California legislature did not intend a claim of false 'Made in USA' representations to lie where the 5% safe harbor is not exceeded").

1   Specifically, Proposition 65 delegates to California's Attorney General the authority to

2   determine, in the public interest, when enforcement of Proposition 65's warning requirements is

3   appropriate. *See* Cal. Health & Saf. Code § 25249.7(c), (f)(5); *Consumer Def. Grp. v. Rental Hous.*

4   *Indus. Members*, 137 Cal. App. 4th 1185, 1206 (2006) ("The one party who necessarily represents

5   the public interest in any Proposition 65 litigation is the Attorney General"). The Attorney General

6   exercised this authority by endorsing the Consent Judgment (*see* Appendix B), which provides that

7   defendants need not warn about lead unless present at levels far higher than those alleged here (*see*

8   Appendix A). Courts may not second-guess that determination by deeming defendants' conduct –

9   *which complies with the Consent Judgment* – a "fraudulent" or "unfair" practice. *Cf. Price v. Philip*

10  *Morris, Inc*., 848 N.E. 2d 1, 50 (Ill. 2005) (safe harbor doctrine precluded consumer protection claim

11  where FTC consent order approved challenged label); *Mulford v. Altria Grp., Inc*. 506 F. Supp. 2d

12  733, 762 (D.N.M. 2007) (same).

13  This case closely resembles *Charles v. Sutter Home Winery, Inc*., 232 Cal. Rptr. 3d 513, 522

14  (Cal. Ct. App. 2018), *review denied and ordered depublished*, (Cal. Aug. 8, 2018).[38] In *Charles*, the

15  plaintiff alleged that the defendants' wines "contain[ed] . . . unsafe levels of . . . arsenic," and that

16  the failure to disclose that fact violated Proposition 65, as well as the UCL, CLRA and FAL and

17  common law. *Charles*, 232 Cal. Rptr. 3d at 516, 527-28. The challenged wines' labels already bore a

18  warning whose sufficiency had been "central to" a consent judgment entered in a prior Proposition

19  65 suit after approval by the Attorney General. *Id*. at 516-71, 525-27. The court rejected the

20  plaintiff's claims on *res judicata* based on a prior consent judgment and on safe harbor grounds.

21  **D.  Plaintiffs Failed To Comply With Proposition 65's Prerequisites**

22  Plaintiffs were required to provide at least 60 days' notice to defendants and state prosecutors

23  and provide a certification of merit, all before filing a Proposition 65 action. Cal. Health & Saf. Code

24  § 25249.7(d)(1); *In re Vaccine Cases*, 134 Cal. App. 4th 438, 456 (2005). Plaintiffs did not comply

25  with these foundational requirements. That defect "cannot be [] cured," and requires dismissal "with

26

27  [38] The California Supreme Court's order depublishing *Charles* means it's no longer precedential, but
    it does not undermine the correctness of the decision. Cal. Rule of Court 8.1125(d); *State Farm Mut.*
    *Auto Ins. Co. v. Davis*, 937 F.2d 1415, 1420 n.4 (9th Cir. 1991). Federal courts "may consider such

28  depublished . . . decisions when construing California law." *Bao Yi Yang v. Shanghai Gourmet, LLC*,
    471 F. App'x 784, 788 (9th Cir. 2012).

1    prejudice" of the complaint. *Gutierrez v*, 2020 WL 6106813, at *3; *see also Physicians Comm. for*

2    *Responsible Medicine v. KFC Corp.*, 224 Cal. App. 4th 166, 179 (2014) (failure to comply with pre-

3    suit notice with certificate of merit requires dismissal).

4        Plaintiffs, instead, purport to disclaim bringing a Proposition 65 action. *See* Compl., n.7. But

5    that allegation is legally irrelevant for at least two reasons. First, if the matter is one that should be

6    brought under Proposition 65, then it needs to be brought under Proposition 65 if it is to be brought

7    at all. *Gutierrez*, 2020 WL 6106813. "A plaintiff cannot sidestep [Proposition 65's] requirements"

8    where they apply, and certainly can't do so "by trying to use" consumer protection statutes or

9    common-law theories "to plead around a claim that would be barred under Proposition 65." *Harris v.*

10   *R.J. Reynolds Vapor Co*., 2016 WL 6246415, at *2 (N.D. Cal. Sept. 30, 2016); *Hanna v. Walmart*

11   *Inc*., 2020 WL 7345680, at *4 (C.D. Cal. Nov. 4, 2020). That plaintiffs' claims are Proposition 65

12   claims is hardly debatable. All of the claims are based on defendants' alleged failure to disclose lead

13   at levels alleged to be in excess of Proposition 65's MADLs. Compl. ¶¶ 73, 81.

14       Second, on June 7, 2023 – the *same* day that the complaint in this case was filed – plaintiffs'

15   counsel (albeit on behalf of a different consumer) issued a 60-day notice of intent to sue the *same*

16   defendants here under Proposition 65 challenging the *same* products on the *same* presence-of-lead

17   theory.[39] In other words, plaintiffs' counsel here *absolutely understands* that the claims in this

18   lawsuit overlap with Proposition 65, so much so that they are simultaneously pursuing a parallel

19   action under Proposition 65.

20       **E.  Plaintiffs' Claims Fall Under FDA's Primary Jurisdiction And, Separately,**

21       **Should Be Dismissed Under Implied and Express Preemption**

22       **Primary Jurisdiction.** At a minimum, the case should be dismissed (or stayed) because its

23   subject matter – the regulation of lead in the U.S. food supply and related food product labeling –

24   should be left to the consideration, judgment, and determinations of FDA, the federal agency with

25   jurisdiction over these issues, with the expertise and resources to handle them properly, and with a

26   current open formal docket considering rulemaking over lead (beginning with baby food). *Backus v.*

27   *Gen. Mills, Inc.*, 122 F. Supp. 3d 909, 933–35 (N.D. Cal. 2015).

28

---

[39] *See* https://oag.ca.gov/system/files/prop65/notices/2023-01605.pdf

MOTION TO DISMISS                                         Case No. 3:23-cv-2819-AGT

1    "Primary jurisdiction . . . permits courts to determine 'that an otherwise cognizable claim

2    implicates technical and policy questions that should be addressed in the first instance by the agency

3    with regulatory authority over the relevant industry rather than by the judicial branch.'" *Astiana v.*

4    *Hain Celestial Grp., Inc.,* 783 F.3d 753, 760 (9th Cir. 2015) (citation omitted). That doctrine "allows

5    courts to stay proceedings or to dismiss a complaint without prejudice pending the resolution of an

6    issue within the special competence of an administrative agency," *Clark v. Time Warner Cable*, 523

7    F.3d 1110, 1114 (9th Cir. 2008), and applies where, as here, "a claim 'requires resolution of . . . a

8    particularly complicated issue that Congress has committed to a regulatory agency" and when

9    "protection of the integrity of a regulatory scheme dictates preliminary resort to the agency which

10   administers the scheme." *Reese v. Odwalla, Inc.*, 30 F. Supp. 3d 935, 940 (N.D. Cal. 2014).

11   Courts consider four factors in determining whether to apply the primary jurisdiction

12   doctrine: "(1) the need to resolve an issue that (2) has been placed by Congress within the

13   jurisdiction of an administrative body having regulatory authority (3) pursuant to a statute that

14   subjects an industry or activity to a comprehensive regulatory authority that (4) requires expertise or

15   uniformity in administration." *Syntek Semiconductor Co. v. Microchip Tech.,* 307 F.3d 775, 781 (9th

16   Cir. 2002) (amended); accord *Astiana*, 783 F.3d at 760.

17   Based on these factors, at least five courts have recently dismissed or stayed claims involving

18   alleged lead in food. *Gerber*, 2022 WL 10197651, at *11; *In re Beech-Nut Baby Food Litig*., --- F.

19   Supp. 3d ----, 2023 WL 350818, at *4 (N.D.N.Y. Jan. 19, 2023); *Kimca*, 2022 WL 3586095, at *2-4;

20   *Wilson v. Walmart Inc*., No. 3:21-cv-00082 (E.D. Ark.), Dkt. No. 139; *Dist. of Columbia v. Beech-*

21   *Nut Nutrition Co*., No. 2021 CA 001292B (Sup. Ct. of Dist of Columbia), June 5, 2023 order.

22   Indeed, the flood of recent class action lawsuits suing for the presence of heavy metals in

23   food (e.g., baby food, dark chocolate, pet food, spices, etc.) demonstrates the compelling need for

24   "uniformity in administration" (*Clark*, 523 F.3d at 115), and the "substantial danger of inconsistent

25   rulings if individual courts make determinations regarding heavy metals" (*Beech-Nut*, 2023 WL

26   350818, at *4).

27   **Implied Preemption.** Relatedly, plaintiffs' theory of liability – that safe amounts of lead in

28   food are actually dangerous and that food labels should declare the presence of the (safe levels of)

21

lead – conflicts with FDA's considered judgment that food with these levels of lead is safe and that labels do not need to disclose lead. *See* pp. 3-5, *supra*. Accordingly, plaintiffs' claims are impliedly preempted. *See Geier v. Am. Honda Motor Co.*, 529 U.S. 861, 881-82 (2000); *Cohen v. Apple Inc.*, 46 F.4th 1012 (9th Cir. 2022); *Farina v. Nokia*, 625 F.3d 97 (3d Cir. 2010).

FDA regularly monitors food for safety – including for lead levels – through, among other ways, its Total Diet Study ("TDS"). FDA also relies on its expertise to decide whether companies should warn consumers about naturally occurring lead that might be in food – and has made the judgment *not* to require labeling or warnings about lead. In doing so, FDA exercised sound judgment that may not be challenged here. As FDA explained in discussing the chemical hazard acrylamide:

> FDA is concerned that premature labeling of many foods with warnings about dangerous levels of acrylamide would confuse and could potentially mislead consumers, both because the labeling would be so broad as to be meaningless and because the risk of consumption of acrylamide in food is not yet clear. . . . Furthermore, consumers may be misled into thinking that acrylamide is only a hazard in store-bought food. . . . Consumers who avoid eating some of these foods, such as breads and cereals, may encounter greater risks because they would have less fiber and other beneficial nutrients in their diets. For these reasons, premature labeling requirements would conflict with FDA's ongoing efforts to provide consumers with effective scientifically based risk communication to prevent disease and promote health.[40]

This exact rationale applies with equal force here.

**Express Preemption.** Some of defendants' label statements that plaintiffs reference in the complaint (*supra*, pp. 9-10) are regulated by FDA and may not be challenged as deceptive in the manner alleged. For example, plaintiffs challenge "High Protein" and claim it is a deceptive statement in a product that may contain some lead. *See* n.33, *supra*. FDA's requirements to make a "High Protein" label statement regarding food can be found at 21 C.F.R § 101.54 and nothing therein requires a lead disclosure or otherwise prohibits the label statement based on lead in the food. Plaintiffs' attempt to impose lead requirements not identical to the federal food label laws relating to a high protein claim, therefore, is expressly preempted. 21 U.S.C. § 343-1(a)(5) (as it incorporates 21 U.S.C. § 343(r)(1)(A)); *Hadley v. Kellogg Sales Co.*, 273 F. Supp. 3d 1052, 1070-79 (N.D. Cal.

---

[40] *See* OEHHA, *Acrylamide Briefing Binder* (Oct. 17, 2003) at pages 27 to 29 https://oehha.ca.gov/media/downloads/crnr/acrylbrief.pdf; *see also* https://www.fda.gov/news-events/press-announcements/statement-fda-commissioner-scott-gottlieb-md-fdas-support-exempting-coffee-californias-cancer

2017). As the Ninth Circuit recently confirmed:

> The intricacy of the FDA's nutrition-labeling regulations reflects the agency's careful compromises among the diverse interests of its stakeholders. If Plaintiffs believe that a reasonable consumer would assume that all proteins are created equal, and that any products marketed as containing a certain quantity of protein provide identical protein-based health benefits, they are free to urge the FDA to amend the regulations or to challenge the agency's rules as inconsistent with its statutory mandate. In this case, sustaining Plaintiffs' challenge to Defendants' protein claims would indirectly establish a requirement for food labeling that differs from the federal requirements, so the FDCA preempts Plaintiffs' state-law claims.

*Nacarino v. Kashi Company*, --- F.4th ----, 2023 WL 5192559 at *10 (9th Cir. Aug. 14, 2023).

The exact same is true with regard to use of the word healthy to describe food. 21 CFR 101.65(d)(2); 21 U.S.C. § 343-1(a)(5) (as it incorporates 21 U.S.C. § 343(r)(1)(A)).

### F. Plaintiffs' Claims Fail For Additional Reasons

***Breach of Implied and Express Warranty.*** As an initial matter, plaintiffs have not alleged a breach of warranty for the same reasons they have not plausibly alleged deception, *i.e.*, defendants do not make the representations alleged. *Girard v. Toyota Motor Sales, U.S.A., Inc.*, 316 F. App'x 561, 563 (9th Cir. 2008). Moreover, plaintiffs must, but fail to plausibly allege that the products they purchased are defective or not fit for the ordinary purpose for which the products are used. *See, e.g.*, *Hauter v. Zogarts,* 14 Cal. 3d 104, 117-18 (1975); *Barreto v. Westbrae Nat.*, 2021 WL 76331, at *7 (S.D.N.Y. Jan. 7, 2021); *Sportmart, Inc. v. Spirit Mfg.,* 1999 WL 350662, at *3 (N.D. Ill. May 17, 1999); *Stearns v. Select Comfort Retail Corp.,* 2009 WL 1635931, at *8 (N.D. Cal. June 5, 2009). Further, plaintiffs fail to allege the required element of privity. *Dei Ross v. Whirlpool Corp.*, 2015 WL 1932484, at *9 (E.D. Cal. Apr. 28, 2015) (express); *Corbett v. PharmaCare U.S., Inc.*, 567 F. Supp. 3d 1172, 1197 (S.D. Cal. 2021) (express); *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1023-24 (9th Cir. 2008) (implied). Finally, plaintiffs fail to allege reliance on the alleged warranties, which provides a separate basis requiring dismissal. *Asghari v. Volkswagon Group of Amer., Inc.*, 42 F. Supp. 3d 1306 (C.D. Cal. 2013); *Koenig v. Boulder Brands, Inc.*, 995 F. Supp. 2d 274, 289 (S.D.N.Y. 2014); *Weiner v. Snapple Beverages Corp.*, 2010 WL 3119452, at *11 (S.D.N.Y. Aug. 5, 2010).

***Fraud Claims.*** Plaintiffs' complaint sounds in fraud (Compl. ¶¶ 132-33, 195-201) and must,

23

but fails to, meet the particularity requirement of Fed. R. Civ. P. 9(b). *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009). Among other things, plaintiffs fail to allege which specific products they purchased and when, what defendants' representations about those (unidentified) products they saw and relied on in their purchasing decision, what specific reasonable expectation they drew from the representations, and how specifically their expectations in the products was frustrated by what they received. *Gutierrez v. Johnson & Johnson Consumer, Inc*., 2021 WL 822721, at *5 (S.D. Cal. Jan. 22, 2021). Plaintiffs have failed to allege facts that "give rise to a strong inference of fraudulent intent." *Campienello Imps. Ltd. v. Saporiti Italia S.p.A*., 117 F.3d 655, 633 (2d Cir. 1994).

  ***Unjust Enrichment & Equitable Claims***. Because plaintiffs' unjust enrichment claim is "derivative of th[e] same facts" underlying their other deficient claims, it fails for the same reasons as the other claims. *Aellis O. v. Connor*, 2022 WL 2229421, at *8 (S.D. Cal. June 21, 2022). All equitable claims must also be dismissed because plaintiffs fail to plead that they lack an adequate remedy at law. *See Sonner v. Premier Nutrition Corp*., 971 F.3d 834, 844 (9th Cir. 2020).

  ***Negligent Misrepresentation***. In many jurisdictions, including plaintiff Zimmerman's home state of New York (Compl. ¶¶ 13, 109), a claim for negligent misrepresentation requires a "special or privity-like relationship" between the parties, which is entirely absent here. *Mandarin Trading Ltd. V. Wildenstein*, 16 N.Y.3d 173, 180 (2011); *Kimmel v. Schaefer*, 89 N.Y.2d 257, 263 (1996).

### G. Request for Judicial Notice

  The records referenced at footnotes 1, 2, 3, 5, 6, 8-10, 14, 16-18, 20-24, 26, 39 and 40 are subject to judicial notice as "undisputed and publicly available information displayed on government websites," as demonstrated by website links in the footnotes. *King v. County of Los Angeles*, 885 F.3d 548, 555 (9th Cir. 2018); *see also Kater v. Churchill Downs, Inc*., 886 F.3d 784, 788 n.3 (9th Cir. 2018); *Hansen Beverage Co. v. Innovations Ventures LLC*, 2009 WL 6597891, at *2 (S.D. Cal. Dec. 23, 2009); *Loomis v. Slendertone Distribution, Inc.*, 420 F. Supp. 3d 1046, 1062 (S.D. Cal. 2019); *Eidson v. Medtronic, Inc*., 981 F. Supp. 2d 868, 879 (N.D. Cal. 2013); Fed. R. Evid. 201(b)(2). The records referenced at footnotes 22, 23, 24 and 26 are subject to judicial notice for the additional reason that they are court records. *U.S. ex. Rel. Robinson Rancheria Citizens Council v.*

1    *Borneo, Inc.*, 917 F.2d 244, 248 (9th Cir. 1992); *Armstead v. City of Los Angeles*, 66 F. Supp. 2d

2    1254, 1261 (C.D. Cal. 2014); *Endsley v. Luna*, 750 F. Supp. 2d 1074, 1085 n.2 (C.D. Cal. 2010)

3    (consent judgments).

4    **IV.    CONCLUSION**

5         For the foregoing reasons, defendants respectfully requests that the complaint be dismissed

6    with prejudice.

7

8    Dated: August 15, 2023                              **KING & SPALDING LLP**
                                                         Dale J. Giali
9                                                        Michael L. Resch
                                                         Anne M. Voigts
10

11                                                       By: */s/  Dale J. Giali*
                                                              Dale J. Giali
12                                                       Attorneys for Defendants
                                                         BELLRING BRANDS, INC. and
13                                                       PREMIER NUTRITION COMPANY, LLC

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28