**FITZGERALD JOSEPH LLP**
JACK FITZGERALD (SBN 257370)
*jack@fitzgeraldjoseph.com*
PAUL K. JOSEPH (SBN 287057)
*paul@fitzgeraldjoseph.com*
MELANIE PERSINGER (SBN 275423)
*melanie@fitzgeraldjoseph.com*
TREVOR M. FLYNN (SBN 253362)
*trevor@fitzgeraldjoseph.com*
CAROLINE S. EMHARDT (SBN 321222)
*caroline@fitzgeraldjoseph.com*
2341 Jefferson Street, Suite 200
San Diego, California 92110
Phone: (619)215-1741

***Counsel for Plaintiffs***

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

PATRICIA KRYSTOFIAK, LUIS CARRENO, and JONATHAN ZIMMERMAN, on behalf of themselves, all others similarly situated, and the general public,

Plaintiffs,

v.

BELLRING BRANDS, INC. and PREMIER NUTRITION COMPANY, LLC,

Defendants.

Case No.: 3:23-cv-02819-AGT

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS [DKT. NO. 16]**

Judge: Honorable Alex G. Tse

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ..................................................................................................iii

INTRODUCTION ...........................................................................................................1

ARGUMENT .................................................................................................................1

    I.    The Extraneous Materials Defendants Cite are Irrelevant and Should Not be
Considered .........................................................................................................1

    II.    Plaintiffs State Claims for Consumer Fraud ......................................................4

        A.    The Complaint Satisfies Rule 9(b)........................................................4

        B.    Plaintiffs Have Standing ......................................................................5

        C.    The Products' Labels Contain False and Misleading Statements ..............7

        D.    Plaintiffs' Claims Are Not Preempted .................................................10

            1.    Defendants Fail to Carry their Burden of Showing Implied
Preemption ..............................................................................10

            2.    Defendants Fail to Carry their Burden of Showing Express
Preemption ..............................................................................11

    III.    Plaintiffs' Claims are Independent of Proposition 65 ........................................12

        A.    Proposition 65 Notice is Not Required Because Plaintiffs' Claims are
Based on Affirmative Misrepresentations and Independent Duties to
Disclose.............................................................................................12

        B.    The *ELF* Consent Judgment is Irrelevant to Plaintiffs' Claims ...............13

        C.    There is No Safe Harbor Because Plaintiffs Allege Harms Broader Than,
and Independent of Proposition 65 .....................................................16

    IV.    The Primary Jurisdiction Doctrine Does Not Apply...........................................18

    V.    Plaintiffs State Claims for Breach of Warranties...............................................20

    VI.    Plaintiffs State Claims for Unjust Enrichment..................................................20

    VII.    Plaintiffs Allege a Special Relationship and State Negligent Misrepresentation
Claims ..............................................................................................................21

i

VIII.  Plaintiffs May Challenge All Flavors of the Premier Protein Products ................................ 22

IX.  Plaintiffs Plausibly Allege Entitlement to Equitable Relief .................................... 22

    A.  Plaintiffs Plead Inadequate Legal Remedies.................................... 22

    B.  Plaintiffs Have Standing to Seek Injunctive Relief .................................. 24

CONCLUSION ................................................................................................ 25

*Krystofiak et al. v. BellRing Brands, Inc. et al.*, Case No: 3:23-cv-02819-ATG
PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

# TABLE OF AUTHORITIES

**Cases**

*Aellis O. v. Connor*,
  2022 WL 2229421 (S.D. Cal. June 21, 2022) .................................................................. 21

*Allen v. Hylands, Inc.*,
  773 Fed. App'x 870 (9th Cir. 2019) .................................................................................. 23

*Andrade-Heymsfield v. NextFoods, Inc.*,
  2023 WL 2576770 (S.D. Cal. Mar. 20, 2023) ..................................................................... 9

*Anthony v. Pharmavite*,
  2019 WL 109446 (N.D. Cal. Jan. 4, 2019) ......................................................................... 8

*Astiana v. Ben & Jerry's Homemade, Inc.*,
  2011 WL 2111796 (N.D. Cal. May 26, 2011) ...................................................................... 4

*Astiana v. Hain Celestial Grp., Inc.*,
  783 F.3d 753 (9th Cir. 2015) ............................................................................................ 19

*Barnes v. Nat. Organics, Inc.*,
  2022 WL 4283779 (C.D. Cal. Sept. 13, 2022) ............................................................ passim

*Bland v. Sequel Nat. Ltd.*,
  2019 WL 4658361 (N.D. Cal. Jan. 18, 2019) .................................................................... 13

*Bland v. Sequel Nat. Ltd.*,
  2019 WL 4674337 (N.D. Cal. Aug. 2, 2019) ....................................................................... 9

*Boysen v. Walgreen Co.*,
  2012 WL 2953069 (N.D. Cal. July 19, 2012) ..................................................................... 6

*Brown v. MCI WorldCom Network Servs., Inc.*,
  277 F.3d 1166 (9th Cir. 2002) .......................................................................................... 18

*Bruesewitz v. Wyeth LLC*,
  562 U.S. 223 (2011) .......................................................................................................... 10

*Bruton v. Gerber Prods. Co.*,
  703 F. App'x 468 (9th Cir. 2017) ...................................................................................... 21

*Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*,
  20 Cal. 4th 163 (1999) ...................................................................................................... 17

*Chabner v. United of Omaha Life Ins. Co.*,
  225 F.3d 1042 (9th Cir. 2000) .......................................................................................... 12

iii

*Krystofiak et al. v. BellRing Brands, Inc., et al.*, Case No: 3:23-cv-02819-ATG
PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

*Charles v. Sutter Home Winery, Inc.*,
   232 Cal. Rptr. 3d 513 (Cal. Ct. App. 2018) .......................................................... 17

*Clark v. Time Warner Cable*,
   523 F.3d 1110 (9th Cir. 2008) .............................................................................. 18

*Coe v. Gen. Mills, Inc.*,
   2016 WL 4208287 (N.D. Cal. Aug. 10, 2016) ......................................................... 8

*Colgan v. Leatherman Tool Group, Inc.*,
   135 Cal. App. 4th 663 (2006) .......................................................................... 7, 23

*Cortina v. Goya Foods, Inc.*,
   94 F. Supp. 3d 1174 (S.D. Cal. 2015) ................................................................. 13

*County of Santa Clara v. Astra U.S.*,
   588 F.3d 1237 (9th Cir. 2009) .............................................................................. 18

*Dang v. Samsung Elecs. Co.*,
   2018 WL 6308738 (N.D. Cal. Dec. 3, 2018) ........................................................ 21

*Davel Commc'ns, Inc. v. Qwest Corp.*,
   460 F.3d 1075 (9th Cir. 2006) .............................................................................. 18

*Davidson v. Kimberly-Clark Corp.*,
    889 F.3d 956 (9th Cir. 2018) ................................................................................. 5

*Edleson v. Travel Ins. Int'l, Inc.*,
   2021 WL 4334075 (S.D. Cal. Sept. 23, 2021) ...................................................... 24

*Environmental Law Foundation v. Abbott Labs et al.*,
   No. 10-503002 (Super. Ct. San Francisco) ......................................................... 13

*Eternity Glob. Master Fund Ltd. v. Morgan Guar. Tr. Co. of N.Y.*,
   375 F.3d 168 (2d Cir. 2004) ................................................................................. 21

*Freightliner Corp. v. Myrick*,
   514 U.S. 280 (1995) ............................................................................................. 11

*Gagetta v. Walmart, Inc.*,
   --- F. Supp. 3d ----, 2022 WL 17812924 (N.D. Cal. Dec. 19, 2022) ................ 3, 4, 6

*Gallagher v. Bayer AG*,
   2015 WL 4932292 (N.D. Cal. Aug. 18, 2015) ......................................................... 9

*Garrison v. Whole Foods Market Group, Inc.*,
   2014 WL 2451290 (N.D. Cal. June 2, 2014) ........................................................ 20

iv

*Krystofiak et al. v. BellRing Brands, Inc. et al.*, Case No: 3:23-cv-02819-ATG
PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

*Grausz v. The Hershey Co.*,
  No. 23-cv-00028-AJB-SBC (S.D. Cal.) ...................................................................... 9

*Greene v. Gerber Prod. Co.*,
  262 F. Supp. 3d 38 (E.D.N.Y. 2017) ................................................................. 21, 22

*Gustavson v. Wrigley Sales Co.*,
  961 F. Supp. 2d 1100 (N.D. Cal. 2013) ................................................................. 10

*Guttmann v. Nissin Foods (U.S.A.) Co., Inc.*,
  2015 WL 4309427 (N.D. Cal. July 15, 2015) ......................................................... 20

*Ham v. Hain Celestial Group, Inc.*,
  70 F. Supp. 3d 1188 (N.D. Cal. 2014) ................................................................... 20

*Harris v. McDonald's Corp.*,
  2021 WL 2172833 (N.D. Cal. Mar. 24, 2021) ....................................................... 24

*Hartford Cas. Ins. Co. v. J.R. Mktg., L.L.C.*,
  61 Cal. 4th 988 (2015) ........................................................................................... 21

*Haskell v. Time, Inc.*,
  857 F. Supp. 1392 (E.D. Cal. 1994) ......................................................................... 8

*Herrington v. Johnson & Johnson Consumer Companies, Inc.*,
  2010 WL 3448531 (N.D. Cal. Sept. 1, 2010) ........................................................... 6

*Hesse v. Sprint Corp.*,
  598 F.3d 581 (9th Cir. 2010) ................................................................................. 16

*Hough v. Big Heart Pet Brands, Inc.*,
  2020 WL 7227198 (N.D. Cal. Dec. 8, 2020) ............................................................ 7

*Hughes v. Ester C Co.*,
  930 F. Supp. 2d 439 (E.D.N.Y. 2013) ..................................................................... 21

*In re Farm Raised Salmon Cases*,
  42 Cal. 4th 1077 (2008) ......................................................................................... 10

*In re Gerber Prods. Co. Heavy Metals Baby Food Litig.*,
  2022 WL 10197651 (E.D. Va. Oct. 17, 2022) ......................................................... 6

*In re Johnson & Johnson Talcum Powder Prods. Mktg., Sales Practices & Liab. Litig.*,
  903 F.3d 278 (3d Cir. 2018) ..................................................................................... 6

*In re Plum Baby Food Litig*,
  637 F. Supp. 3d 210 (D.N.J. 2022) .......................................................................... 6

v

*In re Plum Baby Food Litig.*,
  2022 WL 16640802 (N.D. Cal. Jan. 12, 2022) ............................................... 5, 10, 19

*In Re Quaker Oats Labeling Litig.*,
  2012 WL 1034532 (N.D. Cal. Mar. 28, 2012) ............................................... 3, 11

*Johnson-Jack v. Health-Ade LLC*,
  587 F. Supp. 3d 957 (N.D. Cal. 2022) ............................................... 9, 10, 12

*Jordan v. Paul Fin., LLC*,
  745 F. Supp. 2d 1084 (N.D. Cal. 2010) ............................................... 16

*Kimmell v. Schaefer*,
  675 N.E.2d 450 (N.Y. 1996) ............................................... 21

*Koronthaly v. L'Oreal USA, Inc.*,
  374 F. App'x 257 (3d Cir. 2010) ............................................... 6

*Krommenhock v. Post Foods, LLC*,
  2020 WL 1139582 (N.D. Cal. Mar. 9, 2020) ............................................... 24

*Krommenhock v. Post Foods, LLC*,
  334 F.R.D. 552 (N.D. Cal. 2020) ............................................... 4

*Lavie v. Procter & Gamble Co.*,
  105 Cal. App. 4th 496 (2003) ............................................... 7

*LeGrand v. Abbott Labs.*,
  --- F. Supp. 3d ----, 2023 WL 1819159 (N.C. Cal. Feb. 8, 2023) ............................................... 22

*Leonhart v. Nature's Path Foods, Inc.*,
  2014 WL 1338161 (N.D. Cal. Mar. 31, 2014) ............................................... 19

*Liou v. Organifi, LLC*,
  491 F. Supp. 3d 740 (S.D. Cal. 2020) ............................................... 18

*Lockwood v. Conagra Foods, Inc.*,
  597 F. Supp. 2d 1028 (N.D. Cal. 2009) ............................................... 11

*Loving v. Sears, Roebuck & Co.*,
  2014 WL 8252583 (C.D. Cal. Dec. 9, 2014) ............................................... 16

*Massaro v. Beyond Meat, Inc.*,
  2021 WL 948805 (S.D. Cal. Mar. 12, 2021) ............................................... 18

*McCoy v. Nestle USA, Inc.*,
  173 F. Supp. 3d 954 (N.D. Cal. 2016) ............................................... 7

vi

*Krystofiak et al. v. BellRing Brands, Inc. et al.*, Case No: 3:23-cv-02819-ATG
PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

*McGee v. S-L Snacks Nat'l,*
   982 F.3d 700 (9th Cir. 2020) .................................................................................. 5

*Mier v. CVS Pharmacy, Inc.,*
   2021 WL 1559367 (C.D. Cal. Mar. 22, 2021) ...................................................... 23

*Moore v. Mars Petcare US, Inc.,*
   966 F.3d 1007 (9th Cir. 2020) .............................................................................. 7

*Parks v. Ainsworth Pet Nutrition, LLC,*
   377 F. Supp. 3d 241 (S.D.N.Y. 2020) .................................................................. 9

*Prescott v. Reckitt Benckiser LLC,*
   2020 WL 7075624 (N.D. Cal. Dec. 3, 2020) ........................................................ 4

*Reitman v. Champion Petfoods USA, Inc.,*
   2019 WL 1670718 (C.D. Cal. Feb. 6, 2019) ........................................................ 9

*Rice-Sherman v. Big Heart Pet Brands, Inc.,*
   2020 WL 1245130 (N.D. Cal. Mar. 16, 2020) ...................................................... 7

*Rojas v. Gen. Mills, Inc.,*
   2013 WL 5568389 (N.D. Cal. Oct. 9, 2013) ........................................................ 19

*Rushing v. Williams-Sonoma, Inc.,*
   2016 WL 4269787 (N.D. Cal. Aug. 15, 2016) ...................................................... 16

*Sagastume v. Psychemedics Corp.,*
   2020 WL 8175597 (C.D. Cal. Nov. 30, 2020) ...................................................... 23

*Sciortino v. Pepsico, Inc.,*
   108 F. Supp. 3d 780 (N.D. Cal. 2015) ...................................................... 11, 12, 13

*Sinatro v. Barilla Am., Inc.,*
   2022 WL 10128276 (N.D. Cal. Oct. 17, 2022) ...................................................... 6

*Sitt v. Nature's Bounty, Inc.,*
   2016 WL 5372794 (E.D.N.Y. Sept. 26, 2016) ...................................................... 3

*Sonner v. Premier Nutrition Corp.,*
   971 F.3d 834 (9th Cir. 2020) ................................................................................ 23

*Thomas v. Costco Wholesale Corp.,*
   2014 WL 5872808 (N.D. Cal. Nov. 12, 2014) ...................................................... 20

*Tsan v. Seventh Generation, Inc.,*
   2015 WL 6694104 (N.D. Cal. Nov. 3, 2015) ........................................................ 20

vii

*Krystofiak et al. v. BellRing Brands, Inc. et al.*, Case No: 3:23-cv-02819-ATG
PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

*Victor v. R.C. Bigelow, Inc.*,
   2014 WL 1028881 (N.D. Cal. Mar. 14, 2014) ............................................................ 22

*Von Grabe v. Sprint PCS*,
   312 F. Supp. 2d 1285 (S.D. Cal. 2003) ........................................................... 1, 2

*Wallace v. ConAgra Foods, Inc.*,
   747 F.3d 1025 (8th Cir. 2014) ..................................................................... 7

*Wildin v. FCA US LLC*,
   2018 WL 3032986 (S.D. Cal. June 19, 2018) ......................................................... 23

*Wiliams v. Boeing Co.*,
   517 F.3d 1120 (9th Cir. 2008) .................................................................... 16

*Williams v. Gerber Prods. Co.*,
   552 F.3d 934 (9th Cir. 2008) ................................................................... 7, 8

*Willner v. Manpower, Inc.*,
   2014 WL 4370694 (N.D. Cal. Sept. 3, 2014) ........................................................ 16

*Yumul v. Smart Balance, Inc.*,
   733 F. Supp. 2d 1117 (C.D. Cal. 2010) ............................................................... 8

*Zakinov v. Blue Buffalo Pet Prod., Inc.*,
   2018 WL 1426932 (S.D. Cal. Mar. 22, 2018) ......................................................... 2

*Zeiger v. WellPet LLC*,
   304 F. Supp. 3d 837 (N.D. Cal. 2018) ......................................................... 3, 5, 7, 9

*Zhang v. Sup. Ct.*,
   57 Cal. 4th 364 (2013) .......................................................................... 12

**Statutes**

21 U.S.C. § 343-1(a) ............................................................................... 11

**Regulations**

21 C.F.R. § 1.21(a) ................................................................................ 11

21 C.F.R. § 1.21(a)(1) ............................................................................. 11

21 C.F.R. § 101.65(d)(1)(ii) ....................................................................... 12

21 C.F.R. § 101.65(d)(2) ........................................................................... 12

viii

*Krystofiak et al. v. BellRing Brands, Inc. et al.*, Case No: 3:23-cv-02819-ATG
PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

## INTRODUCTION

Lead is a heavy metal and its presence in food can pose a serious safety risk to consumers. Dkt. No. 1, Compl. ¶ 2. Lead affects almost every organ and system in the body, leading to health risks including inhibited neurological function, anemia, kidney damage, seizures, and in extreme cases, coma and death. *Id*. ¶¶ 17-18. Even extremely low levels can be harmful because lead accumulates in the body over time. *Id*. ¶ 19. Moreover, "the immune system appears to be exquisitely sensitive to" lead. *Id*. ¶ 18. Thus, the World Health Organization has opined, "there is no known safe blood lead concentration." *Id*. ¶ 21.

Defendants BellRing Brands, Inc. and Premier Nutrition Company, LLC market and sell a variety of Premier Protein Shakes and Plant Powders (the "Premier Protein Products" or "Products"). They market and promote the Products as healthy and nutritious foods, including through labeling statements that suggest the Products are both generally healthy, and specifically beneficial for the immune system. *See id*. ¶¶ 38-42. Defendants do this despite knowing the health risks associated with the consumption of lead, which they know—and independent testing verifies—is in the Products. *See id*. ¶ 73. Now Defendants seek to avoid liability by moving to dismiss the case. *See* Dkt. No. 16 ("Mot."). But their request is not supported by the facts or law. It is plausible many consumers were unaware there is lead in the Products or of the associated health risks, and would find material and be misled by Defendants' representations and omissions. Further, this is not a Proposition 65 case, nor is it derivative of the duties imposed by Proposition 65. Finally, there is no reason to dismiss under the primary jurisdiction doctrine because this is a typical consumer protection class action that the Court is well suited to handle. Taking the allegations as true and refusing Defendants' invitation to resolve disputed factual issues, the Court should deny the motion in its entirety.

## ARGUMENT

### I.    The Extraneous Materials Defendants Cite are Irrelevant and Should Not be Considered

Defendants rely heavily on hyperlinks to materials not contained or referenced in the Complaint. *See, e.g.*, Mot. at 2-6 nn.1-22. The Court should not consider these materials, which are not properly before the Court. But even if considered, they are irrelevant and do not support dismissal.

Litigants are prohibited from relying on judicial notice "to effectively circumvent" their burdens at the pleading stage. *Von Grabe v. Sprint PCS*, 312 F. Supp. 2d 1285, 1312 (S.D. Cal. 2003). Thus, it is

1

*Krystofiak et al. v. BellRing Brands, Inc. et al.*, Case No: 3:23-cv-02819-ATG
PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

"improper, at best, for [a] Court to take judicial notice of" facts that "are not only disputed, [but] form the essence of the controversy at hand," since "[t]aking judicial notice of such assertions would have the effect of preventing [Plaintiffs] from participating in the adversary process." *Id*.[1]

Defendants' extraneous materials primarily relate to the toxicity and prevalence of lead in the food supply. These sources do not present undisputed, well-accepted facts, but instead concern information that will be the subject of expert testimony at a later stage in the proceedings. Further, the materials certainly *do not* portray the issues as Defendants so favorably represent in their Motion.

For example, Defendants quote extraneous material in writing that the "FDA recognizes[] *lead* is 'present in the environment, including in our air, water and soil, and therefore [is] unavoidable in the general food supply,'" Mot. at 2-3 & n.1 (emphasis added; citation omitted), and that "it is not possible to prevent or remove *lead* entirely from foods," *id.* at 3 & n.2 (emphasis added; citation omitted). While Defendants suggest the quotes are specific to lead, the quoted language actually only concerns "toxic elements" generally. *Id.* at 3 & n.2 (citation omitted). This is an important distinction Defendants' motion obscures: That the FDA found "it is not possible to remove these *elements* entirely from the *food supply*," *id.* (emphasis added), does not mean *lead* could not be reduced or eliminated from Defendants' Premier Protein Products. *Cf. id.* (FDA "expect[s] that the recommended action levels will cause manufacturers to implement agricultural and processing measures to lower lead levels in their food products below the proposed action levels, thus reducing the potential harmful effects associated with dietary lead exposures").[2]

Next, Defendants argue that because the levels of lead in the Products is below the maximum levels the FDA set for other foods and beverages, the levels in the Products must be safe. Mot. at 12. Given that the FDA has set different levels for different foods and beverages—which according to Defendants, range from 5 ppb for bottled water, to twenty times that amount, 100 ppb, for candy—and that the FDA has *not* set a maximum amount for protein shakes, that the Products have lead levels below the limit for other foods

---

[1] While Defendants seek judicial notice, Mot. at 24, even where a court judicially notices the existence of a document, it cannot accept as true the assertions contained therein. Thus, where a "Plaintiff reasonably disputes the facts within the FDA documents, the Court [should] refrain[] from taking judicial notice of them." *See Zakinov v. Blue Buffalo Pet Prod., Inc*., 2018 WL 1426932, at *3 (S.D. Cal. Mar. 22, 2018).

[2] Nevertheless, Plaintiffs' claims do not depend on Defendants reducing or eliminating lead from the Products. Instead, they turn on whether the challenged labeling statements and omissions are misleading given the amount of lead in the Products.

1    is not significantly meaningful, and certainly not dispositive. Moreover, Plaintiffs allege they were misled

2    by Defendants' marketing, and their "purported compliance with FDA rules regarding lead does 'not

3    eliminate the possibility that reasonable consumers may be misled.'" *Sitt v. Nature's Bounty, Inc.*, 2016 WL

4    5372794, at *12 (E.D.N.Y. Sept. 26, 2016) (quotation omitted).

5         Finally, Defendants contend "foods may contain unavoidable but small amounts of lead that do *not*

6    pose a significant risk to human health," Mot. at 3 n.5, arguing that California and FDA have "clear[ly]

7    pronounce[d] that food with lead levels well above defendants' products are not harmful and are safe to

8    consume," Mot. at 12. That is wrong. California's Proposition 65 *only* concerns the potential for cancer and

9    reproductive harm. And the FDA has never set a lead level for protein shakes. Moreover, courts have

10   rejected similar attempts to leverage for dismissal the materials contained in the FDA websites Defendants

11   cite *ad nauseum*, because "the websites themselves 'are not regulations, guidelines, or even studies that

12   conclusively establish that' the metals at issue are safe at any level," *Gagetta v. Walmart, Inc.*, --- F. Supp.

13   3d ----, 2022 WL 17812924, at *3 (N.D. Cal. 2022) (citing *Zeiger v. WellPet LLC*, 304 F. Supp. 3d 837, 845

14   (N.D. Cal. 2018)). As a result, Defendants' "claim that its [Products] are 'safe' is neither objectively true,

15   according to Plaintiff[s], nor a subjective opinion. These are measurable claims that Plaintiff[s] seeks to

16   prove are false." *See Barnes v. Nat. Organics, Inc.*, 2022 WL 4283779, at *7 (C.D. Cal. Sept. 13, 2022); *cf.*

17   *In Re Quaker Oats Labeling Litig.*, 2012 WL 1034532, at *2 (N.D. Cal. Mar. 28, 2012) (

18   > [P]laintiffs argue that Quaker is substantially overstating what the FDA has actually
19   > determined regarding trans fats, and that, if anything, the FDA has recognized that trans fats
     > may need further regulation. While plaintiffs have persuasive arguments in that regard, even
20   > if it were the case that the FDA had clearly and specifically found that trans fats are safe in
     > small quantities (notwithstanding possible consequences of cumulative exposure), that would
21   > not justify dismissing the complaint under *Twombly* and *Iqbal* as "implausible." Although the
     > FDA's conclusions, and the research on which it has relied, may serve as evidence Quaker can
22   > offer to rebut plaintiffs' allegations, there is no basis on a motion to dismiss to conclude the
     > FDA is so infallible that it is wholly implausible for plaintiffs to contend trans fats present a
23   > health risk.).

24        Here, Plaintiffs allege the Products contain between 0.5μg and 1.4μg of lead per serving, *see* Compl.

25   ¶ 73 (table), and that, "because lead accumulates in the body with repeated exposure, even 'extremely low'

26   levels of consistent lead exposure can [harm health]," *id.* ¶ 20. They allege the lead in the Products "poses

27   a serious safety risk to consumers because it can cause irreversible damage to many of the body's crucial

28   systems and organs, including the brain, liver, kidneys, and bones." *Id.* ¶ 2. These allegations are supported

3

by studies and statements from authoritative bodies, such as the WHO, which have concluded that "[n]o amount of lead is known to be safe" because "[t]here is no known safe blood lead concentration." *Id.* ¶ 21 (quotation omitted). *See id.* ¶¶ 13-17. Moreover, "Defendants encourage Premier Protein Product purchasers to consume multiple servings each day," and "[b]y doing so . . . increase consumers' exposure to the lead in the Premier Protein Products." *Id.* ¶ 92; *see also id.* ¶¶ 93-99. Thus, Defendants' "assertions are . . . subject to reasonable dispute," and "not confirmed by the documents to be noticed," *Gagetta*, 2022 WL 17812924, at *3, instead raising questions of fact not appropriate for resolution now. *Cf. Krommenhock v. Post Foods, LLC*, 334 F.R.D. 552 (N.D. Cal. 2020) (denying motion for summary judgment in case challenging health claims on cereals where "plaintiffs have ample, albeit disputed, evidence that the Products are not 'healthy' given the amounts of added sugar in them *and considering consumer habits regarding serving size and frequency of consumption*" (emphasis added)). The Court should reject Defendants' request for judicial notice and ignore the FDA materials in the first 22 footnotes of its brief.

## II.    Plaintiffs State Claims for Consumer Fraud

### A.    The Complaint Satisfies Rule 9(b)

In a false advertising case, for Rule 9(b):

> The "who" is [the defendant]. The "what" is the statement [alleged to be misleading]. The "when" is [the time period the misrepresentation was made, which can be] alleged as . . . "throughout the class period." The "where" is on the [challenged products'] package labels. The "how statements were misleading" is [plaintiff's theory of deception].

*Astiana v. Ben & Jerry's Homemade, Inc.*, 2011 WL 2111796, at *6 (N.D. Cal. May 26, 2011). Here, "who" is Defendants, Compl. ¶¶ 14-15, 23-27; "what" is the challenged messaging that, *inter alia*, the Products are "a healthy snack," "with nutrients for ENERGY & IMMUNE health support," *id.* ¶ 38-42; "where" is on the Product labels, *id.*; and "when" is "the four years preceding the filing of th[e] Complaint," *id.* ¶ 32. Finally, Plaintiffs allege they relied on the challenged claims, *id.* ¶¶ 107-109, that the claims convey that the "Products are healthy," *id.* ¶ 100, and allege "how" this is misleading: because consuming the Products "exposes consumers to unsafe levels of lead," *id.* While Defendants complain Plaintiffs do not allege certain details, *see* Mot. at 24, they "have identified the particular statements they allege are misleading, the basis for that contention, where those statements appear . . . and the relevant time period in which the statements were used," thereby "satisf[ying] the requisite who, what, when, where, and how of the misconduct

charged," *see Prescott v. Reckitt Benckiser LLC*, 2020 WL 7075624, at *6 (N.D. Cal. Dec. 3, 2020) (quotation omitted).

### B.    Plaintiffs Have Standing

The Ninth Circuit has established "that overpayment is a viable theory of economic injury" and has "consistently recognized that a plaintiff can satisfy the injury in fact requirement by showing that she paid more for a product than she otherwise would have due to a defendant's false representations about the product." *McGee v. S-L Snacks Nat'l*, 982 F.3d 700, 706 (9th Cir. 2020); *see also Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 965 (9th Cir. 2018) ("[T]he economic injury of paying a premium for a falsely advertised product is sufficient harm to maintain a cause of action."). Accordingly, courts applying California law have found allegations that a plaintiff would not have purchased a product had he or she known that it contained or risked containing heavy metals or other toxins are sufficient to establish injury in fact at this stage. *See In re Plum Baby Food Litig.*, 2022 WL 16640802, at *1 (N.D. Cal. Jan. 12, 2022) ["*Plum*"] ("plaintiffs have adequately alleged an injury in fact by alleging that they 'would have not paid [the purchase price or the price premium] had they known that the Baby Foods included levels of Heavy Metals'" (record citation omitted)); *Barnes*, 2022 WL 4283779, at *4 (allegations that "the inclusion, or risk of inclusion, of Heavy Metals was not disclosed on the [vitamins'] label, and if it had been, she would not have paid for the [vitamins]," were sufficient to support standing); *Zeiger*, 304 F. Supp. 3d at 846 (allegations that plaintiffs would not have purchased dog food if the presence of lead, arsenic, and BPA had been disclosed were sufficient to establish economic injury).

Here, "[w]hen purchasing the Premier Protein Products, Plaintiffs were looking for healthy, nutritious options, and believed that was what they were receiving," Compl. ¶ 110. That is because Defendants label the Products as, *inter alia*, "healthy snack[s]," "with nutrients for ENERGY & IMMUNE health support." *Id.* ¶ 38; *see also id.* ¶ 41. "Plaintiffs paid more for the Premier Protein Products, and would only have been willing to pay less, or unwilling to purchase them at all, absent Defendants' affirmative health and wellness statements . . . ." *Id.* ¶ 113. That Plaintiffs allegedly "spent money that, absent [Defendants] actions, they would not have spent" constitutes "a quintessential injury-in-fact," *Maya v. Centex Corp.*, 658 F.3d 1060, 1069 (9th Cir. 2011).

Defendants claim there is "[a]n unambiguous line of court decisions hold[ing] that plaintiffs'

5

*Krystofiak et al. v. BellRing Brands, Inc. et al.*, Case No: 3:23-cv-02819-ATG
PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

1   hypothetical economic injury under the allegations here cannot confer standing." Mot. at 11. But the only

2   in-Circuit decision they cite is *Herrington v. Johnson & Johnson Consumer Companies, Inc.*, 2010 WL

3   3448531 (N.D. Cal. Sept. 1, 2010), in which the plaintiffs "did not allege that the substances in the products

4   were 'in fact carcinogenic for humans,' did not plead that the levels of those contaminants 'caused harm or

5   create[d] a credible or substantial risk of harm,' or that any 'palpable risk exists.'" *Gagetta*, 2022 WL

6   17812924, at *6 (quoting *Herrington*, 2010 WL 3448531, at *1, and declining to follow decision). The

7   remaining, out-of-Circuit decisions Defendants cite involved different, benefit-of-the-bargain theories of

8   injury and did not involve California law. *See* Mot. at 11 (citing *Koronthaly v. L'Oreal USA, Inc.*, 374 F.

9   App'x 257, 259 (3d Cir. 2010) (no standing based on alleged "[b]enefit of bargain" injury); *Kimca v. Sprout

10  Foods, Inc.*, 2022 WL 1213488, at *8 (D.N.J. Apr. 25, 2022) (Plaintiffs "failed to establish economic injury"

11  because the "Third Circuit has identified [only] three avenues for pleading economic injury," which differ

12  from California and Ninth Circuit law); *In re Gerber Prods. Co. Heavy Metals Baby Food Litig.*, 2022 WL

13  10197651, at *6-7 (E.D. Va. Oct. 17, 2022) (rejecting Ninth Circuit law and finding *Kimca* persuasive); *In

14  re Plum Baby Food Litig*, 637 F. Supp. 3d 210, 223 (D.N.J. 2022) (under Third Circuit law, "'[p]laintiffs

15  receive[ ] the benefit of their bargain so long as there were no adverse health consequences'" (quotation

16  omitted))).

17      Defendants attempt to equate an overpayment and benefit-of-the-bargain theory of injury. *See* Mot.

18  at 12 ("Whether phrased as paying money they otherwise wouldn't or a benefit-of-the-bargain theory of

19  injury, neither works."). But the theories are not the same, and the Court should "decline[] to consider other

20  arguments, supported by non-binding, out-of-circuit cases, that are unpersuasive given that the caselaw

21  squarely supports [Plaintiffs'] standing." *Barnes*, 2022 WL 4283779, at *4 (holding plaintiff had standing

22  under an overpayment theory where "Heavy Metals was not disclosed on the label, and if it had been, she

23  would not have paid for the Prenatal Vitamins"). Here, "Plaintiffs have offered a theory of injury that the

24  Ninth Circuit recognizes: that they would not have purchased [Defendants'] products, or would not have

25  overpaid a premium for those products, had they known the [truth]." *Sinatro v. Barilla Am., Inc*, 2022 WL

26  10128276, at *8 n.4 (N.D. Cal. Oct. 17, 2022) (distinguishing *In re Johnson & Johnson Talcum Powder

27  Prods. Mktg., Sales Practices & Liab. Litig.*, 903 F.3d 278 (3d Cir. 2018)).

28      Another case on which Defendants rely, *Boysen v. Walgreen Co.*, 2012 WL 2953069 (N.D. Cal. July

6

19, 2012), is also distinguishable. *See* Mot. at 12. That is because "plaintiffs' claims in this matter are not solely based on the theory that defendants' Products are unsafe due to the presence of [lead], but also that those products omit on their labeling their presence altogether." *Zeiger*, 304 F. Supp. 3d at 846-47 (distinguishing *Boysen*).

Finally, citing *Wallace v. ConAgra Foods, Inc.*, 747 F.3d 1025 (8th Cir. 2014), Defendants argue the Court should dismiss Plaintiffs claims because they do not "allege that the specific protein products they purchased contained any lead," Mot. at 13 (emphasis omitted). But "*Wallace* does not reflect the law of this Circuit." *Rice-Sherman v. Big Heart Pet Brands, Inc.*, 2020 WL 1245130, at *6 (N.D. Cal. Mar. 16, 2020) (citing *McCoy v. Nestle USA, Inc.*, 173 F. Supp. 3d 954, 964 (N.D. Cal. 2016), *aff'd*, 730 F. App'x 462 (9th Cir. 2018) ("This Court respectfully disagrees with [*Wallace*]. In this Court's view, if a customer has paid a premium for an assurance that a product meets certain standards, and the assurance turns out to be meaningless, the premium that the customer has paid is an actual, personal, particularized injury that is cognizable under Article III.")); *see also Hough v. Big Heart Pet Brands, Inc.*, 2020 WL 7227198, at *1, *3 (N.D. Cal. Dec. 8, 2020) (plaintiff "sufficiently pleaded Article III standing based on the allegation that she spent money that, absent [defendant's] labeling, she would not have spent" based on testing, even though that testing did "not specifically link the testing to [plaintiff] and one of the bags she purchased").

## C.    The Products' Labels Contain False and Misleading Statements

"California laws prohibit not only advertising which is false, but also advertising which[,] *although true*, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public." *Moore v. Mars Petcare US, Inc.*, 966 F.3d 1007, 1017 (9th Cir. 2020) (cleaned up, emphasis added) (quoting *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008)). Whether a label or advertisement is deceptive is "judged by the effect it would have on a reasonable consumer," who is the "ordinary consumer within the target population." *Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496, 506-507, 510 (2003) (citation omitted). A reasonable consumer is "not versed in the art of inspecting and judging a product, [or] in the process of its preparation or manufacture[,]" *Colgan v. Leatherman Tool Group, Inc.*, 135 Cal. App. 4th 663, 682 (2006) (quotation marks and quotation omitted), and is not "exceptionally acute and sophisticated. . . . [n]or need . . . necessarily be wary or suspicious of advertising claims," *Lavie*, 105 Cal. App. 4th at 509-10 (quotation marks and quotation omitted). "The fact that a . . .

7

person who knew the whole truth [ ] would not be led astray by [the advertising] does not make it lawful[,]" and California consumer protection laws exist "to protect the general public who read advertisements and are likely to know nothing of the facts, not the dealers who publish them or other experts on their subject-matter." *Id*. at 510 (citation omitted).

Further, "'whether a business practice is deceptive will usually be a question of fact not appropriate for decision on [a motion to dismiss].'" *Yumul v. Smart Balance, Inc*., 733 F. Supp. 2d 1117, 1125 (C.D. Cal. 2010) (quoting *Williams*, 552 F. 3d at 938). Only where an "alleged misrepresentation, in context, is such that *no* reasonable consumer could be misled," may the claim be dismissed. *See Haskell v. Time, Inc*., 857 F. Supp. 1392, 1399 (E.D. Cal. 1994) (emphasis added). Therefore, Defendants, who bear the burden on their motion to dismiss, must show this is the "'rare situation' where 'the advertisement itself [makes] it impossible for the plaintiff to prove that a reasonable consumer was likely to be deceived,'" *Anthony v. Pharmavite*, 2019 WL 109446, at *3 (N.D. Cal. Jan. 4, 2019) (quoting *Coe v. Gen. Mills, Inc.*, 2016 WL 4208287, at *5 (N.D. Cal. Aug. 10, 2016); *Williams*, 552 F.3d at 939). That is not the case here.

Defendants know consumers are more likely to purchase foods and beverages advertised as healthy or providing a functional benefit. Accordingly, they label the Premier Protein Products in a manner to "suggest the products are both generally healthy, and specifically beneficial for the body's immune system." Compl. ¶ 38. On the Products' labels, Defendants tell consumers to "Enjoy a shake. . . as a healthy snack"; claim they provide "a powerful nutrition boost" and "nutrients for ENERGY & IMMUNE health support"; and say that "Maintaining a healthy lifestyle can be hard. Premier Protein is here to make things a little easier." *Id*. ¶¶ 38, 40-41. But rather than being healthy, the Products contain 0.5µg to 1.4µg of lead per serving, *see id*. ¶ 73 (table), and "because lead accumulates in the body with repeated exposure, even 'extremely low' levels of consistent lead exposure can [harm health]," *id*. ¶ 20. In particular, the "immune system appears to be exquisitely sensitive to the toxic heavy metal lead as compared to other toxicological parameters." *Id*. ¶ 18. The WHO has thus concluded that "[n]o amount of lead is known to be safe" because "[t]here is no known safe blood lead concentration." *Id*. ¶ 21 (quotation omitted).

Courts in this Circuit have held that where a plaintiff alleges products bearing health and wellness messaging or assurances of quality contain lead or other heavy metals, such allegations are sufficient to state a claim under California's consumer protection statutes. *Barnes*, 2022 WL 4283779, at *7 (collecting cases

8

*Krystofiak et al. v. BellRing Brands, Inc. et al.*, Case No: 3:23-cv-02819-ATG
PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

and finding that representations including "our products will live up to the quality you expect," "natural supplement," and "[m]anufactured with LOVE," were actionable where protein shakes contained lead and cadmium); *Zeiger*, 304 F. Supp. 3d at 852 (plaintiffs stated claim where they "premise[d] their claims on the theory that WellPet's Products' labels are misleading because they fail to disclose that they contain arsenic, lead, or BPA, all the while claiming that they are healthy, safe, pure, and/or natural"); *Reitman v. Champion Petfoods USA, Inc*., 2019 WL 1670718, at *1 (C.D. Cal. Feb. 6, 2019).[3]

　　　Defendants' primary argument is that "consumers are not deceived into purchasing products that contain *benign* amounts of naturally occurring elements, like lead." Mot. at 14 (emphasis added); *see also id.* at 15 ("consumers are not deceived by – and defendants have no duty to disclose – *safe* levels of lead in their products (emphasis added)); *id.* ("contaminants in food at safe levels does not state a claim because it is 'not likely to affect consumers' decisions in purchasing the product and is thus not material'" (quoting *Parks v. Ainsworth Pet Nutrition, LLC*, 377 F. Supp. 3d 241, 248 (S.D.N.Y. 2020))). But their premise—that the lead in the Products is safe—must be rejected at this stage. *See supra* Section I. Plaintiffs have alleged through citation to studies and authoritative bodies that repeated exposure—which Defendants encourage, Compl. ¶¶ 91-99—even at low levels, increases health risks generally and especially for immunity health. *See id.* ¶¶ 16-21. These allegations are sufficient to state a claim. *See Gallagher v. Bayer AG*, 2015 WL 4932292, at *1 (N.D. Cal. Aug. 18, 2015) (plaintiff adequately alleged defendant's labeling was misleading by citing studies "that cast sufficient doubt that [defendant's] dietary supplement products have the benefits it claims"). While Defendants contest these allegations, "[t]he question whether Defendant's products actually pose a risk to health is ultimately a question of fact that cannot be decided at this stage," *Bland v. Sequel Nat. Ltd*., 2019 WL 4674337, at *4 (N.D. Cal. Aug. 2, 2019) ["*Bland II*"]; *see also Johnson-Jack v. Health-Ade LLC*, 587 F. Supp. 3d 957, 963 (N.D. Cal. 2022) ("Whether the defendant's products are, in fact, healthy or unhealthy cannot be resolved at this stage."). At most, Defendants raise an issue of fact. *See Andrade-Heymsfield v. NextFoods, Inc.*, 2023 WL 2576770, at *3 (S.D. Cal. Mar. 20,

---

[3] Recently, a Southern District of California court dismissed without prejudice an action against Hershey based on its omission of lead in chocolate bars, holding Hershey did not have a duty to disclose because the amount of lead alleged did not present an unreasonable safety hazard. *Grausz v. The Hershey Co.*, No. 23-cv-00028-AJB-SBC (S.D. Cal.), Dkt. No. 29, Order (Sept. 11, 2023). Unlike here, however, that case was brought on a pure omissions theory. It did not challenge any affirmative statements the defendant made, as its chocolate bars—unlike the Premier Protein Products—did not expressly claim to be "healthy."

2023) ("Whether statements are deceptive is usually a question of fact inappropriate for resolution on a motion to dismiss." (citation omitted)).

Defendants also argue that because "none of [the challenged representations] expressly or impliedly references lead," Plaintiffs "fail to plausibly allege that consumers are deceived into thinking the protein products are free of lead." Mot. at 15. But this is a strawman. "[T]he allegedly problematic aspect of the defendant's label is not that it implies that the product contains no [lead], but, rather, that it falsely implies that the drinks are 'healthy.'" *See Johnson-Jack*, 587 F. Supp. 3d at 968. Because Defendants characterize the Products as "healthy snack[s]" and "with nutrients for IMMUNE HEALTH support," Compl. ¶ 38—and because lead harms health, and immune health in particular, *id.* ¶¶ 16-22—Plaintiffs have plausibly alleged the challenged claim are misleading. *See Barnes*, 2022 WL 4283779, at *6, *7 (rejecting defendant's arguments that challenged labeling claims such as "women's health formula" and "overall wellness" were not "inconsistent with the presence of heavy metals" and "wholly unrelated to heavy metals").

Moreover, Defendants argument "would have the Court determine that 'consumers know and understand that trace amounts of heavy metals are ubiquitous' and that 'the mere presence of heavy metals is not material to reasonable consumers.' These are factual issues not appropriate for resolution at this stage in the proceedings . . . ." *See Plum*, 2022 WL 16640802, at *2 (denying motion to dismiss for lack of plausible deception where plaintiffs alleged "Plum failed to disclose that its baby food products contain (or have a risk of containing) heavy metals").

**D.    Plaintiffs' Claims Are Not Preempted**

"Federal preemption is an affirmative defense upon which the defendants bear the burden of proof," *Bruesewitz v. Wyeth LLC*, 562 U.S. 223, 251 n.2 (2011) (Sotomayor and Ginsburg, JJ., dissenting) (quotation and internal quotation marks omitted). Because both consumer protection laws and laws regulating the proper marketing of food are "within states' historic police powers," *In re Farm Raised Salmon Cases*, 42 Cal. 4th 1077, 1088 (2008), "[t]he presumption against preemption in this case is a strong one," *see Gustavson v. Wrigley Sales Co.*, 961 F. Supp. 2d 1100, 1117 (N.D. Cal. 2013). Defendants fail to carry their heavy burden of showing preemption applies here.

**1.    Defendants Fail to Carry their Burden of Showing Implied Preemption**

Defendants argue that conflict preemption, a species of implied preemption, applies to Plaintiffs'

10

claims. Mot. at 22 (arguing Plaintiffs' claims "conflict[] with FDA's considered judgment that food with these levels of lead is safe"). But the Nutrition Labeling and Education Act of 1990 ("NLEA"), which modified the Federal Food, Drug, and Cosmetic Act ("FDCA"), and included a preemption provision, contains a "savings clause," providing that it "shall not be construed to preempt any provision of State law, unless such provision is expressly preempted under [21 U.S.C. § 343-1(a)] of the [FDCA]." Pub. L. No. 101-535, § 6(c)(1), 104 Stat. 2353, 2364 (1990), 21 U.S.C. § 343-1 note (1). As a result, the NLEA *cannot* implicitly preempt state law. *Lockwood v. Conagra Foods, Inc.*, 597 F. Supp. 2d 1028, 1033 (N.D. Cal. 2009) ("NLEA—including the savings clause (no preemption unless the law is expressly preempted)—shall not be construed to affect preemption of food safety laws."). Further, the NLEA expressly exempts safety disclosures from preemption. Section 6(c)(2), which was not codified, states that 21 U.S.C. §343-1 "shall not be construed to apply to any requirement respecting a statement on the labeling of food that provides a warning concerning the safety of the food or a component of the food." Pub. L. 101-535, section 6, 104 Stat. 2343 (1990). This provision "saves from express preemption state laws such as Proposition 65 requiring food safety warnings." *Sciortino v. Pepsico, Inc.*, 108 F. Supp. 3d 780, 801 (N.D. Cal. 2015). Moreover, that the FDA has not required warnings for lead on foods has no preemptive effect, since the absence of a regulation does not have preemptive force. *See Freightliner Corp. v. Myrick*, 514 U.S. 280, 286 (1995).

### 2. Defendants Fail to Carry their Burden of Showing Express Preemption

Defendants also assert that Plaintiffs' claims based on the statements "High Protein" and "healthy" are expressly preempted. That is wrong.

First, while a *direct* challenge to "High Protein" would be preempted, here, Plaintiffs' may still point to the phrase to show Defendants were required by 21 C.F.R. § 1.21(a) to make a disclosure, since that regulation requires a food manufacturer to "reveal facts that are material in light of other representations made or suggested" by other (even permitted) "statement[s], word[s], design[s], device[s], or any combination thereof" in a product's labeling. *See* Compl. ¶ 105 (quoting 21 C.F.R. § 1.21(a)(1)).

Second, "plaintiffs can avoid preemption if they show . . . that the labeling material they challenge does not constitute a [regulated claim]," *In re Quaker Oats Labeling Litig.*, 2012 WL 1034532, at *2. That is the case here, as Defendants have not carried their burden of showing their use of the word "healthy" on the Products' label is a permitted nutrient content claim.

In a single sentence devoid of analysis, Defendants seem to assert the use of "healthy" to describe food is governed by 21 C.F.R. § 101.65(d)(2). *See* Mot. at 23. It is not. While § 101.65(d)(2) governs implied nutrient content claims that use the term healthy, to constitute an implied nutrient content claim under this section, a product must not only use the term healthy, but the term must be "made in connection with an explicit or implicit claim or statement about a nutrient (e.g., 'healthy, contains 3 grams of fat')." 21 C.F.R. § 101.65(d)(1)(ii). The "healthy" statement at issue here does not refer to any nutrients, either explicitly or implicitly and, as such, does not "characterize the[ir] level," as all nutrient content claims must. *See id.* § 101.65(a)(2) (an "implied nutrient content claim can only be made" if it "is made in accordance with the general requirements for nutrient content claims in § 101.13," among other requirements). Thus, preemption does not apply. *See Johnson-Jack*, 587 F. Supp. 3d at 972 ("'Health-Ade.' . . . is not linked to any nutrient or any specific disease or health-related condition and, therefore, is not a health claim or a nutrient-content claim. The term is unregulated, and the plaintiffs' claims are not preempted.").

## III.    Plaintiffs' Claims are Independent of Proposition 65

### A.    Proposition 65 Notice is Not Required Because Plaintiffs' Claims are Based on Affirmative Misrepresentations and Independent Duties to Disclose

While a plaintiff cannot plead around the notice requirements of Proposition 65, "the Ninth Circuit has characterized the rule . . . as 'rather narrow.'" *Sciortino*, 108 F. Supp. 3d at 793 (quoting *Chabner v. United of Omaha Life Ins. Co.*, 225 F.3d 1042, 1048 (9th Cir. 2000)). There is no bar to relief for lack of Proposition 65 notice if the conduct violates other laws as well. *See Zhang v. Super. Ct.*, 57 Cal. 4th 364, 369 (2013). Thus, "[t]he question is whether the claims asserted . . . are *entirely derivative* of an unspoken Proposition 65 violation, or whether they assert claims independent of Proposition 65." *Sciortino*, 108 F. Supp. 3d at 792  (emphasis added). Here, Plaintiffs' claims are not entirely derivative.

Defendants are wrong that "[a]ll of the claims are based on defendants' alleged failure to disclose lead at levels alleged to be in excess of Proposition 65's MADLs." Mot. at 20 (citation omitted). Plaintiffs bring affirmative misrepresentation claims based on Defendant's labeling claims that the Products are generally healthy and promote immune health. *See, e.g.*, Compl. ¶ 38. These claims are misleading because the Products contain levels of lead that can "cause anemia, hypertension, renal impairment, immunotoxicity, toxicity to the reproductive organs, type 2 diabetes, and cancer," *id.* ¶ 18. Because the "'alleged wrong is

not a failure to warn under Proposition 65, but rather a separate misrepresentation to consumers regarding'
the presence of potentially dangerous chemicals in Defendant[s'] [Products] . . . the pleadings are sufficient
to support an independent duty to disclose irrespective of Proposition 65." *Barnes*, 2022 WL 4283779, at
*5 (quoting *Bland v. Sequel Nat. Ltd.*, 2019 WL 4658361, at *4 (N.D. Cal. Jan. 18, 2019) ["*Bland I*"]).

Second, where a plaintiff "alleges that Heavy Metal consumption can contribute to a variety of health
complications in addition to those that are the focus of Proposition 65 (cancer and reproductive harm)[,]
[t]he pleadings are sufficient to support *an independent duty to disclose* irrespective of Proposition 65."
*Barnes*, 2022 WL 4283779, at *5 (emphasis added). Here, Plaintiffs allege lead "negatively affects multiple
body systems, including the neurological, haematological, gastrointestinal, cardiovascular, immune, and
renal systems." Compl. ¶ 16. Thus, Plaintiffs claims are not entirely derivative. *See Barnes*, 2022 WL
4283779, at *5; *Bland I*, 2019 WL 4658361, at *4 (quoting *Sciortino*, 108 F. Supp. 3d at 794).

Finally, Defendants assert "plaintiffs' counsel here absolutely understands that the claims in this
lawsuit overlap with Proposition 65, so much so that they are simultaneously pursuing a parallel action
under Proposition 65." Mot. at 20. But "[t]he mere fact that Proposition 65 also regulates [defendants']
behavior . . . does not mean that plaintiffs, in challenging [defendants'] behavior under California's
consumer protection statutes . . . improperly 'pled around' Proposition 65." *See Cortina v. Goya Foods,
Inc.*, 94 F. Supp. 3d 1174, 1185 (S.D. Cal. 2015). Further, "[b]riefly mentioning a Proposition 65 safe harbor
level is not synonymous with claiming a specified cause of action for a violation of Proposition 65." *Id*. at
1183-84. Because Plaintiffs' "complaint [can be] stripped of any reference to Proposition 65, [plaintiffs']
claims . . . survive because the duty to provide non-misleading information arises 'irrespective of
Proposition 65,'" *Bland I*, 2019 WL 4658361 at *4 (quoting *Sciortino*, 108 F. Supp. 3d at 794). Thus,
Plaintiffs had no duty to provide Proposition 65 notice.

**B.    The *ELF* Consent Judgment is Irrelevant to Plaintiffs' Claims**

Because Plaintiffs' claims in this case do not "allege[ any] violations of Proposition 65," contrary to
Defendants' argument, the Consent Judgment in *Environmental Law Foundation v. Abbott Labs. et al.*, No.
10-503002 (Super. Ct. San Francisco) ("*ELF*") was not "a full, final, and binding resolution of any" claim
Plaintiffs assert here. *See* Mot. at 18 (arguing "Plaintiffs' Claims Are Barred By The Consent Judgment").
"In this action . . . the alleged wrong is *not* a failure to warn under Proposition 65," *Barnes*, 2022 WL

13

4283779 at *5 (emphasis added) (internal quotation marks and citations omitted). Rather, Plaintiffs allege Defendants misrepresented the healthfulness of the Products through affirmative misrepresentations. Compl. ¶¶ 38-42, 100. These claims do not depend on Proposition 65, or *any* duty to warn. *Cf. Bland I*, 2019 WL 4658361, at *4 (allegation that labeling statements "'REAL plant-based FOOD,' 'Nutritional Shake' and 'Protein & Greens'" were misleading due to lead in the food "support[ted] an independent duty to disclose irrespective of Proposition 65"); *Sciortino*, 108 F. Supp. 3d at 794 (noting plaintiffs alleged defendants "should have disclosed the presence of [lead] in the [Products] irrespective of Proposition 65, including, e.g., in its advertising and public statements"); *Colgate v. JUUL Labs, Inc*., 402 F. Supp. 3d 728, 748-49 (N.D. Cal. 2019) (even where product provides Prop 65 notice, a separate duty to disclose additional information may exist and give rise to a plausible claim for omission). Thus, the Proposition 65 Consent Judgment is irrelevant and has no preclusive effect here.

Moreover, the Consent Judgment is internally inconsistent at to what is released and, as a matter of law, cannot have released any claims against the Products at issue in this lawsuit, which were not at issue—and in one case did not even exist—when the Consent Judgment was entered. Neither BellRing nor Premier was a defendant in *ELF*. *See* Consent J. at 1 (listing defendants). Instead, relevant here, when *ELF* was filed in November 2010, the plaintiff alleged a company called Dymatize Enterprises Inc. "sells, manufactures, packages, distributes or markets PROTEIN SUPPLEMENTS for sale or use in California that expose individuals to lead, including but not limited to Dynamize Nutrition Elite Whey Protein Isolate." *ELF* Compl. ¶ 14. Neither the Complaint nor the Consent Judgment ever mentions the entities or Products at issue in this case, including BellRing Brands, Premier Nutrition Company, Premier Protein, Premier Protein Shakes, and Premier Protein Plant Powders. Indeed, Premier did not even begin marketing Protein Plant Powder until March 2023. Compl. ¶ 32.

The Consent Judgment includes multiple provisions regarding its scope. First, paragraph 1.4 provides that it represents "a full settlement of all claims ***that were raised in the Complaint based on the facts allege therein***, or which ***could have been raised in the Complaint arising out of the facts alleged therein***." Consent J. ¶ 1.4 (emphasis added). Later, paragraph 8.1 ("Claims Covered") provides that it "is a final and binding resolution . . . of any violation of Proposition 65 ***up and through the date of entry of this order*** that could have been asserted against any Settling Defendant for failure to provide clear, reasonable

and lawful warnings of exposures to lead that result from ingestion of Protein Supplement Products as defined herein." *Id.* ¶ 8.1 (emphasis added). "Protein Supplement Products," in turn, is defined in paragraph 1.1, which states: "The protein supplement products ELF alleges contain lead, and which are covered by this Consent Judgment, are those described in Attachment A for each Settling Defendant (the 'Protein Supplement Products')." *Id.* ¶ 1.1.

Turning to "Attachment A" for Dymatize, "the 'Protein Supplement Products' covered by this Consent Judgment" are defined as:

> all sizes, flavors, packaging, forms and potencies of "ready to drink" liquids, semi-solids and/or "ready to mix" powders and/or pills and/or packets of dietary supplement products and/or foods supplying at least 5 grams of protein in a Daily Serving as defined in this Consent Judgment, previously, currently, ***or in the future*** manufactured by, sold by, or distributed directly or indirectly in or into California by, or on behalf of, the Settling Defendant listed above, ***or its corporate subsidiaries and affiliates***, under the trade names and trademarks owned by Settling Defendant or its corporate subsidiaries and affiliates. ***This definition includes*** those dietary supplement ***products and foods*** otherwise meeting this definition which are ***first introduced into California subsequent to the Effective Date of this Consent Judgment***.

Consent J., App'x A Re Dymatize (emphasis added).[4]

As a result, paragraphs 1.4 and 8.8 are inconsistent: 1.4 limits the claims covered by the Consent Judgment to claims that were or could have been raised in the ELF Complaint, while 8.8 covers claims concerning future products manufactured by unidentified entities not named in the EFL Complaint. Moreover, paragraph 1.1 is literally false, as the plaintiff in the case did *not* allege that products that would be manufactured by Dymatize's subsidiaries and affiliates in the future "contain" (present tense) lead.

"A settlement agreement may preclude a party from bringing a related claim in the future 'even though the claim was not presented and might not have been presentable in the [representative] action,' but

---

[4] The Dymatize Appendix A is different than those of several other Settling Defendants. First, the Appendix as relating to Abbott, Country Life, Bio-Engineered Supplements & Nutrition, Champion Nutrition, Chemi-Source, ISS Research, Labrada Bodybuilding Nutrition, Natural Organics Laboratories, Inc., and Vital Pharmaceuticals, Inc., all identify the covered products *with specificity*: at least by brand name, and often by product name and size. Along with Dymatize, only three other Appendix as lack this detail (Healthwatchers, Idea Sphere, and The Isopure Company). Second, when entities beyond the Settling Defendant are intended to be included, unlike with Dymatize, those included entities are typically enumerated. This is true for Bio-Engineered Supplements & Nutrition, Heathwatchers, and Idea Sphere. The only other attempt to include related companies without enumerating them is with respect to Champion Nutrition; but unlike Dymatize, that Appendix A enumerates the covered products.

only where the released claim is 'based on the identical factual predicate as that underlying the claims in the settled class action.'" *See Hesse v. Sprint Corp.*, 598 F.3d 581, 590 (9th Cir. 2010) (quoting *Wiliams v. Boeing Co.*, 517 F.3d 1120, 1133 (9th Cir. 2008)). "Put another way, a release of claims that 'go beyond the scope of the allegations in the operative complaint' is impermissible." *Loving v. Sears, Roebuck & Co.*, 2014 WL 8252583, at *2 (C.D. Cal. Dec. 9, 2014) (quoting *Willner v. Manpower, Inc.*, 2014 WL 4370694, at *7 (N.D. Cal. Sept. 3, 2014)).

The ELF parties' attempt in paragraph 8.8 to expand coverage of the Consent Decree indefinitely (with no limitation as to the entities or products it might someday cover) is improper as a matter of law, as parties cannot release representative claims for behavior that falls outside the allegations in a Complaint. The *ELF* parties attempt to deal with this by writing into the Consent Decree that, "[u]pon entry . . . the Complaint shall be deemed amended such that the term 'PROTEIN SUPPLEMENTS' in the Complaint is defined, as to each Settling Defendant, as the Protein Supplement Products identified in Attachment A corresponding to each such Settling Defendant." Consent J. ¶ 1.1. But this does not solve their problem because claims cannot be brought—and a court cannot exercise jurisdiction over—*future behavior*.

Indeed, under the terms of the Consent Judgment, the court only had "[subject matter] jurisdiction over allegations of violations contained in the Complaint and personal jurisdiction over the Settling Defendants as to the acts alleged in the Complaint," *id.* ¶ 1.2. Since as-of-yet un-invented products could not have violated Proposition 65, the court lacked subject matter jurisdiction to adjudicate anyone's rights and responsibilities related to those non-existent products. And since Dymatize's affiliates and subsidiaries were not before the court and not Settling Defendants, there is no indication the court had personal jurisdiction over them either, particularly not for their future behavior. Moreover, those entities were not, and will never be required to subject themselves to the court's jurisdiction in order to reap the benefits of the Consent Judgment: as structured, only Dymatize is a Settling Defendant subject to the court's oversight and jurisdiction—its subsidiaries' and affiliates' existing and future products, are just shoehorned in.

## C.    There is No Safe Harbor Because Plaintiffs Allege Harms Broader Than, and Independent of Proposition 65

"A safe harbor exists only where conduct is expressly permitted, and not merely because conduct is not expressly prohibited." *Jordan v. Paul Fin., LLC*, 745 F. Supp. 2d 1084, 1099 (N.D. Cal. 2010); *see also*

*Rushing v. Williams-Sonoma, Inc.*, 2016 WL 4269787, at \*4-5 (N.D. Cal. Aug. 15, 2016) (no safe harbor where "this regulation does not expressly permit defendants' advertising conduct"). While Defendants assert Plaintiffs' claims are "barred by the safe harbor doctrine," Mot. at 18, Plaintiffs are not bringing a Proposition 65 claim, nor seeking to have Defendants use a Proposition 65 warning, which only concerns "chemicals known to cause 'cancer or reproductive toxicity,'" *Bland I*, 2019 WL 4658361, at \*1. Instead, Plaintiffs' claims concern health risks caused by lead that go beyond the cancer and reproductive harm that is the subject of Proposition 65, *see* Compl. ¶ 110, and are based on Defendants' misrepresentations and duties to disclose, which are independent of Proposition 65, *see id.* ¶¶ 38-42, 81-84, 101. The law is clear that "if the Legislature did not consider that activity in those circumstances, the failure to proscribe it in a specific provision does not prevent a judicial determination that it is unfair under the unfair competition law," *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 183 (1999); *see also id.* at 184 (the "Legislature's mere failure to prohibit an activity does not prevent a court from finding it unfair"). Thus, that lead is among the many chemicals that cause cancer and reproductive harm and, as such, is covered by Proposition 65, does not mean that Plaintiffs' claims—which concern additional harms caused by lead—are barred. *See Bland I*, 2019 WL 4658361, at \*1, \*4 ("Defendants' argument that allowing this suit to proceed would run afoul of Proposition 65's safe harbor provision [wa]s unpersuasive" where plaintiff alleged defendant sold protein powders containing lead and cadmium "without warning consumers about the presence of these toxins, in violation of state law").

Moreover, Proposition 65 expressly adds to, rather than supplants manufacturers' other legal obligations, providing that:

> Nothing in this chapter shall alter or diminish any legal obligation otherwise required in common law or by statute or regulation, and nothing in this chapter shall create or enlarge any defense in any action to enforce such legal obligation. Penalties and sanctions imposed under this chapter shall be in addition to any penalties or sanctions otherwise prescribed by law.

Cal. Health & Safety Code § 25249.13. Because Plaintiffs' claims are founded on misrepresentations and independent duties to disclose imposed by California's consumer protection statutes, the safe harbor doctrine's narrow bar does not apply.

Defendants' reliance on the depublished decision in *Charles v. Sutter Home Winery, Inc.*, 232 Cal. Rptr. 3d 513 (Cal. Ct. App. 2018), is misplaced. There, the defendant used a Proposition 65 warning for

17

alcoholic beverages subscribed under section 25603.3, subd. (e)(1), and the plaintiff alleged it was required to use the warning "patterned after section 25603.2." *See Charles*, 232 Cal. Rprt. 3d at 516, 521. Whether a plaintiff can force a defendant to use one particular Proposition 65 warning over another has no bearing on the issue here, where "the 'alleged wrong is not a failure to warn under Proposition 65, but rather a separate misrepresentation to consumers regarding' the presence of potentially dangerous chemicals in Defendant[s'] [Products]," *see Barnes*, 2022 WL 4283779, at *5 (quoting *Bland I*, 2019 WL 4658361, at *4).

## IV.    The Primary Jurisdiction Doctrine Does Not Apply

Citing five out-of-Circuit cases involving lead in baby food, Defendants argue the case should be stayed or dismissed under the primary jurisdiction doctrine, which "'applies in a limited set of circumstances' and 'is not designed to secure expert advice from agencies every time a court is presented with an issue conceivably within the agency's ambit.'" *Massaro v. Beyond Meat, Inc.*, 2021 WL 948805, at *13 (S.D. Cal. Mar. 12, 2021) (quoting *Clark v. Time Warner Cable*, 523 F.3d 1110, 1114 (9th Cir. 2008)). The doctrine does not "require that all claims within an agency's purview be decided by the agency," and "is properly invoked when a claim is cognizable in federal court but requires resolution of an issue of first impression, or of a particularly complicated issue that Congress has committed to a regulatory agency." *Brown v. MCI WorldCom Network Servs., Inc.*, 277 F.3d 1166, 1172 (9th Cir. 2002) (citation omitted).

"When deciding whether to defer jurisdiction at the motion to dismiss stage, courts" in the Ninth Circuit "must 'apply a standard derived from Rule 12(b)(6) jurisprudence: whether the complaint plausibly asserts a claim that would not implicate the [primary jurisdiction] doctrine.'" *Liou v. Organifi, LLC*, 491 F. Supp. 3d 740, 751 (S.D. Cal. 2020) (quoting *County of Santa Clara v. Astra U.S.*, 588 F.3d 1237, 1251-52 (9th Cir. 2009)). Where "the allegations of the complaint do not necessarily require the doctrine's applicability, then the primary jurisdiction doctrine may not be applied on a motion to dismiss . . . ." *Davel Commc'ns, Inc. v. Qwest Corp.*, 460 F.3d 1075, 1088 (9th Cir. 2006) (emphasis added).

Here, the primary issue is whether a reasonable consumer would be misled by Defendants' misrepresentations and failure to disclose the presence of 0.5μg to 1.4μg of lead per serving in the Products. Thus, this case "presents a typical false advertising case well within the province of this Court because 'allegations of deceptive labeling do not require the expertise of the FDA to be resolved in the courts, as every day courts decide whether conduct is misleading.'" *Liou*, 491 F. Supp. 3d at 751 (quoting *Jones v.*

18

*ConAgra Foods, Inc.*, 912 F. Supp. 2d 889, 899 (N.D. Cal. 2012)); *see also Leonhart v. Nature's Path Foods, Inc.*, 2014 WL 1338161, at *7 (N.D. Cal. Mar. 31, 2014) ("Defendant has not demonstrated that this Court could not determine whether such claims are misleading without FDA expertise." (collecting cases)).

The out-of-Circuit decisions Defendants cite are distinguishable. They relied on the FDA's "Closer to Zero" initiative, which is not relevant here, as the initiative's goal is ensuring that *babies and infants* "maintain[] access to nutritious foods."[5] The FDA's considerations in this context are not relevant to the Premier Protein Products. Further, "Closer to Zero does not address labeling of [ ] food products or the potential duty of producers to advise [consumers] of the potential presence of heavy metals in [ ] food[s]." *Plum*, 2023 WL 3493319, at *2. Since Defendants fail to argue the FDA will consider setting acceptable levels of lead in protein powders, its assertion that invoking the primary jurisdiction doctrine will prevent inconsistent rulings, Mot. at 21, deserves short shrift.

Notably, a recent decision by a court in this Circuit, in a case in which the plaintiff alleged the defendant "failed to disclose that its baby food products contain (or have a risk of containing) heavy metals," declined to invoke primary jurisdiction. *Plum*, 2022 WL 16640802, at *1. The court expressly found that it "need not rely on the FDA's expertise or its potential guidance on action levels to determine whether Plum's alleged omissions are actionable given the allegations of the operative complaint." *Id.* (citing *Clark*, 523 F.3d at 1114). For good reason: "allegations of deceptive labeling do not require the expertise of the FDA to be resolved in the courts, as every day courts decide whether conduct is misleading." *Rojas v. Gen. Mills, Inc.*, 2013 WL 5568389, at *4 (N.D. Cal. Oct. 9, 2013) (quotation omitted).

Finally, "courts must also consider whether invoking primary jurisdiction would needlessly delay the resolution of claims" because "'efficiency' is the 'deciding factor' in whether to invoke primary jurisdiction," *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 760 (9th Cir. 2015) (quotations omitted). Unlike in the out-of-Circuit baby food cases where the defendants argued the FDA was currently considering the acceptable levels of heavy metals in baby foods, Defendants here do not assert (nor could they) that the FDA is currently considering acceptable levels of lead in protein products. This "counsels against an indefinite stay." *Plum*, 2022 WL 16640802, at *1 (citing *Astiana*, 783 F.3d at 760).

---

[5] https://www.fda.gov/food/environmental-contaminants-food/closer-zero-reducing-childhood-exposure-contaminants-foods.

1

2    **V.    Plaintiffs State Claims for Breach of Warranties**

3         Defendants argue Plaintiffs "fail to plausibly allege that the products they purchased are defective

4    or not fit for the ordinary purpose for which the products are used." Mot. at 23. But "[i]n cases involving

5    human food, a party can plead that a product violates the implied warranty of merchantability through

6    allegations that the product was unsafe for consumption, contaminated, or contained foreign objects."

7    *Barnes*, 2022 WL 4283779, at *8 (citing *Thomas v. Costco Wholesale Corp.*, 2014 WL 5872808, at *3 (N.D.

8    Cal. Nov. 12, 2014)). In *Barnes*, the court found plaintiff stated a claim for breach of implied warranty

9    where, just as here, the plaintiff alleged the challenged products contained heavy metals. *Id.*; *see also*

10   *Guttmann v. Nissin Foods (U.S.A.) Co., Inc.*, 2015 WL 4309427, at *5 (N.D. Cal. July 15, 2015)

11   ("Guttmann's complaint has plausibly alleged that foods containing artificial trans-fat are not fit for human

12   consumption, due to the myriad medical conditions to which they are linked.").

13        Consistent with this precedent, Plaintiffs allege the "Products were unsafe in that they contained

14   unsafe levels of toxic lead . . . would not pass without objection in the trade or industry and were accordingly

15   not fit for . . . consumption by consumers, including children and pregnant women." Compl. ¶ 170. Thus,

16   Plaintiffs "ha[ve] plausibly alleged the presence of unusually high amounts of lead . . . in Defendant[s']

17   products renders these products unfit for consumption." *Bland II*, 2019 WL 4674337, at *4.

18        Finally, Defendants assert "plaintiffs have not alleged a breach of warranty for the same reasons they

19   have not plausibly alleged deception," Mot. at 23. But courts routinely hold that stating a claim under

20   California's consumer protection statutes is sufficient to state a claim for express warranty. *See Tsan v.*

21   *Seventh Generation, Inc.*, 2015 WL 6694104, at *7 (N.D. Cal. Nov. 3, 2015) (because plaintiffs satisfied

22   the reasonable consumer standard for their California consumer protection claims, the same "allegations

23   [we]re sufficient to state a claim for breach of express warranty" (citing *Garrison v. Whole Foods Market*

24   *Group, Inc.*, 2014 WL 2451290, at *6 (N.D. Cal. June 2, 2014))). Thus, Defendants' motion should be

25   "denied for the same reasons as the consumer protection and misrepresentation-based claims addressed

26   above," *Ham v. Hain Celestial Group, Inc.*, 70 F. Supp. 3d 1188, 1195 (N.D. Cal. 2014).

27   **VI.    Plaintiffs State Claims for Unjust Enrichment**

28        Defendants argue that "plaintiffs' unjust enrichment claim is 'derivative of th[e] same facts'

20

*Krystofiak et al. v. BellRing Brands, Inc. et al.*, Case No: 3:23-cv-02819-ATG
PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

underlying their other deficient claims, [and] it fails for the same reasons . . . ." Mot. at 25 (quoting *Aellis O. v. Connor*, 2022 WL 2229421, at *8 (S.D. Cal. June 21, 2022)). But unlike in *Aellis*, Plaintiffs' other claims are not deficient. Further, Defendants do not even try to show Plaintiffs' unjust enrichment claims are derivative. Even if they were, it is irrelevant as "[t]he Ninth Circuit has found that California recognizes an independent cause of action for Unjust enrichment," *see Dang v. Samsung Elecs. Co.*, 2018 WL 6308738, at *11 (N.D. Cal. Dec. 3, 2018) (citing *Bruton v. Gerber Prods. Co.*, 703 F. App'x 468, 470 (9th Cir. 2017)); *see also Hartford Cas. Ins. Co. v. J.R. Mktg., L.L.C.*, 61 Cal. 4th 988, 1000 (2015)).

## VII.   Plaintiffs Allege a Special Relationship and State Negligent Misrepresentation Claims

While most states do not require a special relationship to state a claim for negligent misrepresentation, New York law "requires the plaintiff to demonstrate (1) the existence of a special or privity-like relationship imposing a duty on the defendant to impart correct information to the plaintiff; (2) that the information was incorrect; and (3) reasonable reliance on the information." *Hughes v. Ester C Co.*, 930 F. Supp. 2d 439, 474 (E.D.N.Y. 2013) (quotation omitted). "[A] determination of whether a special relationship exists is essentially a factual inquiry," *Greene v. Gerber Prod. Co.*, 262 F. Supp. 3d 38, 77 (E.D.N.Y. 2017), and the "factor of reliance ties into the special relationship element," *Hughes*, 930 F. Supp. 2d at 474. In determining whether a special relationship exists, courts consider: (1) "whether the person making the representation held or appeared to hold unique or special expertise," (2) "whether a special relationship of trust of confidence existed between the parties," and (3) "whether the speaker was aware of the use to which the information would be put and supplied it for that purpose," *Kimmell v. Schaefer*, 675 N.E.2d 450, 454 (N.Y. 1996). "When a plaintiff fails to allege the existence of a special relationship or the relationship is only 'sparsely pled,'" the plaintiff must "emphatically allege[ ] the other two factors enunciated in *Kimmell*." *Greene*, 262 F. Supp. 3d at 75 (quoting *Eternity Glob. Master Fund Ltd. v. Morgan Guar. Tr. Co. of N.Y.*, 375 F.3d 168, 188 (2d Cir. 2004)).

Here, Plaintiffs allege Defendants hold themselves out as having expertise in health and specialized knowledge regarding the impact of consuming the Products. For example, they represent that "[t]he team at Premier Nutrition is dedicated to researching and developing a variety of products" with "exceptional nutritional values . . . ." Compl. ¶ 49. They further provide resources, like "The Ultimate Guide to Protein Shakes," through which they advise consumers about "[h]ow protein shakes fit into your healthy lifestyle,"

21

*Krystofiak et al. v. BellRing Brands, Inc. et al.*, Case No: 3:23-cv-02819-ATG
PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

*see id.* ¶ 93. Premier's website further states, "[w]e're here to help you stay on course. Every shake, bar, and powder nourishes your body," and each is "complete with all essential amino acids." *Id.* ¶ 67. Defendants also "give advice" from "a 'Dr. Applegate,'" among others, knowing consumers will find such "expert advice" credible. *See id.* ¶ 47. These allegations plead a special relationship. *See Hughes*, 930 F. Supp. 2d at 475 (inferring a special relationship between the parties because the defendants "held themselves out as holding a type of special expertise regarding the purported health benefits of Ester–C" where "Ester–C's website contains a section entitled, 'Ask an Expert,'" and the "product's labeling also contains language that, at the very least, suggests some level of medical or scientific backing for its claims"). Especially given the factual nature of the inquiry, "although the parties engaged in a typical commercial transaction, Plaintiffs have pled facts sufficient to show that Defendant[s] possessed special expertise and knowledge about the health claims . . . and knew that Plaintiffs would rely on those claims." *See Greene*, 262 F. Supp. 3d at 77.

## VIII.   Plaintiffs May Challenge All Flavors of the Premier Protein Products

Contrary to Defendants, Mot. at 13, the Complaint demonstrates the challenged Products are substantially similar since they are simply different flavors of liquid or powdered proteins. Compl. ¶¶ 33-34. *See Brazil*, 2013 WL 5312418, at *9 n.5 ("The Substantially Similar Products are all just different flavors or varieties of the Purchased Products . . . and consequently the Court finds that the products themselves are substantially similar."). Further, all of the Products bear similar health and wellness representations, *id.* ¶¶ 38-42, which are misleading for the same reason—they all contain unsafe levels of lead, *id.* ¶ 73. Thus, the Court should find that because "all the products are the same and deceive in the same manner, [ ] the Complaint sufficiently pleads substantial similarity." *Victor v. R.C. Bigelow, Inc.*, 2014 WL 1028881, at *10 (N.D. Cal. Mar. 14, 2014); *see also LeGrand v. Abbott Labs.*, --- F. Supp. 3d ----, 2023 WL 1819159, at *6 (N.D. Cal. Feb. 8, 2023) (though "advertising statements var[ied] some," products were "sufficiently similar" where "the basis for alleging the packaging to be misleading [wa]s largely the same," and "[a]ll the relevant products contain[ed] added sugar in harmful amounts, the key ingredient underpinning [plaintiff's] false advertising claims").

## IX.   Plaintiffs Plausibly Allege Entitlement to Equitable Relief

### A.     Plaintiffs Plead Inadequate Legal Remedies

In a single sentence devoid of any analysis, Defendants assert that "[a]ll equitable claims must also

be dismissed because plaintiffs fail to plead that they lack an adequate remedy at law." Mot. at 24 (citing

*Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020)). Defendants are wrong. Plaintiffs'

equitable and legal claims do not challenge "the exact same harm," *Sonner*, 971 F.3d at 844, because their

"UCL claim . . . encompasse[s] both a deceptive advertising theory and an unfair business practices theory,"

*Allen v. Hylands, Inc.*, 773 Fed. App'x 870, 874 (9th Cir. 2019). "Because Plaintiffs' claims under the

'unfair' prong of the UCL sweep more broadly than their claims under the FAL, CLRA, or UCL's

'fraudulent' prong, Plaintiffs' legal remedies are inadequate to fully compensate Plaintiffs for all of

Defendants' challenged behavior." Compl. ¶ 141.

Further, *Sonner* precludes alternative pleading of equitable and monetary relief only where plaintiffs

concede they seek the same sum in restitution and damages and simultaneously "fail[ ] to explain how the

same amount of money for the exact same harm is inadequate," 971 F.3d at 844; *see also Sagastume v.*

*Psychemedics Corp.*, 2020 WL 8175597, at *8 (C.D. Cal. Nov. 30, 2020) ("Sonner does not hold that

plaintiffs may not seek alternative remedies at the pleading stage"). But "[d]amages under the CLRA [and

warranty] on the one hand and restitution under the False Advertising and Unfair Competition Laws on the

other hand are different remedies." C*olgan v. Leatherman Tool Grp., Inc.*, 135 Cal. App. 4th 663, 695

(2006).

> Because the damages provision of the CLRA is to compensate for actual loss, and restitution
> under the False Advertising and Unfair Competition Laws are for different purposes—
> deterrence and restoration of property acquired unlawfully—a trial court could, when assessing
> damages under the CLRA, apply standards different from those the trial court might use when
> ordering restitution under the False Advertising or Unfair Competition Laws.

*Id*. at 696 (affirming application of different measure for damages and restitution); *see also Mier v. CVS*

*Pharmacy, Inc*., 2021 WL 1559367, at *13 (C.D. Cal. Mar. 22, 2021) (there may be "an alternate viable

measure of restitution," rendering legal remedies inadequate); *compare* Compl. ¶ 150 ("Because the Court

has broad discretion to award restitution . . . and could . . . apply a standard different than that applied to

assessing damages under the CLRA or commercial code . . . the legal remedies available . . . are more limited

than the equitable remedies available . . . and are therefore inadequate.").

"The time to sort out alternatively pled remedial requests is at the end of a case, not the very

beginning." *Wildin v. FCA US LLC*, 2018 WL 3032986, at *7 (S.D. Cal. June 19, 2018). Because "discovery

may reveal that claims providing legal remedies are inadequate" and "no controlling authority prevents a

plaintiff from asserting alternative legal remedies at the pleading stage," numerous courts have declined to rule on the adequacy of a plaintiff's legal remedies on a Rule 12 motion. *See Edleson v. Travel Ins. Int'l, Inc.*, 2021 WL 4334075, at *6 (S.D. Cal. Sept. 23, 2021); *see also Harris v. McDonald's Corp.*, 2021 WL 2172833, at *3 (N.D. Cal. Mar. 24, 2021) (the "argument that *Sonner* . . . requires rejection of the equitable claims at the pleading stage [was] not persuasive").

### B.    Plaintiffs Have Standing to Seek Injunctive Relief

The Ninth Circuit has identified two circumstances where plaintiffs in false or misleading labeling cases may seek injunctive relief: (i) where plaintiffs "would like to" buy the product again but "will not" because they "will be unable to rely on the product's advertising or labeling" without an injunction; or (ii) where the consumer "might purchase the product in the future" because they "may reasonably, but incorrectly, assume the product was improved."

*Krommenhock v. Post Foods, LLC*, 2020 WL 1139582, at *13 (N.D. Cal. Mar. 9, 2020) (quoting *Davidson*, 889 F.3d at 970). Thus, Plaintiffs have standing to pursue injunctive relief here based on allegations they "would be willing to purchase [the challenged] products in the future if [they] could be certain that they do not contain (o[r] have a material risk of containing) Heavy Metals . . . ." *See Plum*, 2022 WL 16640802, at *1; *see also Gagetta*, 2022 WL 17812924, at *7 (plaintiffs had standing to seek injunctive relief where they "allege that they would like to purchase the herbs and spices in the future but cannot rely on the lack of warning on the label that the products risk containing heavy metals").

Here, Plaintiffs allege they "still wish to purchase protein products," and "would purchase the Premier Protein Products in the future if—because of an injunction requiring Defendants to disclose lead or other heavy metals when present—they could be assured that, by the absence of a disclosure, the Premier Protein Products no longer contained unsafe levels of toxic metals, including lead." Compl. ¶117. This satisfies the requirements under *Davidson. See* 889 F.3d at 971.

Defendants assert these allegations are implausible because "plaintiffs are now fully aware that heavy metals are ubiquitous in the environment and that it is not possible to eliminate heavy metals in the food supply," Mot. at 14. But that "heavy metals are ubiquitous *in the environment*" does not mean lead is ubiquitous *in all foods*. Similarly, that it is impossible to entirely "eliminate heavy metals in the *food supply*" does not mean lead cannot be eliminated or reduced from the Premier Protein Products. *See Bland I*, 2019 WL 4658361, at *2 (plaintiff "adequately pleaded a threat of future injury" where he alleged he "remain[ed] interested in purchasing a healthy safe protein powder and shake product, and would consider the Vega

24

Products in the future if Defendants removed the heightened levels of lead and cadmium").

## **CONCLUSION**

The Court should deny Defendants' motion; but if it is inclined to grant the motion in any respect, Plaintiffs request that dismissal be without prejudice and with leave to amend.

Dated: September 20, 2023

Respectfully Submitted,

/s/ Paul K. Joseph

**FITZGERALD JOSEPH LLP**
JACK FITZGERALD
*jack@fitzgeraldjoseph.com*
PAUL K. JOSEPH
*paul@fitzgeraldjoseph.com*
MELANIE PERSINGER
*melanie@fitzgeraldjoseph.com*
TREVOR M. FLYNN
*trevor@fitzgeraldjoseph.com*
CAROLINE S. EMHARDT
*caroline@fitzgeraldjoseph.com*
2341 Jefferson Street, Suite 200
San Diego, California 92110
Phone: (619) 215-1741

***Counsel for Plaintiffs***