UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

PATRICIA KRYSTOFIAK, et al.,

Plaintiffs,

v.

BELLRING BRANDS, INC., et al.,

Defendants.

Case No.  23-cv-02819-AGT

**ORDER ON MOTION TO DISMISS**

Re: Dkt. No. 43

Defendants BellRing Brands, Inc. and Premier Nutrition Company, LLC (collectively, Defendants) move to dismiss the first amended class action complaint (FAC) filed by plaintiffs Patricia Krystofiak, Luis Carreno, and Jonathan Zimmerman (collectively, Plaintiffs). Dkt. 43 (motion); dkt. 40 (FAC). Plaintiffs oppose. Dkt. 46.

The Court held a hearing on this motion on December 6, 2024. *See* dkt. 53. For the reasons stated below, the Court now grants in part Defendants' motion to dismiss.

## I.    Background

This is a putative consumer fraud class action. Defendants market and sell prepared, ready to drink protein shakes in vanilla, chocolate, caramel, and café latte flavors (collectively referred to as shakes, or products). Dkt. 40 ¶ 1 & n.1. The labels and packaging include claims such as "a healthy snack," "with nutrients for energy and immune health support," and "with nutrients for immune health support." *Id.* ¶¶ 48–49.

Plaintiff Krystofiak (Krystofiak) alleges that she regularly purchased Defendants'

protein shakes in various flavors including café latte. *Id.* ¶ 104. Krystofiak relied on claims that suggested the shakes were healthy, including the "Immune Health Support" claim. *Id.* Plaintiff Carreno (Carreno) alleges that he regularly purchased Defendants' shakes, including chocolate, based on "healthy snack" and "immune health" label claims and most often in a sixteen pack. *Id.* ¶ 105. Krystofiak and Carreno are California citizens and domiciled there. *Id.* ¶¶ 12–13.

Plaintiff Zimmerman (Zimmerman) alleges that he regularly purchased Defendants' shakes in favors including café latte. *Id.* ¶ 106. Zimmerman relied on the label claims "healthy snack" and "immune health." *Id.* He is a citizen of New York and domiciled therein. *Id.* ¶ 14.

Plaintiffs allege that upon testing, the shakes "contain high levels of lead resulting in foods that are not healthy, but rather detriment health, including contributing to increasing the risk of cancer and reproductive toxicity." *Id.* ¶ 1. Plaintiffs would not have purchased the shakes if they knew that the shakes contained, or even potentially contained, lead. *Id.* ¶¶ 104–06.

Plaintiffs seek to represent a class of all persons in the United States who purchased Defendants' shakes for individual use "at any time from four years preceding the date of the filing of [the FAC] to the time a class is notified" (Nationwide Class). *Id.* ¶ 117. Krystofiak and Carreno seek to represent all such purchasers in California (California Subclass). *Id.* Zimmerman seeks to represent New York purchasers (New York Subclass). *Id.*

Plaintiffs bring ten claims total. On behalf of the Nationwide Class and the California Subclass, Plaintiffs bring five state law claims: (1) a violation of California's Unfair Competition Law (UCL), California Business & Professions Code §§ 17200, *et. seq.*; (2) a

violation of California's False Advertising Law (FAL), California Business & Professions Code §§ 17500, *et. seq.*; (3) a violation of California's Consumers Legal Remedies Act (CLRA), California Civil Code §§ 1750, *et. seq.*; (4) breach of express warranties, California Commercial Code § 2313(1); and (5) breach of the implied warranty of merchantability, California Commercial Code § 2314. *Id.* ¶¶ 126–70.

On behalf of the New York Subclass only, Zimmerman alleges (6) unfair and deceptive business practices pursuant to New York General Business Law (N.Y. G.B.L.) § 349, and (7) false advertising pursuant to N.Y. G.B.L. § 350. *Id.* ¶¶ 171–84.

And finally, on behalf of the Nationwide Class only, Plaintiffs bring (8) negligent misrepresentation, (9) intentional misrepresentation, and (10) unjust enrichment claims. *Id.* ¶¶ 185–204.

Defendants now move to dismiss the FAC with prejudice pursuant to Federal Rules of Civil Procedure 8, 9(b), 12(b)(1), and 12(b)(6), and argue that Plaintiffs' claims are expressly preempted. *See* dkt. 43.

## II.    Legal Standard

Rule 12(b)(1) allows a party to move to dismiss for lack of subject matter jurisdiction. *See* Fed. R. Civ. P. 12(b)(1). The issue of Article III standing is jurisdictional and is therefore "properly raised in a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1)." *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). To meet her burden of establishing standing, a plaintiff must show she has "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016), *as revised* (May 24, 2016).

A defendant may move to dismiss a complaint for failing to state a claim upon which relief can be granted under Rule 12(b)(6). "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). To survive a Rule 12(b)(6) motion, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In other words, a plaintiff cannot survive by pleading "naked assertion[s] devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation and citations omitted).

Rule 8(a) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 9(b) imposes a heightened pleading standard where fraud is an essential element of a claim. *See id.* 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."); *see also Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097, 1107 (9th Cir. 2003) ("When an entire complaint, or an entire claim within a complaint, is grounded in fraud and its allegations fail to satisfy the heightened pleading requirements of Rule 9(b), a district court may dismiss the complaint or claim.").

In reviewing the plausibility of a complaint, courts "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). Nevertheless, courts need not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (quoting *Sprewell v. Golden State Warriors*, 266 F.3d 979,

988 (9th Cir. 2001), *amended on other grounds*, 275 F.3d 1187 (9th Cir. 2001)).

When a court grants a motion to dismiss, that court should grant leave to amend "freely . . . when justice so requires." Fed. R. Civ. P. 15(a)(2). But where leave to amend has already been granted, the Court's discretion to deny further leave is "particularly broad." *Chodos v. W. Publ'g Co.*, 292 F.3d 992, 1003 (9th Cir. 2002) (internal citations and quotations omitted).

### III.    Discussion

Defendants move to dismiss Plaintiffs' FAC on six grounds: (1) Plaintiffs lack standing; (2) Plaintiffs' claims are expressly preempted by the federal Food, Drug, and Cosmetic Act (FDCA); (3) Plaintiffs fail to make plausible allegations connecting alleged harms with the lead levels in Defendants' products; (4) Plaintiffs don't plausibly allege falsity, deception, or materiality; (5) Plaintiffs fail to make plausible allegations that the products were unfit for purpose; (6) Plaintiffs' unjust enrichment claim is duplicative and derivative of other causes of action. *See* dkt. 43 at 2.[1]

### A.  Rule 12(b)(1) Standing

Defendants argue that Plaintiffs fail to show which products they purchased, lack standing to sue on unpurchased products, and can't sue based on advertisements they never saw.[2]

---

[1] Citations to page numbers in this order correspond to the Electronic Case Filing numbers at the top of each page.

[2] At the hearing, Plaintiffs conceded that they are only challenging two claims found on the labels of Defendants' shakes. Dkt. 57 (transcript) at 12–13. Additionally, Plaintiffs' FAC contains no allegation that Plaintiffs ever visited Defendants' websites or social media pages. *See* dkt. 40. Therefore, Plaintiffs' alleged injury is not "fairly traceable," *Spokeo*, 578 U.S. at 338, to any statements made on those websites or social media pages. To the extent that Plaintiffs assert claims based on webpages, statements or advertisements that Plaintiffs do not claim to have viewed, these claims fail for lack of standing and must be dismissed.

### 1.  Sufficiency of Plaintiffs' Allegations

Defendants argue that Plaintiffs have failed to specify container size or pack size of purchase, and that pleading only a flavor is inadequate under Rule 12(b)(1). *See* dkt. 43 at 17–19. Plaintiffs disagree. *See* dkt. 46 at 15–16.

To properly allege Article III standing, Plaintiffs must establish that they suffered injuries in fact, which are fairly traceable to the challenged conduct of Defendants, and that it is likely that Plaintiffs' injuries will be redressed by a favorable court decision. *See Spokeo,* 578 U.S. at 338. Crucially, "[t]he 'injury-in-fact' analysis is not intended to be duplicative of the analysis of the substantive merits of the claim." *Haskins v. Symantec Corp.*, No. 13-CV-01834, 2013 WL 4516179, at *3 (N.D. Cal. Aug. 23, 2013).

Plaintiffs bring numerous causes of action. The crux of their claims is that they purchased Defendants' protein shakes while under the impression — due to Defendants' representations and omissions — that the shakes were healthy. *See, e.g.*, dkt. 40 ¶¶ 104–08. In fact, according to the FAC, the shakes were not healthy because of the presence of lead. *See id.* ¶ 1.

Carreno and Zimmerman aver that they purchased Defendants' shakes in the chocolate and café latte flavors, respectively. *Id.* ¶¶ 105–06. They specifically allege that they relied on "healthy snack" and "immune health" claims on Defendants' labels, and that they would not have purchased the shakes had they known of the presence of lead. *Id.* As such, Carreno and Zimmerman have properly alleged injuries in fact (purchase of the shakes), which are fairly traceable to Defendants' actions (making and marketing the shakes with certain label claims). This economic injury is likely redressable via a favorable court

decision, for example, one awarding damages. Carreno[3] and Zimmerman have thus established Article III standing, and Defendants' Rule 12(b)(1) motion to dismiss must be denied as to them.

Krystofiak alleges that she purchased Defendants' café latte flavored shakes and relied on claims that suggested the shakes were healthy, including "immune health support." Dkt. 40 ¶ 104. She further alleges that she would not have purchased the shakes had she known of the presence of lead. *Id.*

Krystofiak's claim differs in one major aspect from Carreno and Zimmerman's claims: she fails to allege where she saw Defendants' claims. Did she see the advertisement online, or in a store? Or on the label of a shake? Presumably, based on counsel's proffer during oral argument, there is evidence by way of her testimony, receipts, or a confirming email.[4] Without that fact now, however, Krystofiak fails to allege which of Defendants' actions she is challenging and therefore the Court cannot trace her injury to any of Defendants' conduct. So, at this pleading stage, Krystofiak lacks standing. *Cf. DiGiacinto v. RB Health (US) LLC*, 668 F. Supp. 3d 950, 960 (N.D. Cal. 2023) ("[The plaintiff] alleges that the packaging of the children's product is deceptive . . . The court finds that the FAC alleges a plausible, non-hypothetical causation chain between [the defendant's] allegedly misleading packaging and [the plaintiff's] injury. Accordingly, [the plaintiff] has established causation

---

[3] Defendants additionally argue that the allegations plead by Carreno in the FAC are inconsistent with those he pled in the original complaint. Dkt. 43 at 18–19; dkt. 47 at 9 & n.4. In the FAC, Carreno alleges purchase of the shakes, especially chocolate ones. Dkt. 40 ¶ 105. In the original complaint, he alleged purchase of Premier Protein Powders. Dkt. 1 ¶ 108. These allegations are distinct, true, but not contradictory. Carreno might have purchased both and is permitted to shape his case by alleging as he chooses.

[4] During oral argument, Plaintiffs' counsel represented that the challenged claims were both on the label. Dkt. 57 at 12. Interpreting that fact in the light most favorable to Plaintiffs on this dismissal motion, the Court will consider that Krystofiak saw the label and can amend to state that.

for purposes of pleading Article III standing."). Accordingly, Defendants' motion to dismiss Krystofiak for lack of standing is granted.

### 2. Unpurchased Products

Plaintiffs specifically allege purchase of the café latte and chocolate flavors, dkt. 40 ¶¶ 104–06, but seek standing to sue on the vanilla and caramel flavors, too. *Id.* ¶ 1. Defendants argue that Plaintiffs have failed to show that the unpurchased products are substantially similar to the purchased products. Dkt. 43 at 19–21. Plaintiffs disagree. Dkt. 46 at 16–17.

Courts in this district have found substantial similarity where "(1) the products are physically similar; (2) the differences between the products are immaterial because the legal claim and injury to the customer is the same; and (3) both the products and the legal claims and injury are similar." *Hayden v. Bob's Red Mill Nat. Foods, Inc.*, No. 23-CV-03862, 2024 WL 1643696, at *5 (N.D. Cal. Apr. 16, 2024) (citing *Ang v. Bimbo Bakeries USA, Inc.*, No. 13-CV-01196, 2014 WL 1024182, at *4–8 (N.D. Cal. Mar. 13, 2014)).

Defendants note that the packaging and labeling of the shakes differs based on the container and package size. Dkt. 43 at 20. Plaintiffs respond that this raises issues of fact which are ill-suited for resolution now. Dkt. 46 at 17. There is no dispute that the products at issue are all protein shakes sold by Defendants. The products' packaging is similar. *See* dkt. 40 ¶ 49. Variations of the same two alleged misrepresentations appear present in the labeling on all flavors of shake. *See id.* ¶¶ 48–49. As such, the products are physically similar, differences between container and package size notwithstanding. *See Colucci v. Zone-Perfect Nutrition Co.,* No. 12-2907, 2012 WL 6737800, at *4 (N.D. Cal. Dec. 28, 2012) (finding similarity where the products at issue were all nutrition bars; shared a uniform size and shape; on casual inspection, the only difference between the bars was flavor, and all bore

the same challenged label).

Defendants argue that Plaintiffs' own testing reveals sizable differences in the lead levels between and among the flavors. Dkt. 43 at 20–21. Plaintiffs argue again that any difference in lead levels is not appropriate for resolution at this stage. Dkt. 46 at 16. The chart provided by Plaintiffs in their FAC, showing the results of the testing, is reproduced below. *See* dkt. 40 ¶ 81.

| Product | Flavor | Laboratory | Testing Date | Lead (μg per serving) |
|---|---|---|---|---|
| Protein Shakes | Chocolate | ISO-Accredited Lab 1 | 5.22.2023 | 1.39 |
| | | ISO-Accredited Lab 2 | 5.31.2023 | 1.346 |
| | Vanilla | ISO-Accredited Lab 1 | 5.22.2023 | 0.498 |
| | | ISO-Accredited Lab 2 | 6.02.2023 | 0.833 |
| | Caramel | ISO-Accredited Lab 1 | 5.01.2023 | 1.08 |
| | | ISO-Accredited Lab 2 | 6.02.2023 | 0.717 |
| | Café Latte | ISO-Accredited Lab 1 | 5.22.2023 | 1.33 |
| | | ISO-Accredited Lab 2 | 6.02.2023 | 0.969 |

The different flavors revealed different lead levels upon testing. However, each had some level of lead. In relation to each, Plaintiffs bring the same legal claims and allege the same injuries: purchase of shakes sold as healthy, which in fact were not healthy because of their lead content. At this pleading stage, the differences between the products are immaterial to the outcome of this motion because the legal claim and injury to the customer is the same. *See Anderson v. Jamba Juice Co.*, 888 F. Supp. 2d 1000, 1006 (N.D. Cal. 2012) (finding substantial similarity where the purchased and unpurchased products contained the same challenged ingredients).

Finally, the products and the legal claims are similar. Plaintiffs bring the same claims in connection with all four flavors. As such, the Court finds that there is substantial similarity between the purchased and unpurchased flavors. Plaintiffs have standing to sue on the purchased flavors of café latte and chocolate, and on the unpurchased flavors of vanilla and

caramel. Defendants' motion to dismiss for lack of standing regarding unpurchased products is therefore denied with respect to Carreno and Zimmerman.[5]

## B. Rule 9(b)

"The touchstone of Rule 9(b) is notice." *McLellan v. Fitbit, Inc.*, No. 16-CV-00036, 2018 WL 2688781, at 1 (N.D. Cal. June 5, 2018). "A pleading is sufficient under Rule 9(b) if it identifies the circumstances constituting fraud so that a defendant can prepare an adequate answer from the allegations." *Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 540 (9th Cir. 1989). Put another way, the allegations must contain "an account of the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." *In re Cloudera, Inc.*, 121 F.4th 1180, 1187 (9th Cir. 2024) (quoting *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007)).

Defendants argue that Plaintiffs fail to identify with sufficient particularity which products they purchased. Dkt. 43 at 19. Specifically, Krystofiak and Zimmerman do not identify container or pack sizes, only flavors. *Id.* at 18. Carreno alleges that he most often buys a sixteen pack, but does not identify a container size or include images of the sixteen pack in the FAC. *Id.* at 19. Defendants highlight that their advertising appears differently on the different container and pack sizes. *Id.* at 18.

Plaintiffs respond that they specify flavors, and that those flavors contained lead when tested, which is sufficient. Dkt. 46 at 16.

Krystofiak's claims fail under Rule 9(b). As noted above, Krystofiak does not allege where she saw the challenged claims. As such, she fails to identify the place of the false

---

[5] The Court need not address Krystofiak's standing to sue on unpurchased products, having previously found that she lacks standing to sue on purchased products.

representations or omissions; her fraud-based claims must be dismissed.

Zimmerman and Carreno, however, do provide Defendants with adequate notice. They plead purchase of the shakes within the class period (time), on the label of chocolate and café latte shakes (place), and based on "healthy snack" and "immune health" claims (specific content).[6] They also allege that Defendants are the parties to the misrepresentation. This is sufficient: Plaintiffs need not plead with "absolute particularity or a recital of the evidence." *United States v. United Healthcare Ins. Co.*, 848 F.3d 1161, 1180 (9th Cir. 2016) (internal citation and quotations omitted).

### C. CLRA, FAL, UCL, and N.Y. G.B.L. Claims

Plaintiffs allege fraudulent, unlawful, and unfair violations of the UCL; violations of the FAL; and violations of the CLRA. Dkt. 40 ¶¶ 126–56.

Both the FAL and CLRA prohibit false advertising. *See* Cal. Bus. & Prof. Code § 17500 (FAL); Cal. Civ. Code § 1770(a) (CLRA).

The UCL has three prongs: unfair, unlawful, and fraudulent. *See* Cal. Bus. & Prof. Code § 17200. Each prong presents a distinct theory of liability. *See Hodsdon v. Mars, Inc.*, 891 F.3d 857, 865 (9th Cir. 2018). Frequently, a violation of the fraudulent prong of the UCL is also a trespass under the FAL and CLRA; courts thus often analyze the UCL's fraudulent prong, the FAL, and CLRA (collectively, California consumer protection laws) together. *See, e.g., McGinity v. Procter & Gamble Co.*, 69 F.4th 1093, 1097 (9th Cir. 2023) (analyzing together); *Hadley v. Kellogg Sales Co*., 273 F. Supp. 3d 1052, 1063–64 (N.D. Cal. 2017) (same). This Court will follow suit.

---

[6] Defendants allege the challenged statements may appear in different locations on products, not that the statements are absent from certain packaging.

Plaintiffs also allege violations of N.Y. G.B.L. §§ 349 & 350. (New York consumer protection laws). When both California and New York state consumer protection claims are alleged in a complaint, courts often analyze those claims together. *See, e.g.*, *Moore v. Trader Joe's Co.*, 4 F.4th 874, 881–85 (9th Cir. 2021) (analyzing California and New York consumer protection claims together and affirming their dismissal).

Plaintiffs' California and New York consumer protection claims are governed by a reasonable consumer test. *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008); *Mantikas v. Kellogg Co.*, 910 F.3d 633, 636 (2d Cir. 2018) (internal citation and quotation omitted). Under this standard, Plaintiffs need to "show that members of the public are likely to be deceived." *Williams*, 552 F.3d at 938; *see also Mantikas,* 910 F.3d at 636 (noting that conduct is materially misleading where a plaintiff "plausibly allege[s] that the deceptive conduct was likely to mislead a reasonable consumer acting reasonably under the circumstances.") (internal citation and quotation omitted).

In the Ninth Circuit, whether a complaint sufficiently alleges that a reasonable consumer would be deceived is appropriate for consideration at the motion to dismiss stage. *See Becerra v. Dr. Pepper/Seven Up, Inc.*, 945 F.3d 1225, 1228–31 (9th Cir. 2019) (affirming district court's dismissal of UCL, FAL, and CLRA claims based upon plaintiff's failure to sufficiently allege that reasonable consumers would be deceived by defendant's representation). Similarly, in the Second Circuit, "[i]t is well settled that a court may determine as a matter of law that an allegedly deceptive advertisement would not have misled a reasonable consumer." *Fink v. Time Warner Cable*, 714 F.3d 739, 741 (2d Cir. 2013).

/ / /

/ / /

### 1. Misrepresentations

Here, Plaintiffs allege that Defendants market their products as generally healthy and beneficial for the immune system via the representations "a healthy snack," "with nutrients for energy and immune health support," and "with nutrients for immune health support." Dkt. 40 ¶ 48. In fact, Defendants' shakes "contain high levels of lead resulting in foods that are not healthy, but rather detriment health, including contributing to increasing the risk of cancer and reproductive toxicity." *Id.* ¶ 1.

Defendants argue that Plaintiffs have not alleged harms associated with the lead levels in the shakes, and therefore have failed to show why the level of lead in the shakes render the label claims deceptive. Dkt. 43 at 29–31.

The Court agrees with Defendants. To state a claim under these consumer protection statutes, Plaintiffs must plausibly show that "a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled," *McGinity*, 69 F.4th at 1097, by the healthfulness of the shakes because of their "high amount of lead." Dkt. 40 ¶ 1. And Plaintiffs must allege sufficient facts, accepted as true, to state that claim. *See Iqbal*, 556 U.S. at 678. This they have failed to do. Plaintiffs devote much of the FAC to the dangers of lead generally, but they do not show why or how the levels of lead in the products here are unhealthy, even accepting as true the well-plead facts in Plaintiffs' FAC.

Plaintiffs first allege that there are no safe levels of lead exposure. Dkt. 40 ¶ 21. A citation for this claim is provided, but Plaintiffs don't elaborate further. *See id.* ¶ 21 & n.11. The statements in the FAC are conclusory and, as such, the Court does not need to presume their truth. *In re Gilead*, 536 F.3d at 1055.

Plaintiffs also don't provide facts elsewhere in the FAC for these statements. The studies that Plaintiffs cite for the dangers of lead generally appear to all evaluate outcomes at various exposure levels and frequencies or timing. *See* dkt. 40 ¶ 18 n.8 (citing a study on "chronic exposure to high levels of lead") & ¶ 20 n.10 (citing a study on "long-term effects of exposure to low doses of lead in childhood"). Plaintiffs thus do not allege sufficient facts to state a plausible claim that the reasonable consumer would be misled by a "healthy" label on a product with anything above the level zero. *See Weaver v. Champion Petfoods USA Inc.*, No. 18-CV-1996, 2019 WL 2774139, at *3 (E.D. Wis. July 1, 2019) (dismissing where plaintiff "insists that the mere presence of heavy metals defeats Defendants' quality claims. If this were true, the result would be truly preposterous. No one would sell foodstuffs . . . .").

Plaintiffs' FAC addresses two additional lead-related thresholds. The first is the Proposition 65 Maximum Allowable Dose Level (MADL) of 0.5 μg of lead per day. *See* dkt. 40 ¶¶ 22 & 81. Aside from citing to the MADL, Plaintiffs don't define the MADL, explain how it applies to this case, or allege any risks connected with this level of lead. Referring to the MADL, alone, without any context on how it should be applied in this case falls short of stating a claim for relief. Plaintiffs, therefore, don't provide sufficient facts, accepted as true, to state a claim that exceeding this MADL renders the labeling of the shakes plausibly misleading.

The FAC also discusses the Prop. 65 No Significant Risk Level (NSRL), 15 μg of lead per day. Dkt. 40 ¶¶ 23–25. Plaintiffs argue that, "oral exposure to just 15 μg of lead per day, creates a 'significant risk level' for lifetime cancer." *Id.* ¶ 24. That may be true, and is assumed as such at this pleading stage, but Plaintiffs cannot show that one of Defendants' shakes includes 15 μg of lead. In Plaintiffs' testing the highest level of lead per serving was

1.39 µg. *Id.* ¶ 81. This, as Plaintiffs themselves note, is only 9.3% of the NSRL. *Id.* ¶ 24. Indeed, Defendants argue that to reach 15 µg of lead per day from their shakes, based on Plaintiffs' testing, one would need to consume 11 to 12 shakes daily. Dkt. 43 at 30 n.18. So, treating as true Plaintiffs' allegation that 15 µg of lead per day is a threshold, beyond which consumption is unhealthy and would render the shakes' labeling plausibly misleading, Plaintiffs have not alleged that Defendants' products exceed that threshold as necessary to state a claim for relief. *See In re Hain Celestial Heavy Metals Baby Food Litig.*, No. 21-CV-00678, 2024 WL 5239510, at *11 (E.D.N.Y. Dec. 27, 2024) ("This disconnect — between the broad allegations of these metals as 'toxic,' and the absence of any specific allegations as to why they are toxic if present in the same parts-per-billion ratio found in Hain's baby foods — is fatal to the majority of their claims.").

Plaintiffs have failed to plausibly show why Defendants' representations regarding health are misleading. Their affirmative misrepresentation claims under the California and New York consumer protection laws must be dismissed. *See Arroyo v. Chattem, Inc.,* 926 F. Supp. 2d 1070, 1079 (N.D. Cal. 2012) (dismissing and noting that, "[w]hile Plaintiff makes general allegations that hexavalent chromium is unsafe, she does not plead with the required particularity what level of hexavalent chromium makes [the product] unsafe."); *Hayden*, 2024 WL 1643696, at *7–8 (dismissing where plaintiffs failed to allege that the level of cadmium in the product was unhealthy); *Bounthon v. Procter & Gamble Co.*, No. 23-CV-00765, 2024 WL 4495501, at *9 (N.D. Cal. Oct. 15, 2024) (dismissing misrepresentations claims where, "Plaintiffs allege that their testing detected PFAS levels of 30 parts per million, with higher concentrations in the aggregate. Even if taken as true, Plaintiffs have failed to plausibly allege that these levels are harmful.") (internal citation omitted); *In re Hain*

*Celestial*, 2024 WL 5239510, at *1 & *9–14 (dismissing where plaintiffs failed to plead any threshold at which the presence of certain contaminants would be unsafe).

## 2. Omissions

"Omissions may be the basis of claims under California consumer protections laws, but 'to be actionable the omission must be contrary to a representation actually made by the defendant, or an omission of a fact the defendant was obliged to disclose.'" *Hodsdon*, 891 F.3d at 861 (quoting *Daugherty v. Am. Honda Motor Co.*, 144 Cal. App. 4th 824, 51 Cal. Rptr. 3d 118, 126 (2006) (emphasis omitted)).

Defendants argue that Plaintiffs have failed to allege why the levels of lead are contrary to health-related claims, and failed to allege any duty to disclose. Dkt. 43 at 31. In opposition, Plaintiffs fail to respond to these arguments and thus now concede them. *See Jenkins v. Cnty. of Riverside,* 398 F.3d 1093, 1095 n.4 (9th Cir. 2005) (noting that plaintiff "abandoned her other two claims by not raising them in opposition" to a motion); *Namisnak v. Uber Techs., Inc.,* 444 F. Supp. 3d 1136, 1146 (N.D. Cal. 2020) ("Plaintiff fails to respond to this argument and therefore concedes it through silence.") (internal citation and quotation omitted).

Plaintiffs' omissions claims under the California consumer laws must be dismissed for the additional reason that, as a basis for relief, they are not viable. As discussed above, Plaintiffs have failed to show that the levels of lead in Defendants' shakes plausibly render them unhealthy. As such, Plaintiffs have failed to show that an omission of the level of lead is contrary to any of Defendants' representations regarding health.

Plaintiffs also fail to allege any duty to disclose. A defendant must only disclose where, "(1) the defect at issue relates to an unreasonable safety hazard or (2) the defect is

material, central to the product's function, and the plaintiff alleges one of the four *LiMandri* factors." *Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1085 (N.D. Cal. 2022) (internal citation and quotation omitted).

Plaintiffs have not shown that the levels of lead in Defendants' shakes relates to an unreasonable safety hazard. *See In re Theos Dark Chocolate Litig.*, 750 F. Supp. 3d 1069, 1090 (N.D. Cal. 2024) (dismissing omissions claim where "Plaintiffs do not plead that the amounts of Heavy Metals that occur in Theo's Products have caused harm or create an unreasonable safety hazard."); *In re Trader Joe's Co. Dark Chocolate Litig.*, 726 F. Supp. 3d 1150, 1170 (S.D. Cal. 2024) (dismissing omissions claim, noting that "alleging that Heavy Metals can pose human health risks at some unidentified level does not mean the levels in these Products pose a human health risk, particularly not one great enough to constitute an unreasonable safety hazard . . . ."); *Grausz v. Hershey Co.*, 713 F. Supp. 3d 818, 828 (S.D. Cal. 2024) (dismissing omissions claim, concluding that, "Plaintiff does not plead the amounts of the substances in Hershey's Products have created an unreasonable safety hazard. Plaintiff merely asserts that lead and cadmium are carcinogens, that '[t]here may be no safe level of exposure to a carcinogen,' and that Hershey's products contain some amount of these substances.") (internal citations omitted).

Plaintiffs have not shown that the defect is material or central to the product's function as food. Such a defect "renders those products incapable of use by any consumer." *Hodsdon,* 891 F.3d at 864. Here, Plaintiffs have not shown that the levels of lead render the shakes incapable of use as sustenance by any consumer. *See In re Theos*, 750 F. Supp. 3d at 1090 (dismissing omissions claim: "Plaintiffs have not plausibly pled that chocolate containing trace amounts of Heavy Metals ceases to function as food — or ceases to provide

any nutritional value."); *In re Trader Joe's*, 726 F. Supp. 3d at 1170 (dismissing where plaintiffs did not show that levels of heavy metals "ma[de products] unfit for human consumption").

Plaintiffs cannot show that the omission was contrary to a representation made by Defendants, or of a fact that Defendants were obliged to disclose. Their California consumer protection claims must be dismissed.

Omissions are also actionable under the New York consumer protection laws. *See In re Lindt & Sprungli (USA), Inc., Dark Chocolate Litig.*, No. 23-CV-1186, 2024 WL 4107244, at *6 (E.D.N.Y. Sept. 6, 2024). "[A] plaintiff bringing an omission-based claim for § 349 liability must show that the business alone possesses material information that is relevant to the consumer and fail[ed] to provide this information, or that plaintiffs could not reasonably have obtained the relevant information they now claim the [defendant] failed to provide." *Paradowski v. Champion Petfoods USA, Inc.*, No. 22-962-CV, 2023 WL 3829559, at *2 (2d Cir. June 6, 2023) (internal citations and quotations omitted).

In the FAC, Plaintiffs plead only that the omission was materially misleading. Dkt. 40 ¶ 176. They do not plead that Plaintiffs could not have obtained the information. However, the Court has already found that this omission was not materially misleading. Accordingly, the claims regarding omissions under New York consumer protection laws must also be dismissed.[7]

### 3. Unfair Prong of the UCL

---

[7] The Court need not address preemption. It concludes that Plaintiffs have failed to state a claim based on misleading representations or omissions made by Defendants. "Because [the Court] conclude[s] Trader Joe's representations are not misleading to a reasonable consumer as a matter of law, [the Court does] not reach whether Plaintiffs' claims are also preempted by federal labeling laws." *Moore v. Trader Joe's Co.*, 4 F.4th 874, 880 (9th Cir. 2021).

Defendants skip entirely the UCL's unfairness prong in the motion to dismiss. Defendants having so failed, the Court has no basis to dismiss under this theory of liability. This claim therefore survives.

### 4.  Unlawful Prong of the UCL

"The unlawful prong requires showing the defendants violated another borrowed law, and [v]irtually any state, federal, or local law can serve as the predicate for an action under section 17200." *Gagetta v. Walmart, Inc.*, 646 F. Supp. 3d 1164, 1177 (N.D. Cal. 2022) (internal citations and quotations omitted).

Plaintiffs allege violations of the FDCA, 21 U.S.C. §§ 301 *et seq.,* and its implementing regulations; California's Sherman Food, Drug, and Cosmetic Law, Cal. Health & Safety §§ 109875–111915; and New York's Agriculture and Marketing Law, N.Y. Comp. Codes R. & Regs. tit. 1, § 259.1. Dkt. 40 ¶ 131. As with the unfairness approach to UCL liability, above, Defendants fail to provide the Court with any argument or authority to dismiss a claim under the UCL's unlawful prong of liability under these laws.

However, Plaintiffs do also rely upon the same violations of the FAL and CLRA which the Court dismissed above. Plaintiffs cannot rely on these dismissed claims as predicate violations of the UCL's unlawful prong; they accordingly failed to plead facts sufficient for a claim based on unlawfulness predicated on FAL and CLRA violations. *See Hayden*, 2024 WL 1643696, at *11 (N.D. Cal. Apr. 16, 2024) ("When a statutory claim fails, a derivative UCL claim also fails.") (quoting *Stewart v. Kodiak Cakes, LLC*, 537 F. Supp. 3d 1103, 1152 (S.D. Cal. 2021)).

### D.  Breach of Express Warranty

"[T]o prevail on a breach of express warranty claim, the plaintiff must prove (1) the

seller's statements constitute an affirmation of fact or promise or a description of the goods; (2) the statement was part of the basis of the bargain; and (3) the warranty was breached." *DiGiacinto*, 668 F. Supp. 3d at 966 (internal citations omitted).

The FAC points to the "healthy snack" and "immune health" representations made by Defendants and argues that Defendants breached express warranties by failing to sell products which met those warranties. Dkt. 40 ¶ 158–60. Defendants argue that the affirmations in question pertain to the healthfulness of the shakes and that Plaintiffs have failed to show a connection between the level of lead in the shakes and the representations on the products' labels. Dkt. 43 at 31–32. The Court construes this as an argument that Plaintiffs cannot show that the warranty was breached. As noted above, the Court agrees that Plaintiffs have not plausibly alleged that Defendants' representations regarding health are misleading. The Court will grant Defendants' motion to dismiss this claim.

Further, Plaintiffs do not respond to Defendants' arguments to dismiss this claim and therein abandon it. *See Jenkins,* 398 F.3d at 1095 n.4; *Namisnak,* 444 F. Supp. 3d at 1146.

### E.  Breach of Implied Warranty of Merchantability

Defendants argue that Plaintiffs cannot show that the shakes failed to meet the minimum level of quality for protein shakes given that merchantability is a low bar. Dkt. 43 at 32. Plaintiffs do not respond to this argument in opposition, and the FAC does not save their claims. The FAC alleges that Defendants breached the implied warranty by selling unhealthy shakes. Dkt. 40 ¶ 166. Plaintiffs are relying on the same argument which the Court has already found insufficient: the presence of lead that rendered the shakes not healthy. Since the Court has found this argument unavailing, this claim must be dismissed.

Additionally, since Plaintiffs fail to oppose Defendants' arguments to dismiss this

claim, they have abandoned it. *See Jenkins,* 398 F.3d at 1095 n.4; *Namisnak,* 444 F. Supp. 3d at 1146.

### F.  Negligent Misrepresentation, Intentional Misrepresentation, and Unjust Enrichment

Plaintiffs bring these three common law claims on behalf of the entire Nationwide Class. Plaintiffs do not specify under which state laws these claims are brought. *See* dkt. 40 ¶¶ 185–204. The Court should not have to speculate as to the law applicable to any claim, especially where Plaintiffs bring claims on behalf of Nationwide, California, and New York classes and subclasses, and bring claims under both New York and California law.

Plaintiffs' vague allegations prove fatal. *See In re Nexus 6P Prods. Liab. Litig.,* 293 F. Supp. 3d 888, 933 (N.D. Cal. 2018) ("[D]ue to variances among state laws, failure to allege which state law governs a common law claim is grounds for dismissal.").

Plaintiffs also fail to respond to Defendants' arguments to dismiss these claims. The Court therefore deems them abandoned. *See Jenkins,* 398 F.3d at 1095 n.4; *Namisnak,* 444 F. Supp. 3d at 1146.

### G.  Leave to Amend

Where leave to amend has already been granted, the Court's discretion to deny further leave is "particularly broad." *Chodos,* 292 F.3d at 1003. Plaintiffs' New York and California consumer protection claims, breach of express and implied warranties, negligent and intentional misrepresentations, and unjust enrichment claims were all previously dismissed as insufficiently pled. *See Krystofiak v. BellRing Brands, Inc.*, 737 F. Supp. 3d 782, 808 (N.D. Cal. 2024). Plaintiffs have had two opportunities to plead claims and have again failed to plausibly allege these same claims, for many of the same reasons. As such, the Court

dismisses these claims without leave to amend.

Plaintiffs' UCL claim based on unfairness went unchallenged, and moves forward. Plaintiffs' unlawful UCL claim is dismissed in part. Therefore, the Court gives Krystofiak a very narrow path to pursue UCL claims based on unfairness and unlawfulness, provided that she can also cure her lack of standing. The other named plaintiffs also have unfair and unlawful UCL claims.

### IV.    Conclusion

Defendants' motion to dismiss is granted in part and denied in part. Plaintiffs' UCL claim under the unfair prong may proceed; their claim under the unlawful prong may proceed in part. All other claims are dismissed without leave to amend.

Plaintiffs may file a second amended complaint by June 20, 2025. Any amended complaint must be consistent with this order and the arguments at issue here.

**IT IS SO ORDERED.**

Dated: May 19, 2025

_____
Alex G. Tse
United States Magistrate Judge